1 | Barbara J. Forde (013220)
2 | BARBARA J. FORDE, P.C.
    20247 N. 86th Street
    Scottsdale, AZ 85255
3 | BarbaraJForde@gmail.com
    *Attorney for Plaintiffs*
4 |

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife, | Case No. 2:13-cv-01641-HRH |
|---|---|
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; T.D. SERVICE COMPANY OF ARIZONA, a California corporation; U.S. BANK, N.A., as TRUSTEE of the LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N; ABC Corporations 1-100; XYZ Limited Liability Companies 1-100; 123 Banking Associations 1-100; and DOES 1-100, | |
| Defendants. | |

COMES NOW Plaintiffs Jay N. Gardner and Rachel B. Gardner, and for their First Amended Complaint against the Defendants, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiffs Jay and Rachel Gardner (the "Gardners") at all material times have been husband and wife, and have had their permanent residential address at 3601 East Mountain View Road, Phoenix, Arizona 85028 (the "Property"). They are residents of Maricopa County, Arizona. This action arises out of an attempted foreclosure of the Property, first set for a Trustee's Sale to take place on February 8, 2012, which sale was later cancelled, and reset for a sale originally to take place on August 1, 2013, which sale is currently "on hold."

2.     Venue is proper in this Court, as the Property is located within its jurisdiction in Maricopa County, Arizona.  The Property bears parcel No. 165-15-016Q, and is more fully described as:

> The North 205 feet of the West half of the Northwest quarter of the Northwest quarter of the Southeast quarter of Section 25, Township 3 North, Range 3 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

3.     Defendant Nationstar Mortgage LLC ("Nationstar") is a Delaware limited liability company, doing business in Arizona.  Nationstar is the servicer of loan at issue in this action, and is also purportedly the current assignee of the Deed of Trust.

4.     Defendant T.D. Service Company of Arizona ("T.D.") is a California corporation which was purportedly substituted as trustee under the Deed of Trust in April of 2013.

5.     Defendant U.S. Bank, N.A., as Trustee of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N, is the Trustee of the Trust into which the Gardners' loan was purportedly sold.  According to the MERS ServicerID, "U.S. Bank as Trustee" is the Investor on the loan related to the Property.

6.     Plaintiffs are currently unaware of the identity and capacity of ABC CORPORATIONS 1 through 100, XYZ LIMITED LIABILITY COMPANIES 1 through 100, and 123 BANKING ASSOCIATIONS 1-100 and DOES 1 through 100, but will amend the Complaint when their identities have been ascertained.  Plaintiffs allege upon information and belief, however, that each and every presently unknown Defendant is in some manner responsible for the acts or conduct of other Defendants, or were and/or are responsible for the injuries, damages, and harm incurred by Plaintiffs.

## FACTS

7.     On April 20, 2007, the Gardners acquired superior fee simple title to the Property by a Warranty Deed, recorded at the Maricopa County Recorder's Office at Doc. No. 20070500848.  *See* copy of Warranty Deed, attached hereto as Exhibit 1.

8.     On April 10, 2007, the Gardners entered into the Adjustable Rate Note (the "Note") and the Deed of Trust (collectively, the "Loan") with GreenPoint Mortgage Funding, Inc. ("GreenPoint"), as the Lender.   The Note had a principal balance of $960,000.00.  The Note states that:

(a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder;'"

(b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me…."

(c) "[i]f the Note Holder has required me to pay immediately in full … the Note Holder will have the right to be paid back by me…."

(d) "[i]n addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the 'Security Instrument') … protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."  *See* unauthenticated copy of a Note, attached hereto as Exhibit 2.[1]

9.     GreenPoint Mortgage Funding, Inc. ("GreenPoint") is listed as the Lender on the DOT.

10.    The DOT: (a) requires the Lender to give the Trustor (i.e., the Plaintiffs) 30 days' notice of default before accelerating the loan balance; (b) requires that the Lender give the Trustee written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, before the Trustee may initiate a sale; (c) imposes a duty on

---

[1]  Plaintiffs do not admit that this is a true and accurate copy of the Note; indeed this copy contains no endorsements.  Until Plaintiffs have been provided a copy of the Note with all endorsements, and given the opportunity to examine the original Note, they do not admit the debt or the validity of same.

the Lender to release the DOT "[u]pon payment of all sums secured by this Security Instrument…."; (d) secures to Lender (*not the beneficiary*) (i) the repayment of the Loan, and (ii) the performance of borrowers' covenants and agreements under the DOT and Note.  *See* Deed of Trust, recorded on April 30, 2007, at Doc. No. 20070500849, an unofficial copy of which is attached hereto as Exhibit 3, at pp. 1-3; ¶¶ 22, 23.

11.   Although the DOT lists Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary under the DOT, MERS was only a nominee for the Lender under the DOT solely for the purpose of avoiding recording an assignment of the DOT each time the Loan was purportedly sold/assigned/transferred.

12.   MERS does not take possession of notes and did not take possession of Plaintiffs' Note.  The Note does not list MERS as a nominee, Lender, or Note Holder.  The Note was never endorsed to MERS, nor endorsed in blank and held by MERS.  MERS never had any financial interest in the Loan; MERS does not originate loans or lend money.

13.   The deed of trust statutes define "beneficiary" as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest."  A.R.S. § 33-801(1).  The person for whose benefit a trust deed is given, is the Lender/Note Holder.

14.   MERS was never the true Beneficiary under the DOT.

15.   MERS requires those which use MERS' database to be members of MERS.  Only those taking specialized training, who are officers of member companies, are authorized to be certifying officers of MERS.  Only certifying officers of MERS may sign documents on behalf of MERS.

16.   As of August 18, 2014, the MERS ServicerID system shows the servicer of this Loan as Aurora Commercial Corp., and the "Investor" as "U.S. Bank as Trustee."   Aurora Commercial Corporation is the successor organization to Aurora Bank FSB dedicated solely to completing the wind down of its affairs.  Aurora Bank FSB ceased operations in June of 2012.  A copy of the MERS ServicerID system page pertaining to this Loan is attached hereto as Exhibit 4.

1

2  **TRANSFER OF THE LOAN INTO THE LEHMAN XS TRUST MORTGAGE**

3  **PASS-THROUGH CERTIFICATES, SERIES 2007-15N**

4

5  17.  According to correspondence from Nationstar dated July 15, 2012, the debt

6  evidenced by the Loan "is owed to U.S. Bank as Trustee, LXS Series 2007-15N, but is

7  being serviced by Nationstar."  A copy of this July 15, 2012 correspondence from

8  Nationstar to the Gardners is attached hereto as Exhibit 5.

9  18.  The July 15, 2012 correspondence contains false information.  As is fully alleged

10  below and acknowledged by U.S. Bank, U.S. Bank as Trustee does not own the Loan, and

11  U.S. Bank as Trustee is not the creditor or Lender on the Loan.  Further, the identification

12  of the real estate mortgage investment conduit ("REMIC") into which the Loan was

13  allegedly placed, was materially misleading; the name of the Trust actually is, the Lehman

14  XS Trust Mortgage Pass-Through Certificates, Series 2007-15N (the "Trust").

15  19.  The Trust was created by a Trust Agreement dated July 1, 2007, between

16  Structured Asset Securities Corporation (the "Depositor"), Aurora Loan Services LLC (the

17  "Master Servicer"), and U.S. Bank National Association (the "Trustee").   This Trust

18  Agreement was filed with the Securities and Exchange Commission on August 15, 2007.[2]

19  20.  The Trust Agreement states that the Depositor acquired the loans from Lehman

20  Brothers Holdings Inc. (the "Seller") and at the Closing Date, July 31, 2007, is the owner

21  of the Mortgage Loans.   *See* Preliminary Statement to Trust Agreement, an excerpt of

22  which is attached hereto as Exhibit 6, and Section 1.01 at 49.

