Barbara J. Forde (013220)
BARBARA J. FORDE, P.C.
20247 N. 86th Street
Scottsdale, AZ  85255
BarbaraJForde@gmail.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife, | Case No. 2:13-cv-01641-HRH |
| Plaintiffs, | |
| v. | **RESPONSE TO MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; et al, | |
| Defendants. | |

## I.    INTRODUCTION.

Plaintiffs (the "Gardners") hereby file their response to the Motion to Dismiss Third Amended Complaint (the "Motion") filed by Defendants Nationstar Mortgage, T.D. Service Company of Arizona, and U.S. Bank, as Trustee (the "Moving Defendants").  The Motion fails to demonstrate that any of the Gardners' claims should be dismissed.

## II.    FACTUAL BACKGROUND

Facts needed for the determination of the Motion are discussed throughout this Response.  However, a few facts are set forth here, for easy reference.

- 4-19-07  Deed of Trust with Green Point Mortgage Funding as the Lender, and the nominee as MERS, is signed, as well as the Note - TAC ¶¶ 13, 14 (key provisions)
- 7-31-07  Trust, into which the loan was allegedly sold, closed - TAC ¶¶ 25, 28
- Certificateholders of the Trust own the Note/are the Lender - TAC ¶¶ 26, 30, 31
- Trustee of the Trust is supposed to possess the Note - TAC ¶ 27

- Arizona statute defines "beneficiary" as the person for whose benefit the trust deed is given - TAC ¶ 18; A.R.S. § 33-801(1)
- Note Holder is the person for whose benefit Trust Deed is given - TAC ¶¶ 15(d), 16(d)
- MERS was never the true beneficiary under the DOT because it never possessed the Note and was never the Lender secured by the DOT - TAC ¶¶ 17, 18, 19; *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 318 P.3d 419, 427 n. 9 (Ct. App. 2014)(*rev. denied* Sept. 23, 2014)("MERS does not originate or lend money for home loans.")

### III.   LEGAL ANALYSIS.

A.   The Standard Which Must Be Followed in Deciding This Motion to Dismiss.

At the motion to dismiss stage, "the Court assumes that all facts alleged in Plaintiff's Complaint are true.  Assuming the veracity [of] Plaintiff's representations, the Court then asks whether the allegations contained in the Complaint are 'plausible' to the extent a sufficient legal claim has been made out."  *Blau v. America's Servicing Co.*, 2009 WL 3174823 at * 3 (D. Ariz. Sept. 29, 2009).  *See also*, *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 884-885 (9th Cir. 2013)(the court must assume the allegations in complaint are true, and refuse to consider contradictory "facts" argued by the bank, as "such a defense 'presents a factual dispute that cannot be resolved [at the motion to dismiss stage].'").

Federal courts in diversity matters must follow state law, even if not from the highest court of the state, and even if the federal court does not agree with the decision. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-37, 61 S.Ct. 179 (1940).

B.   An Appealable Dismissal of a Subsequent Lawsuit is not Res Judicata in this Lawsuit Asserting Different Claims and Different Facts.

"Since federal jurisdiction in this case is based upon diversity of citizenship, the district court … must apply the substantive law of the forum state…."  *Priest v. American*

2

*Smelting & Refining Co.,* 409 F.2d 1229, 1231 (9th Cir. 1969).  "The substantive law of a state includes the law pertaining to res judicata." *Id*.

Arizona applies the "same evidence" test to determine whether matters are barred by res judicata, set forth in the Restatement (First) of Judgments § 61 (1942).  *Phoenix Newspapers, Inc. v. Department of Corrections*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (Ct. App. 1997).  The Restatement provides:

> Where a judgment is rendered in favor of the plaintiff or where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from **subsequently maintaining a second action** based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action.

Restatement (First) of Judgments § 61 (emphasis supplied).

There is no res judicata here, for a number of basic reasons.  First, this action is not a "subsequent second action."  Second, only matters actually adjudicated as apparent on the face of the judgment, and which were "actually and necessarily" decided, are barred. *Rousselle v. Jewett*, 101 Ariz. 510, 512, 421 P.2d 529, 531 (*In Banc* 1966).  Critically:

> Rights, claims, or demands-even though they grow out of the same subject matter-which constitute separate or distinct causes of action not appearing in the former litigation, are **not barred** in the latter action because of res judicata.

*Id.*  Arizona's res judicata standard is restrictive:  "[i]f no additional evidence is needed to prevail in the second action than that needed in the first, then the second action is barred." *Phoenix Newspapers*, 188 Ariz. at 240, 934 P.2d at 804.

Beyond the fact that the Order which the Moving Defendants seek to hold against the Gardners in this action was obtained in a subsequent action, and is currently the subject of a Motion to Alter/Amend the Judgment (Doc. 42 in *Gardner v. Nationstar et al;* 2:13-cv-02478-SRB "Gardner II"), the judgment in that matter addressed only a claim for material misrepresentations under A.R.S. § 33-420.  *See* Doc. 37 in Gardner II.

Here, the Gardners state a claim under A.R.S. § 33-420 based on documents being false, groundless, fraudulent, and otherwise invalid. *See* TAC ¶ 185-210. Accordingly, different evidence will be presented in this matter to prove Count 4 of the TAC, for violation of A.R.S. § 33-420 and slander of title. In addition, and critically, included in Count 4 are allegations pertaining to the Third and Fourth Substitutions of Trustee recorded long after the Complaint in Gardner II was filed back on November 27, 2013. *See* TAC ¶¶ 102-108. Clearly, an Order cannot bar claims arising out of facts which occur after the at-issue complaint was filed. "The record must show that the prior judgment was based upon a determination of certain facts and circumstances which would be re-litigated and govern the outcome of the present litigation." *Rousselle*, 101 Ariz. at 513, 421 P.2d at 532. Obviously, the dismissal in Gardner II cannot have preclusive effect over events which had not yet occurred at the time that Complaint was filed. *See also, Zinni v. Jackson White, PC*, 565 Fed.Appx. 613, 617 (9th Cir. 2014)(claim preclusion cannot bar acts subsequent to those at issue at the time of judgment).

"Under the doctrine of res judicata, a final judgment, entered on the merits in a prior suit involving the same parties or their privies, bars a second suit on the same cause of action and is conclusive as to **facts** which actually were or could have been decided." *Hall v. Lalli*, 191 Ariz. 104, 106, 952 P.2d 748, 750 (Ct. App. 1997) (emphasis supplied). Res judicata only applies if there is a common "identity of the parties, the capacity in which they appear, the subject matter, and the cause of action." *Matusik v. Arizona Public Service Co.*, 141 Ariz. 1, 3, 684 P.2d 882, 884 (Ct. App. 1984).