23  21.  The Depositor, concurrently with execution and delivery of the Trust Agreement,

24  transferred, assigned, set over, and deposited with and conveyed to the Trustee, without

25  recourse and ***in trust***, all the right, title and interest of the Depositor to the Mortgage

26  _____

27  [2]  The entire document is 405 pages long, and can be found at
http://www.sec.gov/Archives/edgar/data/1406223/000114420407044356/v084952_ex4-

28  1.htm

Loans.  The Trustee holds the Trust Fund, consisting of the Mortgage Loans, "***in trust, for the benefit and use of the Holders of the related Certificates***…."  The Certificates are issued to investors, "evidencing the entire ownership of the Trust Fund."  Exhibit 6, Section 1.01 at 106; Section 2.01(a)(emphasis supplied).

22.  In connection with the transfer and assignment of the Mortgage Loans, the Depositor "does hereby deliver to and deposit with" the Trustee, as to each Mortgage Loan, the Mortgage File consisting of: (1) the original Mortgage Note endorsed without recourse to the order of the Trustee as set forth on Exhibit B-4 attached to the Trust Agreement, or in blank, and (2) the original recorded Mortgage.   As to the form of endorsement on Exhibit B-4, the Trust Agreement specifically states that it "is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages."  Exhibit 6, Section 2.01(b).

23.  The transfer and assignment of the Mortgage Loans was to occur on or before the Closing Date of July 31, 2007.

24.  As to each MERS Mortgage Loan, the Master Servicer, with the cooperation of the Servicer, was required to "cause the Trustee to be clearly identified as the owner of each such Mortgage Loan on the records of MERS…."  Exhibit 6, Section 2.01(c)(ii).  This designation is materially misleading and false; the Trustee of the Trust is ***not*** the owner of the Mortgage Loans.

25.  The Trust Agreement states that all covenants and agreements made by the Depositor, Master Servicer and the Trustee in the Trust Agreement with respect to the Mortgage Loans constituting the Trust Fund, are for the benefit of the Holders of the Certificates.    Exhibit 6, Preliminary Statement.

26.  "Holder or Certificateholder" is defined in the Trust Agreement as the registered owner of any Certificate as recorded on the books of the Certificate Registrar.  Exhibit 6, Section 1.01 at 60.

27. "Mortgage Loan" is defined in the Trust Agreement as a Mortgage and the related note or other evidence of indebtedness secured by each such Mortgage conveyed, transferred sold, assigned to or deposited with the Trustee pursuant to Section 2.01. Exhibit 6, Section 1.01 at 73.

28. "Trustee" is defined as U.S. Bank National Association, "not in its individual capacity, but solely in its capacity as trustee … for the benefit of the related Certificateholders…."  Exhibit 6, Section 1.01 at 107.

29. The Trust Agreement makes it clear that the Agreement shall not be construed to render any of the Trustee, Servicer, Custodian or Master Servicer, agents of one another. Exhibit 6, Section 6.01(c)(iii), (iv); 6.01(k).

30. The Trust Agreement is governed by and construed in accordance with the laws of the state of New York.  Exhibit 6, Section 11.06.

31. Under New York law, every sale, conveyance or other act of the Trustee in contravention of the Trust, is void.  EPTL § 7-2.4.

32. There are nine (9) servicers listed in the Trust Agreement including GreenPoint and Aurora Loan Services, LLC.  Exhibit 6, Section 1.01 at 102.

33. Aurora Bank FSB is not named or listed anywhere in the Trust Agreement.

## SERVICING TRANSFERS OF THE LOAN

34. On July 13, 2007, GreenPoint sent a letter to the Gardners telling them that servicing of their Loan was being transferred from GreenPoint to GMAC Mortgage, effective August 1, 2007.

35. On October 15, 2010, GMAC Mortgage, LLC, sent a letter to the Gardners telling them that servicing of their Loan was being transferred to Aurora Loan Services, effective November 1, 2010.

36. On July 15, 2012, Nationstar Mortgage, LLC, wrote to the Gardners and told them that the servicing of their Loan was being transferred from Aurora Loan Services to Nationstar, effective July 1, 2012.

**FORECLOSURE ACTIVITY**

37.   On September 21, 2011, Assistant Vice President of Aurora Bank FSB Stacy Sandoz, claiming to be Vice President of MERS, signed a Corporate Assignment of Deed of Trust (the "First Assignment") assigning the DOT, "as nominee for GreenPoint Mortgage Funding, Inc.," to Aurora Bank FSB.  The First Assignment was notarized in Scotts Bluff County, Nebraska, where Aurora Bank FSB is located and where Ms. Sandoz works, for Aurora Bank FSB.  The First Assignment was recorded on October 17, 2011, at Doc. No. 20110858688.  An unofficial copy of the First Assignment is attached hereto as Exhibit 7.

38.   On information and belief, Ms. Sandoz is not an authorized Certifying Officer of MERS; therefore, she had no authority to sign on behalf of MERS, and the First Assignment is invalid and void.

39.   In the alternative, if Ms. Sandoz is a MERS employee, then the Assignment is invalid; MERS is located in Virginia, where the Assignment was signed on September 21, 2011, and on the same day, Deb Seibert claims that Ms. Sandoz acknowledged before her, Ms. Sandoz' signature, in Nebraska.  This renders the document invalid under Arizona law.

40.   The First Assignment purports to assign only the DOT, *and not the Note,* to Aurora Bank FSB.

41.   Aurora Bank FSB, however, was not the Note Holder or the Lender.  Aurora Bank FSB in fact did not have, and never has had, any legal relation to this Loan.

42.   At the time of the First Assignment, Aurora Loan Services, LLC was (and still is) the Master Servicer of the Trust, and was at that time the Servicer of the Loan as well.

43.   Therefore, Aurora Bank FSB was not and as a matter of fact could not be, a true beneficiary under the DOT.

44.   The First Assignment is invalid and void, as a matter of fact, for the reasons alleged above.  Further, as sophisticated financial service providers, all Defendants knew or should have known of the information as to the true Note Holder/Lender and beneficiary; the representation in the First Assignment that MERS transferred the DOT when it cannot be a true beneficiary, was knowingly false.

45.   The First Assignment is invalid.   A transfer of a deed of trust, without the note, is a nullity.  The Assignment transferred no enforceable security to Aurora Bank FSB.

46.   On October 25, 2011, Michele Rice, Vice President of Aurora Bank FSB, signed a Substitution of Trustee (the "First Substitution") substituting Quality Loan Service Corporation ("QLS") as trustee under the DOT.   The First Substitution was allegedly signed and notarized in Marion County, Indiana, and was recorded on November 7, 2011 at Doc. No. 20110923343.  A copy of the First Substitution is attached hereto as Exhibit 8.

47.   Under A.R.S. § 33-804(D), the Substitution must be signed by "all beneficiaries under the trust deed or their agents as authorized in writing…."  Aurora Bank FSB is not the true beneficiary under the DOT, because Aurora Bank FSB is not the Lender.  Aurora Bank FSB did not have the authority from the true beneficiary or beneficiaries, to sign the First Substitution.  The recorded First Substitution is therefore void, as a matter of fact.

48.   The First Substitution is also void, because it depends, for its legality, on the validity of the First Assignment, which is void.

49.   As sophisticated financial service providers, all Defendants knew or should have known of the conflicting information as to the true beneficiary; the representation that Aurora Bank FSB was the beneficiary, placed in the recorded First Substitution, was knowingly false.