The only Defendants in Gardner II were Nationstar and U.S. Bank as Trustee. The Moving Defendants of course argue that T.D. is in privity with Nationstar and U.S. Bank as Trustee. It is not, under Arizona state law:

> For res judicata purposes, "[a] privy is one who, **after rendition of the judgment**, has acquired an interest in the subject affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase."

4

*Hall*, 191 Ariz. at 106, 952 P.2d at 750  (citation omitted).  Therefore, T.D. is not in privity with U.S. Bank as Trustee or Nationstar.  In fact, by the time the Order was entered in Gardner II, T.D. was no longer the trustee under the DOT.  Privity is a factual issue which must be determined after discovery and is inappropriate for disposition on a motion to dismiss.  In addition, the Gardners have alleged in their TAC that the parties are not agents for one another.  *See, e.g.,* TAC, ¶¶ 34, 75.  These allegations must be accepted as true.

Cases cited by the Moving Defendants demonstrate that their res judicata argument stands the doctrine on its head.  "Res judicata, also known as claim preclusion, bars litigation in a **subsequent** action of any claims that were raised or could have been raised in the **prior action**."  *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)(emphasis supplied); *see also U.S. ex rel. Barajas v. Northrop Corp.,* 147 F.3d 905, 909 (9th Cir. 1998)("Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a **previous** action between the parties, where the **previous** action was **resolved on the merits**.")(emphasis supplied).  This suit is not a subsequent action, and this suit has no final judgment on the merits.  The doctrine of res judicata simply does not apply, even under federal law.

Arizona law, which applies to this issue, demonstrates that the Order cannot be accorded res judicata effect.  First, the Order issued in Gardner II is the subject of a Motion to Alter/Amend the Judgment.  Second, that Order pertains only to a claim under A.R.S. § 33-420 for material misrepresentations in the recorded documents.  The Gardners' Count 4 alleges false, fraudulent or "otherwise invalid" recordings.  Third, T.D. is not in privity with the Defendants in Gardner II.  Fourth, the causes of action in the TAC are materially different from those asserted in Gardner II; the "same evidence" test is not satisfied.  *See, e.g., Phoenix Newspapers*, 188 Ariz. at 240-241, 934 P.2d at 804-805 (the second complaint filed asserted essentially the same claim as that proposed as an amendment in the first action, but applying the "same evidence" standard, resulted in no preclusion: "The Newspapers assert a new theory in their second action, supported by some additional

facts."); *Matusik*, 141 Ariz. at 4, 684 P.2d at 885 (negligence claim in second action between identical parties found not precluded by prior action, because the parties "did not actually litigate" negligence). <u>Fourth</u>, the Moving Defendants set the doctrine of res judicata on its head when they argue that a judgment entered in a **subsequent** lawsuit precludes a decision on the merits in this earlier suit.  Res judicata does not apply.

Even if federal law applied, res judicata would not prevent any part of this litigation from proceeding.  "The doctrine of claim preclusion establishes that 'an adverse judgment from which **no appeal** has been taken is res judicata and bars *any future action* on the same claim.'"  *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1136 (9th Cir. 2001)(quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.4, 101 S.Ct. 2424 (1981)(bold emphasis added, italic emphasis in original).  The Order in Gardner II cannot be considered res judicata.  That Order is currently the subject of a Motion to Alter/Amend the Judgment, which motion tolls the appeal deadline.  Therefore, there is not currently an adverse judgment from which no appeal has been taken.

Ninth Circuit law also demonstrates conclusively that T.D. is not in privity with U.S. Bank as Trustee and Nationstar.  The non-party must have "had a significant interest and participated in the prior action…."  *In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997)(citation omitted).

T.D., as Trustee under the DOT, occupied a unique position with respect to the case.  As is fully set forth in the TAC, the trustee under the deed of trust has unique and specific duties and obligations not shared by the servicer, or trustee of the Trust.  *See, e.g.,* TAC  ¶¶ 15, 62, 87.  Whether T.D. "participated" in Gardner II is a fact issue not appropriate for determination on a motion to dismiss.  As the record presently stands, T.D. is not in privity with the Defendants in Gardner II.

Other cases cited by the Moving Defendants to support their res judicata argument, fail to do so. *Maxwell v. U.S. Bank N.A.*, 544 Fed.Appx. 470 (5th Cir. 2013), an unpublished Fifth Circuit opinion, has differing facts; space constraints prevent analysis.

The Moving Defendants also argue that the Restatement (Second) of Judgments § 41 requires a finding of res judicata here.  But Arizona state law on the issue of whether a party is in privity applies, to the exclusion of Restatement sections which contradict state law.  The two *Hall* decisions, mandate the conclusion that no privity exists.  Federal law requires the same conclusion.  *See Schimmels*.  Res judicata does not bar any claims.

C.     The Note and Deed of Trust Must Be Enforced as Written.

Without the Note and DOT, there would be no loan and no controversy.  The foundation upon which this lawsuit rests, is those two contracts; they must be enforced as written.  "A valid contract must be given full force and effect even if its enforcement is harsh."  *Isaak v. Massachusetts Indem. Life Ins. Co.* 127 Ariz. 581, 584, 623 P.2d 11, 14 (*In Banc* 1981)(citing *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 421 P.2d 318 (1966)).  A court may not "revise, modify, alter, extend, or remake" a contract.  *Id.*  It is interesting that the Moving Defendants now seek to escape the application of the terms of the very contracts which *they* allege gives them the right to foreclose.  Seeking to avoid application of contract terms, the Moving Defendants argue that those terms are somehow "unwarranted legal conclusions."  *See* Motion at 11 ll. 18-19.  Such an assertion is absolutely false, and the *Steinberger* Court easily recognized this.  "[O]nly the 'true,' legally authorized trustee may, by virtue of his 'position,' exercise the power of sale."  *Steinberger,* 318 P.3d at 429 n.13.  The Moving Defendants continue to refuse to recognize the binding effect of *Steinberger*, directly on-point:

> Specifically, the complaint alleges that Respondents failed to qualify as the "Note Holder" or "Lender" under the note and deed of trust, and that they failed to comply with certain procedures that the note and deed of trust required them to complete before they could attempt to foreclose on her home.  These requirements include sending a 30-day notice of default and giving written notice of the default to the trustee.
>
> Respondents attempt to characterize these allegations as a "show-me-the-note" argument.  However, Steinberger does not argue that the true

7

beneficiary must show the note prior to foreclosure.  Instead, she argues that prior to initiating foreclosure proceedings, the true beneficiary or trustee must at least follow the enforcement provisions contained in the note and deed of trust.  Here, Steinberger contends that if Respondents are in fact the true beneficiaries or trustees of the deed of trust, their failure to comply with these provisions constituted a breach of the note and deed of trust.  These allegations specifically allege breaches of the deed of trust and promissory note.