50.   On November 9, 2011, QLS, through Vanessa Sisk Assistant Secretary, signed the Notice of Trustee's Sale (the "First NTS") on behalf of QLS.  The First NTS claims that Aurora Bank FSB is the beneficiary.  A copy of the First NTS, recorded on November 9, 2011 at Doc. No. 20110932186, is attached hereto as Exhibit 9.

51.   Under A.R.S. § 33-808(C)(5), the NTS must contain the name and address of the beneficiary.  The NTS prepared and recorded by QLS, and pursuant to which Defendants then sought to foreclose on Plaintiffs' home, claimed that Aurora Bank FSB was the beneficiary.  The Defendants knew or should have known that Aurora Bank FSB could not be the true beneficiary as Aurora Bank FSB had no legal relation to the Loan.  To be a true beneficiary, that entity must also be the Note Holder and Lender; only that entity can be secured by the DOT.

52.   Under A.R.S. § 33-809(C), the Statement of Breach or Non-Performance must be signed by the beneficiary or its agent.  The Statement of Breach or Non-Performance is signed by Vanessa Sisk of QLS.  QLS claimed that the beneficiary under the DOT is Aurora Bank FSB, and that QLS is the "agent" of Aurora Bank FSB.  QLS claims that there was a breach of the Trust Deed, consisting of a payment default in installments of principal and interest, and other amounts.  QLS claimed that the beneficiary "elects to sell or cause to be sold such property under the Trust Deed."  This Statement of Breach is void and invalid, because QLS was not the agent of the true beneficiary, which must also be the Note Holder/Lender, the only entity which can declare a default.  A copy of the Statement of Breach or Non-Performance and of the Debt Validation Notice issued by QLS, are attached hereto as Exhibit 10.

53.   QLS also sent an invalid Debt Validation Notice, representing to the Gardners that the debt/Loan was owed to Aurora Bank FSB.  Aurora Bank FSB was not then, or ever, the true beneficiary or the Note Holder/Lender.  *See* Exhibit 10.

54.   All Defendants, as sophisticated financial service providers, knew or should have known of the conflicting information as to the true beneficiary; the representation that Aurora Bank was the beneficiary, placed in the recorded NTS, was knowingly false.

55.   The Lender never notified QLS in writing of an alleged default and of the Lender's election to foreclose on the Property, which is required under the DOT.  QLS was not properly appointed Trustee under the DOT, and had not received any written

instruction from the Lender to regarding default or election to foreclose.   QLS was therefore not the agent of the Lender.  The First NTS is void.

56.  Because the First Assignment is invalid, the First Substitution which depends on the validity of the First Assignment is invalid as a matter of fact, and the First NTS, which depends on the validity of the First Assignment and the First Substitution, is also invalid.

57.  Further, failure of QLS to confirm a default through the only entity which can declare a default, the Note Holder/Lender, and the failure to provide the identity of the true beneficiary and the beneficiary's address, violates Arizona statutes. *See, e.g.,* A.R.S. § 33-807(A); 33-808(C)(5).

58.  On June 28, 2012, Aurora Bank FSB assigned its purported interest in the DOT to Nationstar Mortgage, LLC, through a Corporate Assignment of Deed of Trust (the "Second Assignment").

59.  This Second Assignment states it is effective July 1, 2012, and purports to assign the DOT, *but not the Note*, to Nationstar Mortgage, LLC.  Julie Erickson, Vice President of Aurora Bank, signed this Second Assignment, which was notarized in Scotts Bluff County, Nebraska, by Gay Loose.  A copy of the Second Assignment, recorded on August 31, 2012, two months after it was signed, at Doc. No. 20120789178, is attached hereto as Exhibit 11.

60.  Nationstar Mortgage, LLC ("Nationstar"), however, was not the Note Holder or the Lender.  Nationstar was merely the servicer of the Loan. *See* Exhibit 5.  Nationstar was not, therefore, the true beneficiary under the DOT.

61.  Nationstar, as the servicer of the Loan, knew that it could not legally be the beneficiary of the DOT.  Nationstar knew the Second Assignment was a false, void and invalid document.

62.  The Second Assignment is invalid and void, as a matter of fact, for the reasons alleged above, and because the First Assignment is invalid and void.  Therefore, Aurora Bank FSB had nothing to assign.

63. As sophisticated financial service providers, all Defendants knew or should have known that none of them was the true Note Holder/Lender and beneficiary; the representation in the Second Assignment that Aurora Bank FSB transferred the DOT when it cannot be a true beneficiary and when it was not the Note Holder/Lender, was knowingly false.

64. The Second Assignment is also invalid because a transfer of a deed of trust, without the note, is a nullity. The Second Assignment transferred no enforceable security to Nationstar.

65. Therefore, no Defendant is the Note Holder because no entity took the Note by transfer and is entitled to payment, while also being the true beneficiary of the DOT.

66. Between the time the Second Assignment was signed and recorded, Nationstar sent a letter to the Gardners, dated July 15, 2012. The letter told the Gardners that Nationstar was servicing the Loan "on behalf of U.S. Bank, Trustee, LXS Series 2007-15N." The letter indicated that the debt evidenced by the Note "is owed to U.S. Bank, Trustee, LXS Series 2007-15N, but is being serviced by Nationstar." *See* Exhibit 5.

67. More than a month after the Second Assignment was recorded, QLS cancelled the First NTS by recording a Cancellation of Trustee's Sale on October 9, 2012, at Doc. No. 20120915878.

68. On March 4, 2013, Nationstar sent the Gardners a 30-day notice of default letter. The letter acknowledged that Nationstar is only the servicer of the Loan. The letter told the Gardners, falsely, that their debt is owed to "U.S. Bank National Association as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N." A copy of the March 4, 2013 letter from Nationstar to the Gardners (the "30-Day Default Letter") is attached hereto as Exhibit 12.

69. The 30-Day Default Letter told the Gardners that they were in default for failure to make payments when due, and that they had 35 days to bring the default current. The letter states that "Nationstar Mortgage, LLC intends to enforce the provisions of the Note and Security Instrument. … If you do not pay the full amount of the default, we may

accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property." *See* Exhibit 12.

70.   Under the DOT, only the Lender can declare a default and write to the borrower giving 30 days' notice to cure.  Under the DOT, only the Lender can accelerate the balance of the Note, and elect to foreclose.  Nationstar was not and has never been the Lender, nor is Nationstar the agent of the Lender.

71.   Then, on April 30, 2013, Nationstar recorded a Substitution of Trustee (the "Second Substitution"), substituting Defendant T.D. Service Company of Arizona as trustee under the DOT.   Nationstar purported to have authority to sign the Second Substitution in its alleged role as beneficiary under the DOT.  Albert Nguende, alleged to be an Assistant Secretary of Nationstar, signed the Second Substitution on April 19, 2013; his signature was notarized in Denton County, Texas, that day.  A copy of the Second Substitution is attached hereto as Exhibit 13.

72.   Under A.R.S. § 33-804(D), the Second Substitution must be signed by "all beneficiaries under the trust deed or their agents as authorized in writing…."  Nationstar is not the true beneficiary under the DOT, because Nationstar is not the Lender.  Nationstar did not have the authority from the true beneficiary or beneficiaries, to sign the Second Substitution.  The recorded Second Substitution is therefore void.

73.   As sophisticated financial service providers, all Defendants knew or should have known of the conflicting information as to the true beneficiary and of the law defining the beneficiary as the one for whose benefit the trust deed is given.  The representation that Nationstar was the beneficiary, placed in the recorded Second Substitution, was knowingly false.