*Steinberger*, 318 P.3d at 435 ¶¶ 69, 70 (citation omitted).

The allegations in the TAC track precisely the allegations made in *Steinberger*; indeed, Undersigned Counsel is also counsel for Katrina Perkins Steinberger.  Moving Defendants' arguments that these allegations are somehow legal conclusions, or that they do not state a claim, are contradicted by on-point Arizona law which this Court must follow.  Nationstar has already been admonished to cite and consider *Steinberger* in its pleadings filed in the District Court.  *White v. Aurora Loan Services, LLC*, 2014 WL 5080904 at * 4-6 (D.Ariz. Oct. 9, 2014)(holding, based on *Steinberger*, that claims for unconscionability and lack of authority to conduct a trustee's sale were well-pled, and admonishing Nationstar and Aurora to research Arizona law before filing any dispositive motions, and to cite "***on-point controlling legal authority, like … Steinberger.")***(emphasis supplied).

According to the Defense, Plaintiffs cannot state any claim premised on allegations that the Defendants are not the proper parties to enforce the Note and Deed of Trust. *See* Motion at 12.  In spite of the fact that several on-point Arizona cases clearly provide that a borrower can plead a valid cause of action to prevent/avoid a trustee's sale based on lack of authority to conduct such a sale such as *Steinberger*,[1] the Defendants baldly assert that there is no such valid claim, citing *Hogan v. Washington Mutual Bank, N.A.*, 230 Ariz. 584, 277 P.3d 781, 782 (*En Banc* 2012).  *Hogan* says no such thing.  The Defendants engage in the hackneyed tactic of arguing that Plaintiffs' allegations pertaining to enforcement of the terms of the Note and Deed of Trust are somehow "show-me-the-note."

---

[1] 318 P.3d at 429 ¶ 38.

8

*See* Response at 7 ll. 20-23.  The *Steinberger* court was not fooled by this argument, nor should this Court be.  The Gardners nowhere allege that any Defendant must "show the note."  Rather, the allegations in *Steinberger*, identical to the allegations in the TAC, arise out of the terms of the form Note and Deed of Trust.

The Defendants would have this Court believe that only the statutes need be followed in order to conduct a valid foreclosure sale.  *See* Motion at 12 ll. 15-22.  A reading of the statutes themselves, belies this position.  A.R.S. § 33-807(A), requires a default under the **contracts** before foreclosure can be initiated.  Whether a default has occurred can be determined only by interpreting the Note and Deed of Trust.  Those contracts are clear:  only the Lender can declare a default, only the Lender is secured by the Deed of Trust, only the Lender can notify the trustee of that default and of its election to foreclose.  *See, e.g.,* TAC ¶¶ 13, 15, 87, 88, 91, 112, 125.  That election must be in writing.  *Id.*  This comports with Arizona case law which says that "deed of trust sales are conducted on a contract theory under the power of sale authority of the trustee."  *In re Krohn*, 203 Ariz. 205, 208, 52 P.3d 774, 777 ¶8 (*En Banc* 2002).  Conditions precedent to foreclosure found in the Note and Deed of Trust must be followed as long as those terms do not contradict the deed of trust statutes.  *Krohn,* 203 Ariz. at 212, 52 P.3d at 781.

The Court of Appeals has found the allegations in the TAC valid via *Steinberger* and *Stauffer*.  Previously-decided cases out of the federal courts, and unpublished state court decisions, have no bearing on the binding effect of *Steinberger* and *Stauffer*.

Incredibly, the Moving Defendants next argue that the Uniform Commercial Code ("UCC") requires dismissal.  *See* Motion at 13 ll. 9-16.  They attempt to disguise their UCC argument by citing Black's Law Dictionary, rather than to quote the UCC itself.  Yet, as the Moving Defendants well know, the UCC does not apply in non-judicial foreclosure proceedings in Arizona.  *See, e.g., Diessner v. Mortgage Electronic Registration Systems*, 618 F.Supp.2d 1184, 1187 (D.Ariz. 2009).[2]  The Moving Defendants attempt to mislead

---

[2] If the UCC applies, the Defendants cannot foreclose.  *See, e.g., In re Kemp,* 440 B.R. 624 (D.N.J. 2010); *In re Veal,* 450 B.R. 897 (9th Cir. BAP 2011).

this Court into believing the Note Holder term in the Note is the same as "holder" in the UCC. It is not. Under the terms of the form note written by Fannie Mae/Freddie Mac, the Note Holder is "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note." *See* Doc. 44-2.

That being said, the Gardeners find it telling that the Moving Defendants never reveal who allegedly possesses the Note. In order to demonstrate the status of Lender, the only entity which can be a clear default under this loan and tell the trustee to foreclose, that entity must show that it is the Note Holder as defined, and the DOT must be assigned to that same entity. The Moving Defendants claim that the loan is in the Trust. Under the terms of that Trust the note had to be turned over to the Trust by the closing date back on July 31, 2007. But the Moving Defendants are in a quandary, because the DOT (though invalidly assigned) is currently in the name of Nationstar, which has admitted numerous times, is only the servicer. *See, e.g.,* TAC ¶¶ 65, 73.

The Moving Defendants claim that even though the DOT requires the Lender to send the written default notice to the trustee of the deed of trust, that such notice can instead be sent by an agent of the Lender/Note Holder. *See* Motion at 20 n.10. Not so. The DOT does mentions in certain places, that the "Lender or its agent" can perform an act. *See* Doc. 44-3 ¶ 7. But when the Lender's duty to write to the trustee notifying the trustee of the occurrence of an event of default and of Lender's election to foreclose on the property is described, the words "or its agent" *do not* appear. *See* Doc. 44-3 ¶ 22. Under the doctrine of "expressio unius est exclusion alterius," the failure of Paragraph 22 to state an agent can perform those acts, means an agent *cannot* perform those acts. *Cent. Hous. Inv. Corp. v. Fed. Nat. Mortg. Ass'n,* 74 Ariz. 308, 310-11, 248 P.2d 866, 867 (1952). Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower." *Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (*In Banc* 1978).

10

The Gardners have plausibly alleged that no Defendant is the Lender/Note Holder, and no Defendant is secured by the DOT.  *See, e.g.,* TAC ¶¶ 68, 70, 82, 94, 114.  Plaintiffs have also alleged that the servicer cannot be an agent for U.S. Bank (TAC ¶ 34) and that Nationstar is not the agent of the Lender (TAC ¶ 75).  These well-pled allegations must be accepted as true.

D.     The Assignments are Invalid; Plaintiffs Have Standing to Contest Their Validity.

The Moving Defendants begin their standing arguments with a false statement, viz., "all of Plaintiffs' claims . . . rely on Plaintiffs' assertion that the DOT was not properly assigned to MERS as beneficiary…."  *See* Motion at 13 ll.18-19.  The DOT was never assigned to MERS, nor did Plaintiffs ever make such an allegation.  The factual allegations in Section II must be understood in order to properly analyze the standing argument.