74.   The Second Substitution is invalid and void, because it depends on the void and invalid First and Second Assignments.  It is also void and invalid because Nationstar is not the true beneficiary under the DOT, and Nationstar is not the Lender.

75.   Also on April 30, 2013, T.D. recorded a Notice of Trustee's Sale (the "Second NTS"), setting a sale date of August 1, 2013, on the Property.   The Second NTS claims that Nationstar in Lewisville, Texas, is the beneficiary.   The Second NTS is signed by Kimberly Coonradt-D'Ambrosio, Assistant Secretary for T.D., and her signature was notarized in Orange County, California by Jamie Van Keirsbelk.   A copy of the Second NTS and all other documents sent to the Gardners with it, is attached hereto as Exhibit 14.

76.   Under A.R.S. § 33-808(C)(5), the NTS must contain the name and address of the beneficiary.   The Second NTS prepared and recorded by T.D., and pursuant to which Defendants seek to foreclose on Plaintiffs' home, claims that Nationstar is the beneficiary. The Defendants knew or should have known that Nationstar can not be the true beneficiary as Nationstar is merely the servicer.   To be a true beneficiary, that entity must also be the Note Holder and Lender; only that entity can be secured by the DOT.

77.   Under A.R.S. § 33-809(C), the Statement of Breach or Non-Performance must be signed by the beneficiary or its agent.   The Statement of Breach or Non-Performance is signed by Kimberly Coonradt-D'Ambrosio, for T.D.   The document fails to name the beneficiary, referring instead to the Notice of Trustee's Sale for that information.   The document describes the default as a payment default.   *See* Exhibit 14.

78.   T.D. told the Gardners in a cover letter, that the "current Beneficiary of the Note and Deed of Trust described in the enclosed Statement of Breach and Notice of Trustee's Sale, has demanded that T.D. Service Company, as Trustee, exercise its power of sale as provided in the Deed of Trust."   *See* Exhibit 14.

79.   This Statement of Breach is void and invalid, because T.D. was not the agent of the true beneficiary, which must also be the Note Holder/Lender, the only entity which can declare a default.   T.D. admits that Nationstar told it to foreclose; Nationstar is not the Note Holder/Lender or true beneficiary; the trustee's sale was not legally initiated.

80.   All Defendants, as sophisticated financial service providers, knew or should have known of the conflicting information as to the true beneficiary; the representation that Nationstar was the beneficiary, placed in the recorded Second NTS, was knowingly false.

81.  The Lender never notified T.D. in writing of an alleged default and of the Lender's election to foreclose on the Property, which is required under the DOT.  T.D. violated Arizona statute in failing to confirm a default through the only entity which can declare a default, the Note Holder/Lender, before initiating a trustee's sale.  A.R.S. § 33-807(A).

82.   T.D. was not properly appointed Trustee under the DOT, and has not received any written instruction from the Lender to regarding default or election to foreclose.  T.D. is therefore not the agent of the Lender.

83.  The Second NTS is void, as a matter of fact.

84.  Because the First and Second Assignments are invalid, the Second Substitution which depends on the validity of the First and Second Assignments is also invalid, and the Second NTS, which depends on the validity of the First and Second Assignments and the Second Substitution, is also invalid.

85.  T.D. did not comply with its duties required by the DOT and set forth in the statutes.  T.D. breached its duties and obligations under the DOT by initiating foreclosure without a written declaration of default, acceleration, and election to foreclose, from the Lender.  T.D. knew or should have known that the true beneficiary was not Nationstar, and that T.D. did not receive authority from the true beneficiary, to sign the Statement of Breach.

86.  T.D. violated, without limitation, the terms of the DOT, and A.R.S. §§ 33-807(A) & (E); 33-808(C)(5); 33-809(C); and 33-801(10).

87.  Because of the numerous breaches of the Note and DOT by the Defendants, as well as the numerous defects with the trustee's sale documents under statute, the Trustee's Sale is irreparably defective.

88.  The foreclosure sales were improperly initiated by Aurora Bank, QLS, Nationstar and T.D., without being the Note Holder/Lender or the agent of the Note Holder/Lender, in breach of the Note and DOT, and the statutes.

89.  On July 20, 2013, Nationstar sent a letter to the Gardners, again affirming that Nationstar is only the servicer.  Nationstar represents that "U.S. Bank as Trustee for LLXS

Series 2007-15N is the current owner of the Note." A copy of this letter is attached hereto as Exhibit 15.

90. Nationstar again misidentified the name of the Trust, and misrepresented the identity of the Note Holder and Lender, to the Gardners. *See also* Exhibits 5, 12.

91. On September 18, 2013, in response to an electronic mail message from the Gardners, U.S. Bank told the Gardners that "your loan is owned by the Trust and US Bank serves as the Trustee for that Trust. However, as Trustee, we do not own your loan…. … [T]he Trustee does not have any loan-level authority…." A redacted copy of this electronic message is attached hereto as Exhibit 16.

92. Defendants Nationstar and T.D. have a policy and/or practice of:

a) proceeding on a foreclosure without legal standing to do so based on, including but not limited to: (i) MERS, Aurora Bank and Nationstar's purporting to transfer and accept, as applicable, the DOT as beneficiary when none of them are the Note Holder/Lender and therefore cannot be the true beneficiary; (ii) making knowingly false representations to borrowers, including the Gardners, regarding the identity of the Note Holder/Lender to whom the debt is owed; (iii) no Defendant's being the Note Holder/Lender entitled to payment, secured by the DOT; (iv) declaring default, accelerating the Note, and initiating foreclosure, without being the Lender, and without written instructions from the Lender to do so; (v) MERS, Aurora Bank and Nationstar's proceeding as the true beneficiary under the DOT when to claim that status is a violation of Arizona statutes as set forth above, as well as A.R.S. §§ 39-161 and 33-420;

b) knowingly initiating a trustee's sale on false documents which are signed by unauthorized individuals and entities, setting forth false information about the beneficiary, and improperly declaring default, acceleration and election to foreclose, while knowing that the location of the Note, the identity of the true beneficiary, the identity of the Note Holder, and the identity of the Lender, are all *not* as represented in the recorded documents;

c) creating, signing and recording false, groundless foreclosure documents containing material misstatements, without actual authority to do so, leading trustors to reasonably believe that the documents are accurate and made according to and pursuant to the law;

d) sending the 30-day Default Letter and other notices to Plaintiffs, and recording the Second NTS misrepresenting the identity of the creditor, when the Note and DOT require that the 30-day Default Letter be from the Note Holder/Lender and that only the Note Holder and Lender can declare default and elect to foreclose; and

e) T.D.'s failing to obtain a written declaration of default from the Lender instructing T.D. to foreclose before initiating foreclosure, instead allowing Nationstar to "demand" that T.D. exercise its power of sale when Nationstar has no authority to do so under the Note and DOT.