What Plaintiffs do allege, is that the true beneficiary under the DOT cannot be MERS.  *See* TAC ¶¶ 18, 19.  *See also, Steinberger,* 318 P.3d at 427 n.9 ("MERS does not originate or lend money for home loans.").  Contracts, to the extent they violate statutes, are unenforceable.  Therefore, the DOT term stating that MERS is the beneficiary, violates A.R.S. § 33-801(1); that provision of the DOT cannot be enforced.  A contract made in violation of statute, confers no rights and will not be enforced by the courts; a party may set up its illegality as a defense.  *United Bank & Trust Co. v. Joyner,* 40 Ariz. 229, 235, 11 P.2d 829, 832 (1932).  Further, such illegality cannot be waived or ratified.  *National Union Indem. Co. v. Bruce Bros.*, 44 Ariz. 454, 466-67, 38 P.2d 648, 653 (1934).

Therefore, it is legally impossible and impermissible to argue that MERS was or can be the true beneficiary under the DOT.  But the Gardners never alleged that MERS cannot assign the DOT.  What the Gardners do allege, is that the First Assignment is invalid, for a multitude of other reasons.  *See* TAC ¶¶ 43-50.  The Second Assignment is also void for many reasons.  *See* TAC ¶¶ 63-69.

The Moving Defendants disregard on-point Arizona law which decimates any argument that a borrower does not have standing to contest an assignment:

> Steinberger has affirmatively alleged that Respondents do not have the authority to conduct a trustee's sale on her property. Steinberger's claim is supported by a number of detailed allegations [which included arguing that two assignments of deeds of trusts were invalid] that, if proven, would seriously undermine the validity of the title transfers to Respondents. Therefore, we conclude Steinberger has pled a valid cause of action to prevent/avoid the trustee's sale based on the Respondents' alleged lack of the authority to conduct a trustee's sale of her home.
>
> * * *
>
> In this age of securitized home loans, the average borrower may be confused by the frequent transfers and reassignments of his home loan. Thus, if a borrower is in default and possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale, the borrowers should not be prohibited from challenging its authority….

*Steinberger*, 318 P.3d at 429-430 ¶¶ 38, 41. *See also, Greene v. Reed,* 15 Ariz.App. 110, 112, 486 P.2d 222, 224 (1971)(a debtor can assert any defense against an assignee and any matters rendering the assignment invalid or ineffective)(citing 6 C.J.S. Assignments § 132 (1937)).

Indeed, the Arizona Supreme Court has concluded that "the Trustor has standing to inquire into and raise objections about the process by which a trustee has been substituted." *Eardley v. Greenberg*, 164 Ariz. 261, 265, 792 P.2d 724, 728 (*In Banc* 1990). The Arizona Supreme Court found it "obvious that the trustor's ability to deal with [his] rights [in the property] can be effectively eliminated by uncertainties in the chain of title concerning either the beneficiaries or the trustee." *Id. See also, Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. 215, 311 P.3d 237, 240-241 (Ct. App. 2013)(finding that even a trustor who had already been foreclosed-upon had standing to allege defects "in assignments of the note and deed of trust, notices of trustee substitutions, and a notice of trustee's sale.").

In the face of this compelling on-point Arizona state court caselaw, the Moving Defendants only cite this Court to an inapplicable Ninth Circuit decision, an unpublished Arizona Court of Appeals decision which cannot be cited under Ariz.R.Sup.Ct. 111(c), and

a series of old district court decisions handed down before *Steinberger* and *Sitton* were decided.  *See* Motion at 14-15.  They do not merit discussion.

Moving Defendants quote extensively from a Ninth Circuit decision rendered before *Steinberger* was decided.  The case does not apply.  *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163 (9th Cir. 2013).  The plaintiff in *Zadrozny* argued that the note and deed of trust were never properly assigned to the Bank because the plaintiff did not receive notice that the loan was being sold into a real estate investment trust, and because MERS, rather than the original lender, assigned the deed of trust.  *See* Doc. 25, First Amended Complaint, in *Zadrozny v. BAC Home Loans Servicing et al;* 2:10-cv-01200-ROS, filed 1-26-11.  The extensive quotes of *Zadrozny* provided by the Moving Defendants are irrelevant, as the Gardners made neither of these allegations.

As to the remainder of the Arizona District Court decisions cited by the Moving Defendants, they can no longer be considered on the issue of standing to contest an assignment of a deed of trust, after *Steinberger*, *Stauffer* and *Sitton*.  *See West* (stating that federal courts are required to follow state law in diversity matters).

The unpublished Michigan decision on which banks routinely rely, cited by Moving Defendants, has now been debunked by the Sixth Circuit Court of Appeals.  *Slorp v. Lerner, Sampson & Rothfuss*, 2014 WL 4800100 -- Fed.Appx. -- (Sept. 29, 2014)(distinguishing *Livonia Property Holdings, LLC v. Farmington Road Holdings, LLC*, 717 F.Supp.2d 724 (E.D. Mich. 2010)).  In determining standing to challenge the validity of assignment under the state law claims asserted, the *Slorp* Court turned to state law.  *Id*. *4.  The Court made it clear that district courts have extrapolated a "sweeping rule" based on *Livonia Properties* which "dwarfs our actual holding in that case." *Id*.  The *Slorp* Court clarified that "a non-party homeowner may challenge the validity of an assignment to establish the assignee's lack of title, among other defects."  *Id*.  "Thus a non-party homeowner may challenge a putative assignment's validity on the basis that it was not

effective to pass legal title to the putative assignee." *Id*.  The Court found that Slorp had standing to contest the assignment of his mortgage to Bank of America.  *Id*. at *5.

The Defendants next hope that this Court will disregard *Steinberger* because the pleading standard in Arizona state court is different from the federal court standard.  *See* Motion at 15 l. 28; 16 ll. 1-3.  But other than this general statement, Moving Defendants fail to analyze the standard of proof further.  Similar arguments have been disregarded. *See, e.g., Nickolas v. Structured Asset Mortgage Investment II Trust* 2006-AR8, Mortgage Pass-Through Certificates, Series 2006-AR8, 2:12-cv-01922-ROS, Doc. 43 (May 27, 2014).[3]  *See also, In re MERS,* 754 F.3d 772, 784 (9th Cir. 2014)(setting forth the allegations which satisfied the plausibility standard for invalid foreclosure documents).