93.   Defendant U.S. Bank as Trustee, has a policy and/or practice of acquiescing in, or instructing others to, proceed on a foreclosure without standing to do so based on, including but not limited to: (a) Trust Agreement terms which state that U.S. Bank as Trustee is not the Lender, and holds the Trust Fund *in trust* for the benefit of the Certificateholders; (b) violation of the Trust Agreement which required the placement of the Note and DOT into the Trust on or before the Trust closed on July 31, 2007; (c) the separation of the note and deed of trust from loan inception or at a minimum when the DOT was assigned to Aurora Bank FSB; (d) U.S. Bank's own knowledge, evidenced by the Trust Agreement, information on its website and its own brochure, *Role of the Corporate Trustee*,[3] that it does not own the loans in the Trust but "its interest is solely for the benefit of investors," yet allows servicers and trustees under deeds of trust to tell borrowers, including the Gardners, that U.S. Bank as Trustee "owns" their Note and their debt is owed to U.S. Bank as Trustee and agreed in the Trust Agreement that the MERS database shall list "U.S. Bank as Trustee" as the "Investor;" (e) the inability to produce the

---

[3]  Found at https://www.usbank.com/pdf/community/Role-of-Trustee-Sept2013.pdf

Note properly endorsed, entitling any Defendant to payment; (f) a complete lack of evidence that the Loan was placed into this Trust at all, or any chain of title which shows the Loan was sold by GreenPoint to Lehman Capital, much less demonstrating how the Depositor Structured Asset Securities Corp. came into legal possession of the Loan; (g) the inability to determine the identity of the beneficiary, the Note Holder or the Lender; and (h) knowingly proceeding with a trustee's sale on false documents which are signed by unauthorized individuals and entities and clearly show that the location of the Note, the identity of the beneficiary, the identity of the Note Holder, and the identity of the Lender, are all ***unknown*** under applicable legal principles.

94.   T.D. has breached its duties and obligations as a trustee under the Arizona deed of trust statutes and the DOT, through its policies and practices of:

a) creating, signing and recording knowingly false, groundless foreclosure documents containing material misstatements without actual authority to do so from the Note Holder/Lender and true beneficiary, leading Plaintiffs to reasonably believe that the documents are accurate and prepared according to and pursuant to the law and the contracts;

b) failing to obtain a written declaration of default and acceleration from the Lender instructing T.D. to foreclose, before initiating foreclosure;

c) failing to comply with the applicable statutes regarding the preparation of foreclosure documents, and the notices required;

d) proceeding with foreclosure without knowing the identity of the true beneficiary, and Note Holder/Lender and without being its agent; and

e) issuing the Second NTS based on a defective and void Substitution, claiming that Nationstar is the beneficiary under the DOT when T.D. knew or should have known that Nationstar is only a servicer, that U.S. Bank as Trustee is involved which means the Loan must have been sold into a REMIC which means that only the Certificate Holders of the Trust can be the Note Holder/Lender and beneficiary, all with the goal of taking Plaintiffs' Property, knowing that the documents do not comply with the law.

95.   The identity of the true Note Holder/Lender with entitlement to enforce the Note and DOT, if any, is unknown; if the Note is found to have been legally and timely transferred into the Trust, the Certificate Holders of the Trust, are the only persons/entities with a potential legal ability to enforce the Note.

96.   None of these Defendants has authority to enforce the Note; no Defendant both possesses the Note and was also **entitled to payment**, as required by the clear contractual terms of the Note.

97.   At Loan initiation, the Lender was secured by the DOT.  That security has been nullified by assigning the DOT to Aurora Bank FSB in September of 2011, and then Nationstar in June of 2012, while the Note was allegedly sold into the Trust by GreenPoint Mortgage Funding, Inc. back in 2007.  An assignment of a deed of trust without the note, is a nullity; the DOT must be released.

98.   No Defendant is the true beneficiary and the Note Holder/Lender, therefore, the Trustee's Sale is void and invalid and must be cancelled.

**COUNT ONE**
**DECLARATORY JUDGMENT RE CONTRACT RIGHTS**
**OF THE PARTIES/LACK OF STANDING TO ENFORCE NOTE AND DEED OF**
**TRUST/VOID ASSIGNMENTS OF DEED OF TRUST, SUBSTITUTIONS OF**
**TRUSTEE, AND NOTICES OF TRUSTEE'S SALE**
**(ALL DEFENDANTS)**

99.   Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

100.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court regarding the standing of the Defendants and the rights of the parties with respect to the Note, Deed of Trust, and the validity and enforceability of the Assignment, Substitution, and NTS.

101.   The Note specifically states that in order to be the "Note Holder," one must have taken the Note by transfer, **and** be entitled to payment.  Only the Note Holder/Lender may demand payment, accelerate the balance under the Note, elect to foreclose, and tell

the borrower and trustee of the default and its election to foreclose.  Only the Note Holder/Lender may enforce the rights under the Note, and *only the Note Holder* is protected from losses by the Deed of Trust.  *See* Exhibits 2, 3.  The Note Holder/Lender is the only entity which may be the beneficiary under the deed of trust statutes.

102.     The DOT states that if applicable law is silent on a subject, the parties may agree to whatever terms they choose.  *See* Exhibit 3, ¶ 16.

103.     The Arizona statutes governing non-judicial foreclosures do not specifically require that a foreclosing entity produce the original note in order to foreclose.  The statutes do not prohibit that requirement, either; the statutes are silent on the issue.

104.     The DOT states that only the Lender may send written notice to the trustee of an event of default, and of the election to cause the property to be sold.  *See* Exhibit 3, ¶ 22.  The deed of trust statutes do not allow the trustee to initiate foreclosure without a default.  A.R.S. § 33-807(A).

105.     The Note defines the Lender as "anyone who takes this Note by transfer and who is entitled to receive payments under the Note…."  Therefore, to identify the Lender, that entity must demonstrate that it took the Note by transfer and that it is entitled to receive payments under the Note.

106.     As fully set forth in, without limitation, ¶¶ 8, 10, 37-86, 89-91 above, the document(s) prepared, signed and recorded by the Defendants, to take Plaintiffs' home, and the letters addressed to the Gardners, do not comply with the terms of the Note and DOT nor with applicable statutes.  The Assignments, Substitutions and two NTS contain defects which render the documents, as a matter of fact, void, invalid, and unenforceable.

107.     Under the Note and DOT and applicable law, any attempt to foreclose on Plaintiffs without proving status as the Note Holder/Lender and true beneficiary, and otherwise being in compliance with all contract terms, is invalid.

108.     Under applicable law, the Defendants cannot foreclose without complying with the statutory requirements to do so.

109.     If any Defendant/Defendants are found to be parties to the Note or DOT, that/those Defendant/Defendants has/have breached the contracts, and failed to follow applicable statutes and laws, as set forth above.

110.     If the Defendants are found not to be parties or agents of parties to the Note or DOT, as is alleged above, Defendants have no standing to enforce the Loan or initiate or conduct a foreclosure of the Property.

111.     Plaintiffs seek a declaratory judgment or an Order from this Court, that pursuant to the Note and Deed of Trust, only the Note Holder/Lender and true beneficiary may pursue foreclosure, and that the Defendants must therefore prove their status as Note Holder/Lender and true beneficiary, before they may be allowed to proceed to Trustee's Sale.

112.     Plaintiffs seek a declaratory judgment or an Order from this Court, that no Defendant is the Note Holder/Lender, nor has any Defendant sought foreclosure as the legal agent of the Note Holder/Lender, under written direction from the Note Holder/Lender as required by the Note and DOT.

113.     The First Assignment signed on September 21, 2011, recorded October 17, 2011, shows MERS as the nominee for GreenPoint, under the DOT, and claims to assign the DOT to Aurora Bank FSB.  The First Assignment does not claim to transfer the Note.

114.     The First Assignment is signed by Stacy Sandoz, an employee of Aurora Bank FSB.  On information and belief, Ms. Sandoz is not an authorized Certifying Officer of MERS, she had no authority to sign the First Assignment.

115.     Aurora Bank FSB has no legal relation or connection to the Trust.

116.     Accordingly, the First Assignment is invalid and void.

117.     The Trust Agreement required that the Note be turned over to the Trust by July 31, 2007.  The First Assignment demonstrates that MERS was in possession of the DOT, while the Trust Agreement states that the Note was to be in the Trust.  Therefore, by the agreement of the parties to the Trust Agreement and MERS, the Note and DOT have

been split since at least July 31, 2007.  In the alternative, the Note and DOT have been split since the DOT was assigned, purportedly by MERS, to Aurora Bank FSB.