The Defendants next make the outlandish assertion that the reach of *Steinberger* is "quite limited."  *See* Motion at 16 ll. 3-6.  Numerous federal courts have faithfully applied and followed *Steinberger. See, e.g., Quintana v. Bank of America*, 2015 WL 690906 at * 5 (D. Ariz. Feb. 24, 2014)(following *Steinberger* and holding borrower can bring a cause of action to avoid a trustee's sale if the borrower was in default and possess a good faith basis to dispute the authority of an entity to conduct a trustee's sale); *White v. Aurora Loan Services LLC*, 2014 WL 5080904 at * 4-6 (D. Ariz. Oct. 9, 2014)(holding, based on *Steinberger*, that claims for unconscionability and lack of authority to conduct a trustee's sale were well-pled, and admonishing Nationstar and Aurora to research Arizona law before filing any dispositive motions, and to cite "on-point controlling legal authority, like … *Steinberger*."); *Martinez v. Cenlar FSB*, 2014 WL 4354875 at * 9 (D. Ariz. Sept. 3, 2014)(finding a claim for negligent performance of an undertaking well-pled, relying upon *Steinberger*); *Buffington v. U.S. Bank N.A.,* 2:14-cv-00615-DJH, Doc. 62 (Oct. 28,

---

[3] A copy of the Order is attached to the copy of this Response mailed to the Court, and is also provided by e-mail to the parties.

2014)(relying on *Steinberger,* refusing to dismiss claims for negligence *per se*, negligent performance of an undertaking, payment/discharge/satisfaction, and breach of contract).[4]

Defendants' attempt to discredit *Steinberger* by citing unpublished federal and state court opinions, is to no avail.  *See* Motion at 16 n.8.  None of these unpublished decisions, or any other decision cited by the Defendants, affect the binding *Steinberger* decision.

The Moving Defendants misrepresent Judge Bolton's dismissal Gardner II, when they claim that the Judge disregarded *Steinberger*.  *See* Motion at 16 l. 4.  The entirety of Judge Bolton's Order related to the Gardners' claim under A.R.S. § 33-420.  *Steinberger* did not make a claim under that statute.  Judge Bolton's Order said nothing about "show the note" or any securitization theory.  *See* Doc. 37 in Gardner II.

The Moving Defendants do not dispute the Plaintiffs' allegations that the substitutions of trustee and the notices of trustee's sale which have been signed and recorded, are void.  The Moving Defendants thereby admit that these documents are void.

E.    Plaintiffs' Allegations Regarding Securitization And Splitting of The Note And Deed of Trust Must Be Accepted As True On This Motion To Dismiss.

The Moving Defendants claim the fact of securitization has been alleged as a reason why Plaintiffs have a right to stop this foreclosure.  *See* Motion at 16 ll. 16-19.  The Gardners make no such allegation.  What the Gardners do allege, which is fully supported by documents attached to the TAC, is that securitization of their loan means the Certificateholders are the Lender and Note Holder under the Note and DOT.  *See, e.g.,* TAC ¶¶ 115, 116, 119, 275, 276.  Therefore, the Certificateholders are the only ones secured by the DOT, are the only ones which can declare a default on the Note, and the only ones who can write to the trustee and tell it to initiate foreclosure.  *Id.*

The case law cited by the Moving Defendants, is irrelevant.  In the cases cited, it appears that the plaintiff alleged that the defendants' failure to provide notice of securitization at the time it occurred, or that that the securitization was "unauthorized,"

---

[4]  For the Court's convenience, a copy of the *Buffington* Order is attached to the copy of this Response mailed to the Court, and is also provided by e-mail to the parties.

prevented foreclosure. *See Henkels v. JPMorgan Chase*, 2011 WL 2357874 at *7 (D.Ariz. June 14, 2011); *Warren v. Sierra Pacific Mortgage Services, Inc.*, 2011 WL 1526957 at *6 (D.Ariz. April 22, 2011. The Gardners never made those allegations. *Colonial Savings, FA v. Gulino*, 2010 WL 1996608 at *5 (D.Ariz. May 19, 2010), is also inapplicable. The Plaintiffs have not argued that payments have been misapplied.

The TAC's allegations regarding the lack of authority to foreclose in the securitization context, are well-plead under Arizona law. *Steinberger*, 318 P.3d at 430 ¶ 41 ("In this age of securitized home loans … a borrower [who] possesses a good faith basis to dispute the authority of an entity to conduct a trustee's sale … should not be prohibited from challenging its authority…."). Simply put, the Moving Defendants must prove their authority to declare default, initiate foreclosure, and foreclose, and satisfy the conditions precedent in the Note and DOT. The TAC alleges they have not done so, and that they have no such authority. The Motion must be denied.

The Gardners have properly alleged a claim for separation of the Note from the DOT. *See, e.g.,* TAC ¶¶ 115. The law cited by the Moving Defendants in an attempt to controvert the allegations, in fact supports the Gardners. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d at 1034, 1044 (9th Cir. 2011). The *Cervantes* court found that the plaintiff did not state a valid claim for splitting the note and deed of trust, because the plaintiff failed to allege that the trustee and MERS were not agents of the lender. *Id.* The Gardners have made those allegations. *See* TAC ¶¶ 120, 122, 136, 138, 288. *Cervantes* ruled that a note and deed of trust split "renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." *Id.*

The Gardners have alleged that none of the Defendants are the agent of the Lender and Note Holder. *See* TAC ¶¶ 120, 122, 136, 138, 288. Therefore, under *Cervantes*, the Gardners have stated a valid claim that the split of the Note and DOT has rendered the Note unsecured, which means no Defendant can foreclose under the DOT. The *Cervantes* court explained:

1
2
3
4
5
6

> In the event of a default on the loan, the **lender** may initiate foreclosure in its own name, or may appoint a trustee to initiate foreclosure on the **lender's** behalf.  However, to have the legal power to foreclosure, the trustee must have authority to act as the holder, or agent of the holder, of both the deed and note together.  The deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment.  Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment.

7
8
9
10
11
12

*Cervantes*, 656 F.3d at 1039 (emphasis supplied).  Clearly, then, the Note and DOT must be held together by the same entity.  The Gardners have alleged that under the Trust Agreement, the Note had to have been endorsed and turned over to the Trust.  On the other hand, the DOT was assigned first to Aurora Bank, and then to Nationstar.  See TAC ¶¶ 42, 63.  The DOT has *never* been assigned to the Trust.  Accordingly, the Note and DOT are split, precluding foreclosure.

13
14
15
16
17
18

Additional cases cited by the Moving Defendants, do not suggest a different result.  *Vawter v. ReconTrust Co*., 566 Fed.Appx. 563, 564, (9th Cir. March 28, 2014)(unpublished decision in which pro per borrower obviously failed to properly dispute that MERS was the agent of the lender); *Ciardi v. The Lending Company, Inc*., 2010 WL 2079735 at *3 (D.Ariz. May 24, 2010)(pro per plaintiff failed to allege MERS was not the nominee of the current owner of the note and failed to allege facts of splitting).