118.    The First Substitution is void and invalid, because Aurora Bank FSB was not the Lender, and did not have authority from the true Note Holder/Lender/beneficiary, to sign the First Substitution.  It is also void and invalid because the First Assignment is void and invalid.

119.    The First NTS is void and invalid because the First Assignment and Substitution are void, because among other things, QLS did not receive a writing from the Note Holder/Lender declaring a default and electing to foreclose, and because Aurora Bank FSB was not the true beneficiary or Note Holder/Lender.

120.    The Second Assignment is void and invalid, because among other things: the First Assignment is void and invalid; it purports to assign the DOT without the Note; and because the assignee is not the true beneficiary under the DOT.

121.    Any attempt to transfer the DOT without the debt it secures, is a nullity.

122.    Under the Note and DOT and applicable law, any attempt to assign the beneficial interest in the DOT to another, or to enforce the DOT without simultaneously being the Note Holder/Lender, is void.

123.    At no time, has any Defendant been both the Note Holder/Lender and the true beneficiary of the DOT, simultaneously.

124.    The Second Substitution is void.  Nationstar is not the true beneficiary because it is not the Note Holder/Lender.  Nationstar did not have authorization from the Note Holder/Lender and true beneficiary to substitute T.D. as trustee.  The Substitution is based on the void First and Second Assignments, and therefore is itself, void.

125.    The Second NTS is void.  Nationstar is not the true beneficiary, the Note Holder/Lender did not declare a default and send written notice to Plaintiffs and T.D. to foreclose, and the Second NTS is based on the void Assignments and the void Second Substitution.

126.     Both Statements of Breach are void.  They are not from the true beneficiary or an agent of the true beneficiary; the Note Holder/Lender has not sent a writing declaring a default and electing to foreclose, to the borrower and the foreclosure trustee.

127.     Plaintiffs seek a declaratory judgment or Order from this Court that the First and Second Assignments, the First and Second Substitutions and the First and Second NTS are void and unenforceable, and that these recorded documents must be cancelled and title cleared by recordings at the Maricopa County Recorder's Office.

128.     Plaintiffs further seek a declaratory judgment or Order from this Court that no party may notice or re-notice a trustee's sale without proving status as Note Holder/Lender and true beneficiary under the Note and Deed of Trust, and otherwise complying with the contracts, and applicable law.

129.     Plaintiffs seek a further declaratory judgment or Order from this Court that the Note and DOT require that only the Note Holder/Lender may enforce the terms of the Note and accelerate the balance, that only the Note Holder/Lender is protected by the Deed of Trust as security, and only the Note Holder/Lender may initiate foreclosure of the Deed of Trust.  Any other result subjects Plaintiffs to the danger of multiple liability on the Note, and an endless string of false beneficiaries initiating void and invalid trustee's sales.

130.     Plaintiffs seek a further declaratory judgment or Order that no Defendant is the Note Holder/Lender and true beneficiary, that the DOT has been rendered a nullity, and that until an entity can prove its status as Note Holder/Lender, no entity may seek to enforce the Note.

131.  Plaintiffs are entitled to their attorney's fees and costs arising out of this claim, pursuant to the Note and DOT and A.R.S. § 12.341.01.

///

///

///

///

///

**COUNT TWO**
**BREACH OF CONTRACT**
**(ALL DEFENDANTS)**

132.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

133.     Defendants, as an alleged beneficiary, servicer, trustee, or alleged successor or assign of a party to the Note and/or DOT, are all bound in contractual privity with Plaintiffs.

134.     In pursuing the Trustee's Sale in violation of the terms of the Note and DOT, as set forth in, among other places, ¶¶ 8, 10, 37, 41, 43, 49, 50, 53-55, 57, 60-63, 65, 68-71, 73, 74, 78-82, 85-98, 101, 104-107 above, the Defendants have breached the contracts.

135.     In pursing the Trustee's Sale in violation of the deed of trust statutes and law as set forth in, among other places, ¶¶ 13, 39, 47, 51, 52, 72, 76, 77, 104, which are a part of every contract, the Defendants have breached the contracts.

136.     In pursuing a trustee's sale in violation of the contracts and applicable law, Defendants breached the duty of good faith and fair dealing implied in every contract.

137.     Defendants' breaches of contract caused Plaintiffs damages in the form of the concrete and particularized injury of the initiation of foreclosure without performing conditions precedent to a valid sale, acceleration of the Note, late fees, penalties, accruing interest, trustee's fees, and other fees which would not have been incurred but for the improper initiation of foreclosure; substantial damage to credit, attorney's fees, and other damage.

138.     As this matter arises out of contract, Plaintiffs are entitled to their attorney's fees and costs incurred, pursuant to the contracts and pursuant to A.R.S. § 12-341.01.

///

///

///

///

**COUNT THREE**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(ALL DEFENDANTS)**

139.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

140.     Defendants are obligated under the Note and DOT, the First and Second Substitutions, the First and Second Assignments, the First and Second NTS, and the common law, to act in good faith and to deal fairly with Plaintiffs.

141.     The purpose of this covenant is to guarantee that the parties remain faithful to the intended and agreed-upon expectations of the parties in their performance.

142.     The duty of good faith extends beyond the written words of the contracts.

143.     When a party or parties to a contract manipulate bargaining power to its/their own advantage, injuring the other party, the party/parties with bargaining power breach its/their duty of good faith.

144.     Plaintiffs reasonably expected that the entities which would seek to enforce their Loan would be those legally entitled to do so.

145.     Plaintiffs reasonably expected that the entities with standing to enforce their Loan or those who appeared and claimed that entitlement, would use good faith and deal fairly in initiating and proceeding with foreclosure.

146.     Defendants and/or their agents breached their duty of good faith and fair dealing by, without limitation:

a)     hiding from Plaintiffs the identity of the true beneficiary by affirmatively misrepresenting to Plaintiffs that the true beneficiary was Aurora Bank FSB and then Nationstar through letters and the recording of false documents, and Nationstar's masquerading as the party entitled to declare a default, accelerate the balance, and take action to foreclose;

b)     hiding the identity of the true Note Holder/Lender by affirmatively misrepresenting the "owner" of the Loan and the creditor as U.S. Bank as Trustee through

correspondence to the Gardners and, on the part of U.S. Bank as Trustee, signing the Trust Agreement which specifically set out the scheme by which the MERS database would falsely state that U.S. Bank as Trustee was the "Investor" on the Loan;

c) failing to comply with contractual obligations, including without limitation allowing an entity, not the Note Holder and Lender, to write to the Gardners declaring a default, to accelerate the debt, and to initiate a foreclosure;

d) initiating foreclosure without requiring that the Lender notify the Deed of Trust trustee, in writing, that the loan was in default, and of an election to foreclose;

e) seeking to proceed to Trustee's Sale on clearly invalid documents, i.e., the First and Second Assignments, the First and Second Substitutions, the First and Second NTS, the 30-Day Default Letter, and the two Statements of Breach, as fully set forth in detail above;

f) knowingly and purposely separating the Note from the DOT thereby rendering the Note unsecured, but attempting to foreclose on the Property nevertheless; and

g) falsely listing the servicer of the Loan as Aurora Commercial Corp., on the MERS database.