19
20
21
22
23
24
25

The Moving Defendants' next attempt to argue facts not set forth in the TAC, nor in any exhibits thereto, with respect to contracts between the parties to the Trust.  *See* Motion at 18-19.  These arguments cannot be considered, for many reasons.  First, the Moving Defendants apparently believe that they can alter or void the enforceable terms of the Gardners' Note and DOT with their Lender, through a subsequent agreement between U.S. Bank as Trustee, and non-party entities, entered into without the knowledge or acquiescence of the Gardners.[5]  Therefore, when it comes to the issue of conditions

26
27
28

---

[5] Nationstar is not listed as a servicer, in the Trust Agreement.  *See* Doc. 44-6; at 12 of 27.

precedent to foreclosure, the Note and DOT govern over any conflicting provisions in the Trust Agreement.

The quoted provisions of the Trust Agreement are irrelevant here, for another reason.   The provisions quoted refer to and depend upon agreements which are not attached as exhibits to the TAC.   For instance, Section 9.04 from which the Moving Defendants quote extensively, refers three times to "the applicable Servicing Agreement" which limits the rights granted in the Section.   *See* Motion at 18 ll. 12-24.   The Section also refers to "Accepted Servicing Practices" which must be followed in implementing its provisions, and that the Trustee, U.S. Bank, must execute powers of attorney to allow other entities to implement the powers granted.   *See* Motion at 19 ll. 6-18. None of these items are in the record or before the Court on this Motion.[6]   These defenses present factual disputes that cannot be resolved at the motion to dismiss stage.   *See Corvello*, 728 F.3d at 885 (Wells Fargo's defense that it determined the plaintiffs did not qualify for a loan modification was not alleged in the complaint; on a motion to dismiss, the court could not consider that defense which is "a factual dispute that cannot be resolved [at the motion to dismiss stage].").

The Moving Defendants next argue that the Assignments' failure to state that the Note was transferred with the Assignment, does not mandate the conclusion that the Note was separated from the DOT.   *See* Motion at 20 ll. 4-10.   But the Gardners have alleged that the Note and DOT were split, and supported those allegations with documents in the record.   If the Note has never been separated from the DOT, the Moving Defendants can prove that through discovery.   But now they must accept the Gardners' allegations.

F.      Plaintiff's State a Claim Under A.R.S. § 33-420, and for Slander of Title.

The Moving Defendants dedicate two pages of their Motion to arguing law applicable to a quiet title claim under A.R.S. § 12-1101.   The Gardners make no such quiet

---

[6]   The same goes for the Moving Defendants' argument regarding Section 9.20(a) of the Trust Agreement, which again refers to the Servicing Agreement.

title claim.  Rather, they make the claim for quieting title as to the false, groundless, and otherwise invalid recordings against their property including the two Assignments, the four Substitutions, and the two notice of trustee's sale.  *See* TAC ¶¶ 189, 204, 205, 208.

Under recent on-point Arizona state law, the Gardners have stated claims under A.R.S. § 33-420 as to the invalidly recorded documents.  *See Stauffer v. U.S. Bank N.A.*, 233 Ariz. 22, 308 P.3d 1173 (Ct. App. 2013).  Under *Stauffer*, recorded foreclosure documents including an assignment of deed of trust, a notice of substitution of trustee, and a notice of trustee's sale, are all documents covered by the statute.  308 P.3d at 1177-78 ¶ 15.  The court specifically found that even though the borrowers had not paid off their loan obligation, they were still "owners" of the property under the statute, and could therefore assert a claim.  308 P.3d at 1179 ¶ 22.  As for standing, the Plaintiffs had alleged that their title was clouded as a result of the false or fraudulent documents recorded; this cloud on title was a "distinct and palpable injury" which satisfied the standing requirement.  *Id.* at ¶ 25.

The Ninth Circuit has faithfully applied *Stauffer*, and reversed the Arizona District Court which had dismissed claims under A.R.S. § 33-420 for the recording of false assignments, notices of substitution of trustee, and notices of trustee's sale.  *In re Mortgage Elec. Registration Systems, Inc.*, 754 F.3d 772, 782-83 (9th Cir 2014).  The Ninth Circuit found that where plaintiffs alleged the documents were forged because they were "robo-signed," that notices of trustee's sale were notarized in blank and later signed by an individual not named in the document, and for other reasons, the plaintiffs stated claims under the statute.  *Id.* at 783.  The Ninth Circuit found that these allegations "plausibly suggest an entitlement to relief," citing *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S.Ct. 1937 (2009).  *Id.* at 784.

The Moving Defendants only address the Gardners' claim under A.R.S. § 33-420, in a few lines.  *See* Motion at 16 ll. 6-14.  But as already discussed above, their case law has no application.  The Gardners here allege that the recordings against their property are

false, groundless, or otherwise invalid as detailed at length in the TAC.  Therefore, any holding issued by a court with respect to a claim of material misrepresentation in a recorded document, simply does not apply.  Further, Moving Defendants are not allowed to cite an unpublished Arizona Court of Appeals opinion.  Ariz.R.Sup.Ct. 111(c).

The Moving Defendants failed to address the slander of title allegations in Count 4; therefore, that portion of Count 4 is not subject to dismissal.  Because Moving Defendants failed to address this claim in their Motion, they are barred from making any argument pertaining to slander of title in their Reply.

G.    The Negligence Per Se Claim is not Subject to Dismissal.

As previously demonstrated by the Gardners, they have properly alleged facts entitling them to relief under A.R.S. § 33-420.  *See* Section III(F) above; *see also*, *Stauffer*, and *In re MERS*.  The Moving Defendants are wrong when they claim that Count 5 fails to identify any conduct that violated Subsection (A) of the statute.  *See* Motion at 22 ll. 11-13.  The Gardners have alleged all elements in the statute.  *See* TAC ¶¶ 214, 217, 218, 220.

As for the assertion that the TAC fails to allege which defendant purportedly recorded or caused to be recorded each instrument, this argument is also untrue.  *See* TAC ¶¶ 204, 214, 219.  But to the extent Plaintiffs have not alleged the entity recording a document, Plaintiffs' claim cannot be dismissed for failing to do so.  *See Quintana*, 2014 WL 690906 at *5 (where plaintiffs cannot discern facts due to defendants' actions, plaintiffs state a claim even without allegations against individual defendants).

Moving Defendants appear to argue that A.R.S. § 33-420 cannot be the basis of a negligence per se claim, but provide no authority for their position.  In fact, *Steinberger* acknowledges that A.R.S. § 39-161 is a recording statute "similar" to A.R.S. § 33-420, and that "a misrepresentation in a recorded instrument may be material where the borrower/trustor alleges the putative beneficiary is not, in fact, the true beneficiary." *Steinberger*, 318 P.3d at 433 n. 17.  Negligence per se is well-plead as to A.R.S. § 33-420.