147. As a result of Defendants' failure to act in good faith and with fair dealing, Defendants have caused Plaintiffs concrete and particularized injury, in the form of a default claimed by the Defendants but not asserted by the Note Holder/Lender, acceleration of the Note, attorneys' fees and costs paid to stop an invalid trustee's sale sought by entities with no standing to do so and without the Defendants' having performed conditions precedent to a valid sale, as fully alleged above.

148. As this claim arises out of the contracts between the parties, Plaintiffs are entitled to their attorney's fees and costs incurred in having to bring this claim, pursuant to the terms of the contracts as well as A.R.S. § 12-341.01.

///

///

**COUNT FOUR**
**QUIET TITLE UNDER A.R.S. § 12-1101 *et seq*. and A.R.S. § 33-420**
**(ALL DEFENDANTS)**

149.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

150.     At the time the loan closed on April 19, 2007, the Note gave GreenPoint Mortgage Funding, then the Lender and originator, the right to payments.

151.     The Note makes it clear that only one who takes the Note by transfer, **and** who is entitled to receive payments, is the Note Holder.

152.     Plaintiffs have a Warranty Deed on the Property, and have a claim to the Property superior to all others as the fee simple absolute title holder, and otherwise, as is fully set forth in this First Amended Complaint.

153.     Numerous parties have come forward, attempting to demonstrate an entitlement to the Property or entitlement to foreclose, through a claimed interest as nominee on the Deed of Trust, as a beneficiary under the Deed of Trust, as a purported Note Holder, "owner" of the Note, creditor, agent of a servicer or beneficiary, or other undeclared, unspecified interests.

154.     As fully detailed above, those parties claiming interests were/are MERS, Aurora Bank FSB, Nationstar, U.S. Bank as Trustee, QLS, and T.D.  The defective and void nature of each person/entity's claim to the Property is set forth in detail above.  Each Defendant and entity has actual knowledge of the defects in the recorded chain of title. Each Defendant has contributed to the cloud currently existing on the title to the Property, represented by the false, groundless and fraudulent documents recorded against the Property.

155.     Plaintiffs have been given conflicting information about the identity of the Note Holder.  The MERS database claims that U.S. Bank as Trustee is the Investor, and Nationstar has three times falsely told the Gardners that U.S. Bank as Trustee is their creditor and "owns" their Loan.  But U.S. Bank itself admits through its brochure and

through an e-mail directly to the Gardners, that it does not own the loans in the Trust or the Gardner Loan in particular, it "does not have any loan-level authority," and "its interest is solely for the benefit of investors." *See* Exhibit 16.

156.   Plaintiffs have no knowledge of, and no way to determine outside of discovery in this lawsuit, who the legal Note Holder/Lender is, if any, who is entitled to payments if anyone; whether the Note still exists, and whether the Note has been paid through insurance, through a Trust-related insurance policy such as that reflected in the Certificate of Guaranty Insurance Policy Endorsement effective July 31, 2007,[4] or by other sources.

157.   As is fully set forth in allegations above, no Defendant is the true beneficiary under the DOT, as no Defendant is the Note Holder/Lender.

158.   Plaintiffs are in jeopardy of multiple liabilities under the Note, because the true Note Holder is unknown.  That entity, as well as third parties, could come forward claiming an unsatisfied interest in the Note, and may or may not be subject to Plaintiffs' various affirmative defenses and counterclaims.  Under the Uniform Commercial Code, if the Gardners pay the wrong entity, their debt is *not* discharged.  Given the cloud on title and the uncertainty surrounding the Note, Plaintiffs are entitled to proof of the true Note Holder/Lender, and the true beneficiary if any, to avoid this imminent danger.

159.   The Assignments which purports to assign the DOT from MERS to Aurora Bank FSB and from Aurora Bank FSB to Nationstar are void, as is fully set forth in allegations above.

160.   A note and deed of trust are inseparable.  If a note and deed of trust are separated, in that the Note Holder/Lender and the beneficiary of the deed of trust are not the same individual or entity, the note becomes unsecured.

---

[4] This 10-page endorsement was filed with the SEC and can be found at http://www.sec.gov/Archives/edgar/data/1406223/000114420407044356/v084952_ex99-18.htm.  The endorsement is incorporated here by this reference.

161.     The Note and DOT have been separated since at least September of 2011, if not July of 2007.

162.     The assignment of a deed of trust without a legal transfer of the debt, transfers nothing.

163.     The Defendants having voluntarily separated the Note/debt from the DOT; the DOT secures nothing.

164.     Defendants seek to enforce the Note and Deed of Trust.  Because the Note has been unsecured since at least September of 2011, no Defendant may legally pursue foreclosure pursuant to the Deed of Trust.

165.     No Defendant has standing to pursue foreclosure, as no one Defendant is both the true beneficiary of the Deed of Trust and also the Note Holder.

166.     Further, pursuant to the terms of the Note, only the Note Holder can enforce the Note through foreclosure or otherwise.

167.     Various Defendants have recorded void and invalid documents against the Property, without the legal authority to do so.  Those documents include, but are not limited to, the two Assignments, the two Substitutions, and the two NTS.

168.     Plaintiffs have suffered a distinct and palpable injury from the recorded documents which are groundless, contain material misstatements and false claims against their Property.  The recorded documents have clouded their title which has directly affected their ability to possess, use and sell the Property, as is their right as trustor.

169.     Through payments from Plaintiffs/Borrowers, PMI or other insurance coverage, the Guaranty Insurance Policy referred to above, government payments, credit default swaps or other methods, any party with a valid claim to payment under the Note as Note Holder, has on information and belief, already been paid.

170.     Plaintiffs are entitled to an order from this Court against the Defendants, that the Plaintiffs' estate in the Property be established in them, that title be quieted in their name as against these Defendants, that the groundless and false recorded documents be declared null and void with filings at the Maricopa County Recorder's Office to that effect,

and that all Defendants be barred and forever estopped from having or claiming any right or title to the Property, adverse to Plaintiffs, and that the Deed of Trust be declared void and of no force and effect, and be released by a recording at the Maricopa County Recorder's Office.

171.    Plaintiffs further seek the statutory sum of no less than $5,000, or treble their actual damages caused by the recordings, whichever is greater, plus an award of their attorneys' fees and costs, pursuant to A.R.S. § 33-420(A).

**COUNT FIVE**
**NEGLIGENCE PER SE**
**(NATIONSTAR, T.D. SERVICE COMPANY)**

172.    Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

173.    Nationstar knew or should have known that Aurora Bank FSB was not and could not be a true beneficiary under the DOT with legal authority to assign the DOT to Nationstar.

174.    Nationstar knew or should have known that the Loan was purportedly placed into the Trust in 2007 before its Closing Date.

175.    In allowing, acquiescing in, or sending the Second Assignment to be recorded at the County Recorder, which contained unauthorized signatures and false information, Nationstar violated A.R.S. § 39-161.

176.    T.D. did not receive a writing from the Note Holder/Lender, declaring a default and electing to foreclose the DOT.   Rather, Nationstar "demanded" that T.D. initiate foreclosure on the Property. *See* Exhibit 14.

177.    T.D. was not and is not the agent of the Lender.

178.    T.D. knew or should have known that Nationstar was not the true beneficiary of the DOT.

179.    T.D. nevertheless initiated a trustee' sale and recorded the Second NTS or caused the Second NTS to be recorded.

180.      In allowing, acquiescing in, or sending the Second NTS to be recorded at the County Recorder, which contained unauthorized signatures and false information, T.D. violated A.R.S. § 39-161.

181.      In recording groundless documents asserting false claims at the County Recorder's Office claiming invalid interests in the Property including but not limited to the Second Assignment, the Second Substitution and the Second NTS, Nationstar and T.D. violated A.R.S. § 33-420.