Contrary to the Moving Defendants' assertion, Judge Bolton did not dismiss the claim under A.R.S. § 33-420 because the *recordings* "were not material."  Her ruling, subject to a pending Motion, found that the recordings did not contain misrepresentations material to the Plaintiffs.  Such a ruling has no effect on the claims at issue here, which also allege that the recordings are false, fraudulent, or otherwise invalid.  *See, e.g.,* TAC ¶¶ 191, 196, 204, 205.

The Moving Defendants failed to move with respect to the Plaintiffs' negligence per se claim under A.R.S. § 39-161.  Therefore, that claim stands, and is obviously well-pled under the standards set forth in *Steinberger*.  318 P.3d at 423 ¶¶ 54-62.

The Moving Defendants make a general statement that the statute of limitations may apply to certain of the documents.  *See* Motion at 22 ll. 24-26.  But they fail to develop their argument any further, and it must therefore be disregarded. The negligence per se claims have been well-pled; the Motion should be denied.

H.    The Gardners' Breach of Contract Claim is Well-Pled.

The Moving Defendants dedicate only two paragraphs in their Motion, to the Breach of Contract count.  The first paragraph appears to acknowledge the Plaintiffs' position that none of the Defendants have any interest in the Note and DOT.  The Gardners could not agree more, and if the Moving Defendants are willing to so acknowledge, the Motion must be denied, and Judgment can be entered against them on all counts.  If the Moving Defendants are not yet willing to acknowledge these facts, then they must accept as true the Plaintiffs' allegations in the alternative that the Moving Defendants have breached the Note and DOT, as detailed in Count 2.

Moving Defendants assert, without any good faith basis, that the Gardners do not allege which provisions of the Note or DOT were breached.  The TAC sets forth numerous breaches of the contracts.  *See* TAC ¶ 167.  As for the argument that the Gardners failed to set forth what laws were breached, this assertion is also false.  *See* TAC ¶ 168.  The

allegations set forth in the TAC are more than enough, and clearly satisfy the requirement of stating a claim for breach of contract under *Steinberger*:

> While Steinberger's allegations concerning breach of contract are interspersed throughout the complaint, when read as a whole, the complaint does identify several alleged breaches of the note and the deed of trust. Specifically, the complaint alleges that Respondents failed to qualify as the "Note Holder" or "Lender" under the note and deed of trust, and that they failed to comply with certain procedures that the note and deed of trust required them to complete before they could attempt to foreclose on her home. These requirements included sending a 30-day notice of default and giving written notice of the default to the trustee.
>
> * * *
>
> Here, Steinberger contends that if Respondents are in fact the true beneficiaries or trustees of the deed of trust, their failure to comply with these provisions constituted a breach of the note and deed of trust. ***These allegations sufficiently allege breaches of the deed of trust and promissory note.***

318 P.3d at 435 ¶¶ 69-70 (emphasis supplied).  Once again, the Moving Defendants have refused to acknowledge and cite the seminal Arizona case on point in this matter, *Steinberger*.  *Steinberger* is dispositive here, the Motion on the breach of contract count must be denied.

As for any claim by the Moving Defendants that a failure to specifically detail which Defendant engaged in what behavior, such an argument fails on a motion to dismiss. Parties to a note and their agents cannot escape liability simply because the plaintiff cannot ascertain, as a result of the defendants' actions, who was the responsible party.  *Quintana*, 2014 WL 690906 at *5.  Under such circumstances, a plaintiff states a plausible claim against all defendants.  *Id.*  The Breach of Contract count cannot be dismissed under *Steinberger* and other cited law.

I.   <u>Breach of the Duty of Good Faith and Fair Dealing is Well-Plead.</u>

The Moving Defendants begin their Motion with respect to Count 3, by admitting that they are third parties with no legal connection to the Note and DOT.  *See* Motion at

23 ll.21-28; 24 ll.1-6.  What the Moving Defendants apparently fail to realize is if they do not have any legal relation to either of those contracts, then the TAC as a whole must be sustained, and Judgment should be entered in favor of the Gardners at this time as to all Moving Defendants.  The trustee's sale must also immediately be cancelled.

The Moving Defendants next argue that Count 3 is not well-pled, because there is no breach of contract.  *See* Motion at 24 ll. 7-9.  But this is not the law.  A party can breach the implied covenant of good faith and fair dealing without breaching an express term of the contract.  *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 ¶14 (Ct. App. 2002).

The duty of good faith and fair dealing under a contract is breached "when the other to a party to a contract manipulates bargaining power to its own advantage.…"  *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*, 201 Ariz. 474, 491, 38 P.3d 12, 29 (*En Banc* 2002).  "[A] party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in [a] way not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain."  *Snyder v. HSBC Bank*, 873 F.Supp.2d 1139, 1152 (D.Ariz. 2012).  The Arizona courts have readily recognized that "[i]nstances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain."  *Southwest Sav. & Loan Ass'n v. SunAmp Systems, Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (Ct. App. 1992).

The Moving Defendants again attempt to convince this Court that the plain terms of the Note and DOT, as set forth in the TAC, are somehow "legal conclusions."  *See* Motion at 24 ll. 13-16.  This assertion is false, as is fully addressed in Section III(C) above.  And to the extent the DOT claims that MERS is a valid beneficiary, that provision contradicts Arizona statute, and therefore cannot be legally enforced.  *See* A.R.S. § 33-801(1).  *See*

Section III (D).  Contrary to Moving Defendants' assertion, **nowhere** in the DOT does it say that foreclosure is a servicing obligation which can be handled by a servicer.  *See* Motion at 24 ll. 19-21.  Such an assertion is simply false.

The Gardners have properly stated a claim in Count 3.  They provide, in great detail, the breaches of the covenant which occurred, and their reasonable expectation that the Lender and Note Holder would determine whether there was a default, and as required would write to the Gardners and the trustee; that only a properly appointed trustee under the DOT, acting under instructions from the Lender, would take any necessary action; and more.  *See* TAC ¶¶ 177-183.  The Motion is baseless and must be denied.

J.      The Gardners Have Stated an FDCPA Claim Against the Trustees.

In their Motion, the Moving Defendants provided two grounds for dismissal of the Gardners' FDCPA claim:  (1) that a non-judicial foreclosure is not the collection of a debt; and (2) that a trustee under a deed of trust is exempt from the Act.  Wrong, on both counts.