182.      On information and belief, the Second Assignment, the Second Substitution and the Second NTS were not signed before a notary public, nor did the signer appear before the notary and acknowledge the signer's signature.

183.      In allowing documents to be notarized by notaries who did not witness the signatures or have the signers acknowledge their signatures before them, Nationstar and T.D. violated A.R.S. §§ 33-503, 41-311; 41-312 and 41-313.

184.      Each of these statutes was put into place for the specific purpose of protecting homeowners' interests in their homes, and the specific purpose of ensuring that individuals who sign important legal documents are actually authorized to do so.

185.      Plaintiffs are in the class of persons for whose protection these statutes were put into place.

186.      Acts in violation of these statutes constitute negligence per se.

187.      Violation of A.R.S. § 39-161 is a Class 6 felony.

188.      Violation of A.R.S. § 33-420 carries statutory damages of not less than $5,000 per recorded document or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

189.      Plaintiffs seek an order of this Court that Nationstar and T.D. prepare and record any and all documents needed to clear the cloud on Plaintiffs' title related to their efforts to illegally foreclose.

190.      Plaintiffs suffered and will suffer damages due to the negligence per se of Nationstar and T.D., in the form of clouded title to their Property, statutory damages under

A.R.S. § 33-420, acceleration of the Note, damage to credit, accrual of late charges, fees, costs, trustee's fees, attorney's fees, and other damage.

**COUNT SIX**
**FAIR DEBT COLLECTION PRACTICES ACT**
**(T.D. SERVICE COMPANY)**

191.     A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. This includes a threat to take any action that cannot legally be taken.  This also includes the false representation of the legal status of any debt, such as the identity of the creditor. Such a misidentification is also a deceptive practice under 15 U.S.C. § 1692g.  This also includes a threat to take any action that cannot legally be taken.

192.     A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.  This includes taking or threatening to take any nonjudicial action to effect dispossession of property if there is no present right to possession of the property.

193.     Liability under §§ 1692(e) and (g) is determined by the "least sophisticated debtor" standard.

194.     T.D. is a debt collector.  T.D. serves as trustee under the DOT and acts as foreclosure trustee in this matter.  T.D. sent a letter to the Gardners dated May 23, 2013, stating that "[r]einstatement of the delinquent loan may be made by cash or cashier's check in the full amount due…."  T.D. further stated that "[t]he Beneficiary may be attempting to collect a debt…."  *See* Exhibit 14.

195.     T.D. also sent the Gardners a Statement of Breach.  That Statement said payments from January 1, 2013, were past due, and that "Trustee is only required to accept payment by cash, cashier's check or certified check."

196.     T.D. claims, falsely, that Nationstar is the (true and valid) beneficiary under the DOT.  *See* Exhibit 14.

197.     A foreclosure is the collection of a debt.  *National Bank of Arizona v. Schwartz,* 230 Ariz. 310, 283 P.3d 41, 44 ¶ 9 (2012)("[T]he contractual debt is foremost

with any foreclosure or sale being secondary and merely a means of recovery on the original debt."); *see also Quintana v. Bank of America,* 2014 WL 690906 at *9 (D.Ariz. Feb. 24, 2014)("trying to collect the note that secures the deed of trust qualifies as the collection of a debt.").

198.     T.D. misidentified the creditor in its foreclosure package mailed to the debtor, saying Nationstar was the creditor, and claimed that Nationstar "demanded" that T.D. exercise its power of sale.  *See* Exhibit 14.  T.D. also misidentified the creditor in the Second NTS, again saying Nationstar was the creditor.  *See* Exhibit 14.  As Nationstar itself admits on many occasions, it is not the creditor.  *See* Exhibits 5, 12, 15.

199.     T.D. has therefore made false, deceptive and misleading representations to the Gardners.

200.     T.D.'s continued pursuit of foreclosure and its failure to cancel the trustee's sale is a threat to take action which T.D. cannot legally take.  T.D. cannot legally take this action because Nationstar is not the creditor therefore T.D. is not the legal agent of the creditor, and because T.D. did not receive written notice of default and election to foreclose, from the true creditor/Lender.

201.     T.D. is using unfair and unconscionable methods to collect the Gardner debt through foreclosure or demand.  T.D. is threatening to foreclose on the Gardners when there is no present right to possession of the Property.  There is no present right because the sale was illegally initiated and therefore must be cancelled.  There is further no present right to possession because Nationstar is not the creditor, and T.D. has never received a written notice of default and election to foreclose from the Lender.

202.     The Gardners have suffered damages as a result of T.D.'s misidentification of the creditor.  The Gardners were confused about who owns their Loan, who they could contact for a modification, and have serious concerns about whether the payments they have made, went to an entity with any legal relationship to this Loan, or any entitlement to payments.

203.     The Gardners also suffered the damages of acceleration of the Note by Defendants without legal authority to do so, and by having their Property set for a Trustee's Sale without legal authority, by parties without any standing to foreclose.

204.     As trustee under the Deed of Trust, T.D. has contractual duties to perform, including obtaining written notice of default from the Lender, and that Lender's written election to foreclose.  T.D. did not receive these things from the Lender.

205.     The Gardners have suffered other actual damages as a result of T.D.'s false, deceptive, and misleading practices, and its unfair and unconscionable methods for collecting this Loan.  Without limitation, they have incurred attorneys' fees from two law firms which the Gardners were compelled to hire to stop the illegal trustee's sale of the Property.   Attorneys' fees continue to accrue.

206.     Plaintiffs are also entitled to statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

**WHEREFORE**, Plaintiffs request the following relief:

A.     For a Declaratory Judgment and/or an Order that the Assignment, Substitution and NTS, as well as the DOT which is now a nullity, are void and must be cancelled/revoked with recordings at the Maricopa County Recorder's Office;

B.     For a Declaratory Judgment and/or Order that no Defendant is the Note Holder/Lender and true beneficiary, that no Defendant may initiate or conduct a trustee's sale of Plaintiffs' Property, and no Defendant has standing to enforce the Loan;

C.     For damages sustained by the Plaintiffs as a result of the Defendants' breaches of contract, and breach of the duty of good faith and fair dealing;

D.     For damages sustained by the Plaintiffs as a result of Nationstar and T.D's negligence per se;

E.     For a judgment quieting title in the Plaintiffs as to the Defendants under the common law and under A.R.S. § 33-420, and for statutory damages of not less than $5,000 per recorded document or for treble the actual damages, whichever is greater;

F.    For damages against T.D. for violations of the Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692k(a)(2)(A), and as otherwise alleged;

G.    For judgment for Plaintiffs' legal fees and costs incurred, pursuant to A.R.S. § 12-341.01 and A.R.S. § 33-420(A);

H.    For interest on the reasonable attorney's fees, court costs, and other costs of collection at the highest legal rate from the date of entry of judgment herein until paid in full; and

I.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury as a matter of right.

DATED this 9th day of September, 2014.

BARBARA J. FORDE, P.C.

By:    s/ Barbara J. Forde
       Barbara J. Forde, Esq.
       20247 N. 86th Street
       Scottsdale, AZ  85255
       *Attorney for Plaintiffs*

ORIGINAL e-filed this 9th
day of September, 2014, with
COPIES delivered through the
ECF system to:

Laura Sixkiller
Stacey F. Gottlieb
GREENBERG TRAURIG, LLP
2375 East Camelback Rd., Ste 700
Phoenix, AZ  85016
*Attorneys for Defendants Nationstar*
*Mortgage, T.D. Service Co., and*
*U.S. Bank as Trustee*


s/Barbara J. Forde_____