Up until June of 2012, the federal courts operated under the erroneous legal conclusion that a non-judicial foreclosure is not the collection of a debt. In 2012, the Arizona Court of Appeals confronted this precise issue, and specifically held that a non-judicial foreclosure is the collection of a debt:

> The debt arises from the promissory note.  It is contractual.  Such debt may be secured by a deed of trust or mortgage.
> …
> The Arizona statutes governing foreclosures, mortgages and deeds of trust are in accord with the interpretation that the contractual debt is foremost with any foreclosure or sale being secondary and nearly a means of recovery on the original debt.   A "Trust Deed" is defined as "a deed executed in conformity with this chapter … to secure the performance of a contract or contracts …" A.R.S. § 33-801(8).  Section 33-807(A) details when there can be a foreclosure under a trust deed:  "trust property may be sold, in the manner provided in this chapter, after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security, or a breach or default of the trust deed."
> …

24

> The promissory note is the primary source of the debt.  And, as the debt on the promissory note is primary, the foreclosure or trustee's sale is ancillary to the collection of the debt, not the other way around.

*National Bank of Arizona v. Schwartz*, 230 Ariz. 310, 312-13, 283 P.3d 41, 43-44 ¶¶ 7, 9 (Ct. App. 2012).  Without doubt, a foreclosure of a deed of trust is the collection of a debt.

The Moving Defendants' position that a trustee under a deed of trust is exempt from the FDCPA, is belied by their own case law.  *Zinni v. Jackson White, PC*, 2012 WL 869008 at *2 (D.Ariz. March 14, 2012).  The entities exempt from application of the FDCPA are "mortgagees and their assignees, servicing companies, and trustee fiduciaries …."  *Id.* (*quoting Mansour v. Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1182 (D.Ariz. 2009)).

Trustees under deeds of trust are not fiduciaries under Arizona law.  Indeed, when the Arizona Supreme Court so held in the original opinion issued in Hogan[7], Tiffany and Bosco quickly re-petitioned the Arizona Supreme Court to have that holding removed from the decision.  The *Hogan* decision was amended, deleting the statement that a trustee under a deed of trust is a fiduciary. The exclusion of trustee fiduciaries from the definition of debt collector in the FDCPA does not exclude trustees under deeds of trust.

Given the *Schwartz* case, any Arizona District Court cases which contradict its holding, must be disregarded.  The Motion as it pertains to the FDCPA, must be denied.

K.   The Intentional Interference Claim Cannot be Dismissed.

The tort of intentional interference with contractual relations requires:  (1) existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to

---

[7]  *Hogan v. Washington Mutual Bank, N.A.*, 230 Ariz. 584, 587, 277 P.3d 781, 784 ¶ 11 (En Banc 2012)(as amended July 11, 2012).  *See also*, Quintana, 2014 WL 690906 at *9 ("[T]rying to collect the note that secures the deed of trust qualifies as the collection of a debt.").

the party whose relationship has been disrupted; and (5) that the defendant acted improperly.  *Wells Fargo Bank*, 201 Ariz. at 493, 38 P.2d at 31 (citing Restatement (Second) of Torts § 766 (1977)).

The Moving Defendants assert several irrelevant bases upon which they believe their Motion to Dismiss this Count should be granted.  First, they claim that Plaintiffs' allegations all assert that the Moving Defendants interfered with contracts the Gardners had with GreenPoint, causing one or more breaches.  *See* Motion at 26 ll. 10-11.  But most of Plaintiffs' allegations go to interference the Moving Defendants caused with contracts that the Gardners have with their true Lender.  *See, e.g.,* TAC ¶¶ 276, 284, 287.  The Gardners allege that none of the Moving Defendants have a legal connection to their Note and DOT; therefore, the void and invalid assignments, substitutions of trustee, and notices of trustee's sales recorded, have interfered with the plain terms of the contracts which require that the Lender declare default, and write to the trustee electing to foreclose.  The Lender must also write to the Gardners, and provide them with a 30-day notice of default before foreclosure may be initiated.  *See, e.g.,* TAC ¶¶ 13, 15, 73-76.  None of these conditions precedent to foreclosure in the contracts, were performed.  Therefore, the Moving Defendants interfered with those contracts.

The Moving Defendants next assert, falsely, that the TAC failed to allege conduct and damages which flowed from interference in the contract between the Gardners and the Lender.  The Gardners detailed, in multiple allegations, the chronology of void and invalid documents which were created, signed, and recorded which initiated the illegal foreclosure against them by parties not the Lender and Note Holder.  Rather, imposters stepped in and claimed to have legally and properly performed the duties and obligations reserved only for the Lender.

As a last-ditch argument, the Moving Defendants claim that the Plaintiffs have no standing to assert rights under the Trust Agreement.  *See* Motion at 26 ll. 22-23.  But the Gardners do not attempt to enforce any provisions in that Agreement.  Rather, they assert

that the Moving Defendants have stepped in and illegally performed the conditions precedent to foreclosure set forth in the Note and DOT.  The Moving Defendants cannot legally do so under the clear contract terms; they have therefore interfered with the contract between the Gardners and their Lender/Note Holder.

The Moving Defendants make no other arguments regarding the well-pled claim for intentional interference with contract.  Therefore, the Motion pertaining to Count 8 must be denied.

L.     No Motion Was Made With Respect to Count 7; Cancellation of Trustee's Sale.

Because the Motion does not address Count 7 for cancellation of the trustee's sale, that Count must be allowed to stand.

M.     Amendment Should be Allowed if Any Claims are Dismissed.

In the event this Court dismisses any Count of the TAC, Plaintiffs request leave to amend to rectify the deficiencies.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)(leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts).

## IV.     CONCLUSION.

Based on the foregoing, the Gardners respectfully request that the Motion be denied in its entirety, and that they be allowed to move forward on the merits of all their claims and seek the declaratory and other relief requested.[8]  In the event any portion of the Motion is granted, Plaintiffs request leave to amend.

---

[8]  Moving Defendants argue that Plaintiffs are not entitled to any declaratory relief.  *See* Motion at 27.  Plaintiffs have demonstrated throughout their Response that they are so entitled, so they will not respond specifically to this argument.

RESPECTFULLY SUBMITTED this 12th day of January, 2015.

BARBARA J. FORDE, P.C.

By:    s/ Barbara J. Forde
          Barbara J. Forde, Esq.
          20247 N. 86th Street
          Scottsdale, AZ  85255
          *Attorney for Plaintiffs*

ORIGINAL e-filed this 12th
day of January, 2015, with
COPIES delivered through ECF to:

Laura Sixkiller
Stacey F. Gottlieb
GREENBERG TRAURIG, LLP
2375 East Camelback Rd., Ste 700
Phoenix, AZ  85016
*Attorneys for Defendants Nationstar*
*Mortgage, T.D. Service Co., and*
*U.S. Bank as Trustee*

s/Barbara J. Forde