Barbara J. Forde (013220)
BARBARA J. FORDE, P.C.
20247 N. 86th Street
Scottsdale, AZ 85255
BarbaraJForde@gmail.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; T.D. SERVICE COMPANY OF ARIZONA, a California corporation; U.S. BANK, N.A., as TRUSTEE of the LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N; STARLET J. JAPP, a member of the California and Arizona State Bars; CLAYTON A. GOFF, a member of the Arizona, Texas, California and Nevada State Bars; AMSL LEGAL GROUP, LLC, an unknown entity; AMSL LEGAL GROUP, LLP, fka ARONOWITZ MECKLENBURG SPITALNICK & LIEPOLD, LLP, California Limited Liability Partnership; ABC Corporations 1-100; XYZ Limited Liability Companies and Partnerships 1-100; 123 Banking Associations 1-100; and DOES 1-100, <br><br> Defendants. | Case No. 2:13-cv-01641-HRH <br><br><br> **FOURTH AMENDED COMPLAINT** |

Plaintiffs Jay N. Gardner and Rachel B. Gardner (the "Gardners"), and for their Fourth Amended Complaint against the Defendants, allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiffs Jay and Rachel Gardner are husband and wife, and are residents of Maricopa County, Arizona, holding the subject property located at 3601 East Mountain View Road, Phoenix, Arizona 85028 (the "Property") in fee simple since April 19, 2007.

2.    Defendant Nationstar Mortgage LLC ("Nationstar") is a Delaware limited liability company, doing business in Arizona.  Nationstar is the purported servicer of the loan at issue in this action, and purports to be the Assignee under the Deed of Trust through Assignor Aurora Bank FSB, by an assignment signed June 28, 2012 with a purported effective date of July 1, 2012.

3.    Defendant T.D. Service Company of Arizona ("T.D.") is a California corporation which was purportedly substituted as trustee under the Deed of Trust in April of 2013.

4.    Defendant U.S. Bank, N.A. is Trustee of a Trust Agreement, dated as of July 1, 2007, on behalf of the Certificateholders of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N (the "2007-15N Trust").   The Gardners' loan was purportedly sold into the 2007-15N Turst. According to the MERS ServicerID, "U.S. Bank as Trustee" is the Investor on the loan related to the Property.

5.    Defendant Starlet J. Japp, a member of the Arizona and California State Bars, was substituted in as trustee under the Deed of Trust by a Notice of Substitution of Trustee (the "Third Substitution") signed by "Heidi Mucha, Operations Manager of AMSL Legal Group, LLC, as attorney in fact for Nationstar."  Between the time of filing the Third Amended and Fourth Amended Complaints, Ms. Japp changed her Arizona State Bar status to "inactive."   According to the Arizona State Bar website, her address is 400 Exchange Suite 100, Irvine, CA 92602, the address of AMSL Legal Group, LLP.  The Third Substitution is dated September 5, 2014, but was not recorded until September 10, 2014.

6.    Defendant Clayton A. Goff, a member of the Arizona, Texas, California and Nevada State Bars, was substituted in as trustee under the Deed of Trust by a Notice of Substitution of Trustee (the "Fourth Substitution") signed by "Heidi Mucha, Operations Manager of AMSL Legal Group, LLC, as attorney in fact for Nationstar."  According to the Arizona State Bar website, Mr. Goff's employer is Barrett Daffin Frappier Turner & Engel (the "Barrett Firm"), located at 15000 Surveyor Blvd, Addison, TX.  Ms. Mucha is

also employed by the Barrett Firm.  *See* Doc. 74 at 4.  Ms Mucha purports to have authority to act on behalf of AMSL Legal Group, LLP "through an intercompany agreement."  *Id.*  The Fourth Substitution is dated September 29, 2014, and was recorded October 2, 2014, as Maricopa County Recorder Doc. No. 20140653071.

7.     Defendant AMSL Legal Group, LLC ("AMSL, LLC"), is an apparently non-existent entity constructed by Defendant AMSL Legal Group, LLP ("AMSL LLP"), a California limited liability partnership and its predecessor Aronowitz Mecklenburg Spitalnick & Liepold, LLP ("Aronowitz") for use in recording false, groundless, void, and otherwise invalid documents against title for the purpose of conducting illegal foreclosures.  The address for AMSL, LLP is 400 Exchange Street, Suite 110, Irvine, CA 92602.  This is the same address as Sage Point Lender Services, LLC.  Sage Point Lender Services ("Sage Point") is the entity listed on the Third and Fourth Substitutions, as the "when recorded mail to" party.

8.     AMSL, LLC, by Heidi Mucha, signed two difference Notices of Substitution of Trustee appointing Defendants Japp and Goff as trustees under the Deed of Trust. Defendants Japp and Goff were or are employees of AMSL, LLC, and/or AMSL, LLP and/or Aronowitz, or are or were otherwise affiliated with one or more of these, such that AMSL, LLC purported to substitute Japp and Goff as trustees under the Deed of Trust.

9.     The domain names for both AMSL (AMSLCA.com) and Sage Point (SagePointLS.com) are in the name of Registrant Aronowitz in Denver, Colorado. Aronowitz is also listed as the "Admin Contact" on the domain names.

10.    Aronowitz was sued for millions of dollars in a class-action lawsuit for increasing fees charged in home foreclosures the firm was handling, which resulted in Aronowitz's paying $10 million to state investigators and $2.5 million to Colorado homeowners.  The Colorado Attorney General's office forced the law firm to close its doors as a part of a settlement.  Aronowitz is now the legal Registrant and Admin Contact for AMSL and Sage Point, and changed its name to AMSL Legal Group LLP on October 7, 2013.

11.   Plaintiffs are currently unaware of the identity and capacity of ABC Corporations 1 through 100, XYZ Limited Liability Companies and Partnerships 1 through 100, and 123 Banking Associations 1-100 and DOES 1 through 100, but will amend the Complaint when their identities have been ascertained.  Plaintiffs allege upon information and belief, however, that each and every presently unknown Defendant has been the agent, servants or employee of each other, purporting to act within the scope of said agency, service or employment in performing the acts and/or omissions alleged herein.

12.   The Property is Plaintiffs' residence, carries parcel No. 165-15-016Q, and is more fully described as:

> The North 205 feet of the West half of the Northwest quarter of the
> Northwest quarter of the Southeast quarter of Section 25, Township 3
> North, Range 3 East of the Gila and Salt River Base and Meridian,
> Maricopa County, Arizona.

## GENERAL ALLEGATIONS

13.   On April 20, 2007, the Gardners acquired superior fee simple title to the Property by a Warranty Deed, recorded at the Maricopa County Recorder's Office at Doc. No. 20070500848.  *See* copy of Warranty Deed, attached hereto as Exhibit 1.

14.   On or about April 19, 2007, the Gardners entered into the Adjustable Rate Note (the "Note") and the Deed of Trust (collectively, the "Loan") with GreenPoint Mortgage Funding, Inc. ("GreenPoint"), as the Lender.   The Note had a principal balance of $960,000.00.  The Note states that:

(a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder;'"

(b) if the borrower is in default, "the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and

all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me….”

(c) “[i]f the Note Holder has required me to pay immediately in full … the Note Holder will have the right to be paid back by me….”

(d) “[i]n addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the ‘Security Instrument’) … protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.”  *See* unauthenticated copy of Note, attached hereto as Exhibit 2.[1]

15.   On April 23, 2007, the Gardners signed a Deed of Trust (the “DOT”) dated April 19, 2007, as trustors, and which listed GreenPoint Mortgage Funding, Inc. (“GreenPoint”) as the Lender.

16.   The DOT: (a) requires the Lender to give the Trustor (i.e., the Plaintiffs) 30 days’ notice of default before accelerating the loan balance; (b) requires that the Lender give the Trustee written notice of the occurrence of an event of default and of Lender’s election to cause the Property to be sold, before the Trustee may initiate a sale; (c) imposes a duty on the Lender to release the DOT “[u]pon payment of all sums secured by this Security Instrument….”; (d) secures to Lender (*not the beneficiary*) (i) the repayment of the Loan, and (ii) the performance of borrowers’ covenants and agreements under the DOT and Note.  *See* Deed of Trust, recorded on April 30, 2007, at Doc. No. 20070500849, an unofficial copy of which is attached hereto as Exhibit 3, at pp. 1-3; ¶¶ 22, 23.

17.   Although the DOT lists Mortgage Electronic Registration Systems, Inc. (“MERS”) as beneficiary under the DOT, MERS was only a nominee for the Lender under the DOT solely for the purpose of avoiding recording an assignment of the DOT each time the Loan was purportedly sold/assigned/transferred.

---

[1]  Plaintiffs do not admit that this is a true and accurate copy of the Note; indeed this copy contains no endorsements.  Until Plaintiffs have been provided a copy of the Note with all endorsements, and given the opportunity to forensically examine the original Note, they do not admit the debt or the validity of same.

18. MERS does not take possession of notes and did not take possession of Plaintiffs' Note. The Note does not list MERS as a nominee, Lender, or Note Holder. The Note was never endorsed to MERS, nor endorsed in blank and held by MERS. MERS never had any financial interest in the Loan; MERS does not originate loans or lend money. MERS is not the agent of the Lender.

19. The deed of trust statutes define "beneficiary" as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." A.R.S. § 33-801(1). The person for whose benefit a trust deed is given, is the Lender/Note Holder.

20. MERS was never the true Beneficiary under the DOT.

21. MERS requires those which use MERS' database to be members of MERS. Only those taking specialized training, who are officers of member companies, are authorized to be certifying officers of MERS. Only certifying officers of MERS may sign documents on behalf of MERS.

22. As of August 18, 2014, the MERS ServicerID system shows the servicer of this Loan as Aurora Commercial Corp., and the "Investor" as "U.S. Bank as Trustee." Aurora Commercial Corporation is the successor organization to Aurora Bank FSB dedicated solely to completing the wind down of its affairs. Aurora Bank FSB ceased operations in June of 2012. A copy of the MERS ServicerID system page pertaining to this Loan is attached hereto as Exhibit 4.

## TRANSFER OF THE LOAN INTO THE LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N

23. According to correspondence from Nationstar dated July 15, 2012, the debt evidenced by the Loan "is owed to U.S. Bank as Trustee, LXS Series 2007-15N, but is being serviced by Nationstar." A copy of this July 15, 2012 correspondence from Nationstar to the Gardners is attached hereto as Exhibit 5.

24.  The July 15, 2012 correspondence contains false information.  As is fully alleged below and acknowledged by U.S. Bank, U.S. Bank as Trustee does not own the Loan, and U.S. Bank as Trustee is not the creditor or Lender on the Loan.  Further, the identification of the real estate mortgage investment conduit ("REMIC") into which the Loan was allegedly placed, is materially misleading; the name of the Trust actually is, the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N (the "Trust").

25.  The Trust was created by a Trust Agreement dated July 1, 2007, between Structured Asset Securities Corporation (the "Depositor"), Aurora Loan Services LLC (the "Master Servicer"), and U.S. Bank National Association (the "Trustee").  This Trust Agreement was filed with the Securities and Exchange Commission on August 15, 2007.[2]

26.  The Trust Agreement states that the Depositor acquired the loans from Lehman Brothers Holdings Inc. (the "Seller") and at the Closing Date, July 31, 2007, is the owner of the Mortgage Loans.  *See* Preliminary Statement to Trust Agreement, an excerpt of which is attached hereto as Exhibit 6, and Section 1.01 at 49.

27.  The Depositor, concurrently with execution and delivery of the Trust Agreement, transferred, assigned, set over, and deposited with and conveyed to the Trustee, without recourse and ***in trust***, all the right, title and interest of the Depositor to the Mortgage Loans.  The Trustee holds the Trust Fund, consisting of the Mortgage Loans, "***in trust, for the benefit and use of the Holders of the related Certificates***…."  The Certificates are issued to investors, "evidencing the entire ownership of the Trust Fund."  Exhibit 6, Section 1.01 at 106; Section 2.01(a)(emphasis supplied).

28.  In connection with the transfer and assignment of the Mortgage Loans, the Depositor "does hereby deliver to and deposit with" the Trustee, as to each Mortgage Loan, the Mortgage File consisting of: (1) the original Mortgage Note endorsed without recourse to the order of the Trustee as set forth on Exhibit B-4 attached to the Trust

---

[2]  The entire document is 405 pages long, and can be found at
http://www.sec.gov/Archives/edgar/data/1406223/000114420407044356/v084952_ex4-1.htm

Agreement, or in blank, and (2) the original recorded Mortgage.   As to the form of endorsement on Exhibit B-4, the Trust Agreement specifically states that it "is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages."  Exhibit 6, Section 2.01(b).

29.   The transfer and assignment of the Mortgage Loans was to occur on or before the Closing Date of July 31, 2007.  Exhibit 6 at 49.

30.   As to each MERS Mortgage Loan, the Master Servicer, with the cooperation of the Servicer, was required to "cause the Trustee to be clearly identified as the owner of each such Mortgage Loan on the records of MERS…."  Exhibit 6, Section 2.01(c)(ii). This designation is materially misleading and false; the Trustee of the Trust is **not** the owner of the Mortgage Loans.

31.  The Trust Agreement states that all covenants and agreements made by the Depositor, Master Servicer and the Trustee in the Trust Agreement with respect to the Mortgage Loans constituting the Trust Fund, are for the benefit of the Holders of the Certificates.    Exhibit 6, Preliminary Statement.

32.  "Holder or Certificateholder" is defined in the Trust Agreement as the registered owner of any Certificate as recorded on the books of the Certificate Registrar.  Exhibit 6, Section 1.01 at 60.

33.  "Mortgage Loan" is defined in the Trust Agreement as a Mortgage and the related note or other evidence of indebtedness secured by each such Mortgage conveyed, transferred sold, assigned to or deposited with the Trustee pursuant to Section 2.01. Exhibit 6, Section 1.01 at 73.

34.   "Trustee" is defined as U.S. Bank National Association, "not in its individual capacity, but solely in its capacity as trustee … for the benefit of the related Certificateholders…."  Exhibit 6, Section 1.01 at 107.

35.  The Trust Agreement makes it clear that the Agreement shall not be construed to render any of the Trustee, Servicer, Custodian or Master Servicer, agents of one another. Exhibit 6, Section 6.01(c)(iii), (iv); 6.01(k).

36.  The Trust Agreement is governed by and construed in accordance with the laws of the state of New York.  Exhibit 6, Section 11.06.

37.  Under New York law, every sale, conveyance or other act of the Trustee in contravention of the Trust, is void.  EPTL § 7-2.4.

38.  There are nine (9) servicers listed in the Trust Agreement including GreenPoint and Aurora Loan Services, LLC.  Exhibit 6, Section 1.01 at 102.

39.  Aurora Bank FSB is not named or listed anywhere in the Trust Agreement.

**SERVICING TRANSFERS OF THE LOAN**

40.  On July 13, 2007, GreenPoint sent a letter to the Gardners telling them that servicing of their Loan was being transferred from GreenPoint to GMAC Mortgage, effective August 1, 2007.

41.  On October 15, 2010, GMAC Mortgage, LLC, sent a letter to the Gardners telling them that servicing of their Loan was being transferred to Aurora Loan Services, effective November 1, 2010.

42.  On July 15, 2012, Nationstar Mortgage, LLC, wrote to the Gardners and told them that the servicing of their Loan was being transferred from Aurora Loan Services to Nationstar, effective July 1, 2012.

**FORECLOSURE ACTIVITY**

43.  On September 21, 2011, Assistant Vice President of Aurora Bank FSB Stacy Sandoz, claiming to be Vice President of MERS, signed a Corporate Assignment of Deed of Trust (the "First Assignment") assigning the DOT, "as nominee for GreenPoint Mortgage Funding, Inc.," to Aurora Bank FSB.  The First Assignment was notarized in

9

Scotts Bluff County, Nebraska, where Aurora Bank FSB is located and where Ms. Sandoz works, for Aurora Bank FSB.  The First Assignment was recorded on October 17, 2011, at Doc. No. 20110858688.  An unofficial copy of the First Assignment is attached hereto as Exhibit 7.

44.   On information and belief, Ms. Sandoz is not an authorized Certifying Officer of MERS nor is she an employee of MERS; therefore, she had no authority to sign on behalf of MERS, and the First Assignment is invalid and void.

45.   In the alternative, if Ms. Sandoz is a MERS employee, then the Assignment is invalid; MERS is located in Virginia, where the Assignment was signed on September 21, 2011, and on the same day, Deb Seibert claims that Ms. Sandoz acknowledged before her, Ms. Sandoz' signature, in Nebraska.  This renders the document invalid under Arizona law.

46.   The First Assignment purports to assign only the DOT, *and not the Note,* to Aurora Bank FSB.  Therefore, as of September 21, 2011 if not earlier, the Defendants purposely and through an affirmative writing publicly recorded, separated the Note from the Deed of Trust.

47.   Aurora Bank FSB was not the Note Holder or the Lender.  Aurora Bank FSB in fact did not have, and never has had, any legal relation to this Loan.

48.   At the time of the First Assignment, Aurora Loan Services, LLC was (and still is) the Master Servicer of the Trust, and was at that time the Servicer of the Loan as well.

49.   Therefore, Aurora Bank FSB was not and as a matter of fact could not be, a true beneficiary under the DOT.

50.   The First Assignment is invalid and void, as a matter of fact, for the reasons alleged above.  Further, as sophisticated financial service providers, all Defendants knew or should have known of the information as to the true Note Holder/Lender and beneficiary; the representation in the First Assignment that MERS transferred the DOT when it cannot be a true beneficiary, was knowingly false.

51.  The First Assignment is invalid.   A purposeful transfer of a deed of trust, without the note, is a nullity.  The Assignment transferred no enforceable security to Aurora Bank FSB.

52.  On October 25, 2011, Michele Rice, Vice President of Aurora Bank FSB, signed a Substitution of Trustee (the "First Substitution") substituting Quality Loan Service Corporation ("QLS") as trustee under the DOT.  The First Substitution was allegedly signed and notarized in Marion County, Indiana, and was recorded on November 7, 2011 at Doc. No. 20110923343.  A copy of the First Substitution is attached hereto as Exhibit 8.

53.  Under A.R.S. § 33-804(D), the Substitution must be signed by "all beneficiaries under the trust deed or their agents as authorized in writing…."  Aurora Bank FSB is not the true beneficiary under the DOT, because Aurora Bank FSB is not the Lender.  Aurora Bank FSB did not have the authority from the true beneficiary or beneficiaries, to sign the First Substitution.  The recorded First Substitution is therefore void, as a matter of fact.

54.  The First Substitution is also void, because it depends, for its legality, on the validity of the First Assignment, which is void.

55.  As sophisticated financial service providers, all Defendants knew or should have known of the conflicting information as to the true beneficiary; the representation that Aurora Bank FSB was the beneficiary, placed in the recorded First Substitution, was knowingly false.

56.  On November 9, 2011, QLS, through Vanessa Sisk Assistant Secretary, signed the Notice of Trustee's Sale (the "First NTS") on behalf of QLS.  The First NTS claims that Aurora Bank FSB is the beneficiary.  A copy of the First NTS, recorded on November 9, 2011 at Doc. No. 20110932186, is attached hereto as Exhibit 9.

57.  Under A.R.S. § 33-808(C)(5), the NTS must contain the name and address of the beneficiary.  The NTS prepared and recorded by QLS, and pursuant to which Defendants then sought to foreclose on Plaintiffs' home, claimed that Aurora Bank FSB was the beneficiary.  The Defendants knew or should have known that Aurora Bank FSB could not be the true beneficiary as Aurora Bank FSB had no legal relation to the Loan.  To be a true

beneficiary, that entity must also be the Note Holder and Lender; only that entity can be secured by the DOT.

58.   Under A.R.S. § 33-809(C), the Statement of Breach or Non-Performance must be signed by the beneficiary or its agent.  The Statement of Breach or Non-Performance is signed by Vanessa Sisk of QLS.  QLS claimed that the beneficiary under the DOT is Aurora Bank FSB, and that QLS is the "agent" of Aurora Bank FSB.  QLS claims that there was a breach of the Trust Deed, consisting of a payment default in installments of principal and interest, and other amounts.  QLS claimed that the beneficiary "elects to sell or cause to be sold such property under the Trust Deed."  This Statement of Breach is void and invalid, because QLS was not the agent of the true beneficiary, which must also be the Note Holder/Lender, the only entity which can declare a default.  A copy of the Statement of Breach or Non-Performance and of the Debt Validation Notice issued by QLS, are attached hereto as Exhibit 10.

59.   QLS also sent an invalid Debt Validation Notice, representing to the Gardners that the debt/Loan was owed to Aurora Bank FSB.  Aurora Bank FSB was not then, or ever, the true beneficiary or the Note Holder/Lender.  *See* Exhibit 10.

60.   All Defendants, as sophisticated financial service providers, knew or should have known of the conflicting information as to the true beneficiary; the representation that Aurora Bank was the beneficiary, placed in the recorded NTS, was knowingly false.

61.   The Lender never notified QLS in writing of an alleged default and of the Lender's election to foreclose on the Property, which is required under the DOT.  QLS was not properly appointed Trustee under the DOT, and had not received any written instruction from the Lender regarding default or election to foreclose.  QLS was therefore not the agent of the Lender.  The First NTS is void.

62.   Because the First Assignment is invalid, the First Substitution which depends on the validity of the First Assignment is invalid as a matter of fact, and the First NTS, which depends on the validity of the First Assignment and the First Substitution, is also invalid.

63.   Further, failure of QLS to confirm a default through the only entity which can declare a default, the Note Holder/Lender, and the failure to provide the identity of the true beneficiary and the beneficiary's address, violates Arizona statutes.  *See, e.g.,* A.R.S. § 33-807(A); 33-808(C)(5).

64.   On June 28, 2012, Aurora Bank FSB assigned its purported interest in the DOT to Nationstar Mortgage, LLC, through a Corporate Assignment of Deed of Trust (the "Second Assignment").

65.   This Second Assignment states it is effective July 1, 2012, and purports to assign the DOT, *but not the Note*, to Nationstar Mortgage, LLC.  Julie Erickson, Vice President of Aurora Bank, signed this Second Assignment, which was notarized in Scotts Bluff County, Nebraska, by Gay Loose.  A copy of the Second Assignment, recorded on August 31, 2012, two months after it was signed, at Doc. No. 20120789178, is attached hereto as Exhibit 11.

66.   Nationstar Mortgage, LLC ("Nationstar"), however, was not the Note Holder or the Lender.  Nationstar was merely the servicer of the Loan.  *See* Exhibit 5.  Nationstar was not, therefore, the true beneficiary under the DOT.

67.   Nationstar, as the servicer of the Loan, knew that it could not legally be the beneficiary of the DOT.  Nationstar knew the Second Assignment was a false, void and invalid document.

68.   The Second Assignment is invalid and void, as a matter of fact, for the reasons alleged above, and because the First Assignment is invalid and void.  Therefore, Aurora Bank FSB had nothing to assign.

69.   As sophisticated financial service providers, all Defendants knew or should have known that none of them was the true Note Holder/Lender and beneficiary; the representation in the Second Assignment that Aurora Bank FSB transferred the DOT when it cannot be a true beneficiary and when it was not the Note Holder/Lender, was knowingly false.

70. The Second Assignment is also invalid because a transfer of a deed of trust, without the note, is a nullity. The Second Assignment transferred no enforceable security to Nationstar.

71. Therefore, no Defendant is the Note Holder because no entity took the Note by transfer and is entitled to payment, while also being the true beneficiary of the DOT.

72. Between the time the Second Assignment was signed and recorded, Nationstar sent a letter to the Gardners, dated July 15, 2012. The letter told the Gardners that Nationstar was servicing the Loan "on behalf of U.S. Bank, Trustee, LXS Series 2007-15N." The letter indicated that the debt evidenced by the Note "is owed to U.S. Bank, Trustee, LXS Series 2007-15N, but is being serviced by Nationstar." *See* Exhibit 5.

73. More than a month after the Second Assignment was recorded, QLS cancelled the First NTS by recording a Cancellation of Trustee's Sale on October 9, 2012, at Doc. No. 20120915878.

74. On March 4, 2013, Nationstar sent the Gardners a 30-day notice of default letter. The letter acknowledged that Nationstar is only the servicer of the Loan. The letter told the Gardners, falsely, that their debt is owed to "U.S. Bank National Association as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N." A copy of the March 4, 2013 letter from Nationstar to the Gardners (the "30-Day Default Letter") is attached hereto as Exhibit 12.

75. The 30-Day Default Letter told the Gardners that they were in default for failure to make payments when due, and that they had 35 days to bring the default current. The letter states that "Nationstar Mortgage, LLC intends to enforce the provisions of the Note and Security Instrument. … If you do not pay the full amount of the default, we may accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property." *See* Exhibit 12.

76. Under the DOT, only the Lender can declare a default and write to the borrower giving 30 days' notice to cure. Under the DOT, only the Lender can accelerate the balance

of the Note, and elect to foreclose.  Nationstar was not and has never been the Lender, nor is Nationstar the agent of the Lender.

77.  The Lender's rights and duties under the DOT are non-delegable unless the DOT expressly states otherwise.

78.  Then, on April 30, 2013, Nationstar recorded a Substitution of Trustee (the "Second Substitution"), substituting Defendant T.D. Service Company of Arizona as trustee under the DOT.  Nationstar purported to have authority to sign the Second Substitution in its alleged role as beneficiary under the DOT.  Albert Nguende, alleged to be an Assistant Secretary of Nationstar, signed the Second Substitution on April 19, 2013; his signature was notarized in Denton County, Texas, that day.  A copy of the Second Substitution is attached hereto as Exhibit 13.

79.  Under A.R.S. § 33-804(D), the Second Substitution must be signed by "all beneficiaries under the trust deed or their agents as authorized in writing…."  Nationstar is not the true beneficiary under the DOT, because Nationstar is not the Lender.  Nationstar did not have the authority from the true beneficiary or beneficiaries, to sign the Second Substitution.  The recorded Second Substitution is therefore void.

80.  As sophisticated financial service providers, all Defendants knew or should have known of the conflicting information as to the true beneficiary and of the law defining the beneficiary as the one for whose benefit the trust deed is given.  The representation that Nationstar was the beneficiary, placed in the recorded Second Substitution, was knowingly false.

81.  The Second Substitution is invalid and void, because it depends on the void and invalid First and Second Assignments for its own validity.  It is also void and invalid because Nationstar is not the true beneficiary under the DOT, and Nationstar is not the Lender.

82.  Also on April 30, 2013, T.D. recorded a Notice of Trustee's Sale (the "Second NTS"), setting a sale date of August 1, 2013, on the Property.  The Second NTS claims that Nationstar in Lewisville, Texas, is the beneficiary.  The Second NTS is signed by

Kimberly Coonradt-D'Ambrosio, Assistant Secretary for T.D., and her signature was notarized in Orange County, California by Jamie Van Keirsbelk.   A copy of the Second NTS and all other documents mailed to the Gardners with it, is attached hereto as Exhibit 14.

83.   Under A.R.S. § 33-808(C)(5), the NTS must contain the name and address of the beneficiary.   The Second NTS prepared and recorded by T.D., and pursuant to which Defendants seek to foreclose on Plaintiffs' home, claims that Nationstar is the beneficiary. The Defendants knew or should have known that Nationstar can not be the true beneficiary as Nationstar is merely the servicer.   To be a true beneficiary, that entity must also be the Note Holder and Lender; the one for whose benefit the trust deed was given.   Only the Lender can be secured by the DOT.

84.   Under A.R.S. § 33-809(C), the Statement of Breach or Non-Performance must be signed by the beneficiary or its agent.   The Statement of Breach or Non-Performance is signed by Kimberly Coonradt-D'Ambrosio, for T.D.   The document fails to name the beneficiary, referring instead to the Notice of Trustee's Sale for that information.   The document describes the default as a payment default.   *See* Exhibit 14.

85.   T.D. told the Gardners in a cover letter, that the "current Beneficiary of the Note and Deed of Trust described in the enclosed Statement of Breach and Notice of Trustee's Sale, has demanded that T.D. Service Company, as Trustee, exercise its power of sale as provided in the Deed of Trust."   *See* Exhibit 14.

86.   This Statement of Breach is void and invalid, because T.D. was not the agent of the true beneficiary, which must also be the Note Holder/Lender, the only entity which can declare a default.   T.D. admits that Nationstar told it to foreclose; Nationstar is not the Note Holder/Lender or true beneficiary or the agent of same; the trustee's sale was not legally initiated.

87.   All Defendants, as sophisticated financial service providers, knew or should have known of the conflicting information as to the true beneficiary; the representation that Nationstar was the beneficiary, placed in the recorded Second NTS, was knowingly false.

16

88.   The Lender never notified T.D. in writing of an alleged default and of the Lender's election to foreclose on the Property, which is required under the DOT.   T.D. violated Arizona statute in failing to confirm a default through the only entity which can declare a default, the Note Holder/Lender, before initiating a trustee's sale.   A.R.S. § 33-807(A).

89.   T.D. was not properly appointed Trustee under the DOT, and has not received any written instruction from the Lender to regarding default or election to foreclose.   T.D. is therefore not the agent of the Lender.

90.   Nationstar violated the DOT and A.R.S. § 33-807(A) by declaring default. Nationstar was not acting as the agent of the true Note Holder/Lender.

91.   The Second NTS is void, as a matter of fact.   The second trustee's sale was initiated in breach of the contracts and the statutes, including but not limited to, A.R.S. § 33-807(A), -808(C)(5), and -809(C).

92.   Because the First and Second Assignments are invalid, the Second Substitution which depends on the validity of the First and Second Assignments is also invalid, and the Second NTS, which depends on the validity of the First and Second Assignments and the Second Substitution, is also invalid.

93.   T.D. did not comply with its duties required by the DOT and set forth in the statutes.   T.D. breached its duties and obligations under the DOT by initiating foreclosure without a written declaration of default, acceleration, and election to foreclose, from the Lender.   T.D. knew or should have known that the true beneficiary was not Nationstar, and that T.D. did not receive authority from the true beneficiary, to sign the Statement of Breach.

94.   T.D. violated, without limitation, the terms of the DOT, and A.R.S. §§ 33-807(A) & (E); 33-808(C)(5); 33-809(C); and 33-801(10).

95.   Because of the numerous breaches of the Note and DOT by the Defendants, as well as the numerous defects with the trustee's sale documents under statute, the Trustee's Sale is irreparably defective.

96.   The foreclosure sales were improperly initiated by Aurora Bank, QLS, Nationstar and T.D., without being the Note Holder/Lender or the agent of the Note Holder/Lender, in breach of the Note and DOT, and the statutes.

97.   On July 20, 2013, Nationstar sent a letter to the Gardners, again affirming that Nationstar is only the servicer.  Nationstar represents that "U.S. Bank as Trustee for LLXS Series 2007-15N is the current owner of the Note."  **A copy of this letter is attached hereto as Exhibit 15.**

98.   Nationstar again misidentified the name of the Trust, and misrepresented the identity of the Note Holder and Lender, to the Gardners.  *See also* Exhibits 5, 12.

99.   On September 18, 2013, in response to an electronic mail message from the Gardners, U.S. Bank told the Gardners that "your loan is owned by the Trust and US Bank serves as the Trustee for that Trust.  However, as Trustee, we do not own your loan…. … [T]he Trustee does not have any loan-level authority…."   A redacted copy of this electronic message is attached hereto as Exhibit 16.

100. Plaintiffs filed this lawsuit in Maricopa County Superior Court against Defendants Nationstar and T.D. on July 30, 2013, Case No. CV2013-010414.  Plaintiffs' then attorney Marc Adair obtained an Order to Show Cause Re: Preliminary Injunction and Temporary Restraining Order on July 31, 2013, with a return hearing set for 2 hours on August 8, 2013.  Judge Oberbillig, the Judge assigned to the matter, **hand-wrote** the following in on the TRO:

> Issuing a Temporary Restraining Order precluding the defendants
> and their agents or representatives from conducting a Trustee's
> Sale of the property at 3601 E. Mountain View Road, Phoenix,
> AZ 85028 on August 1, 2013 <u>or thereafter until further order of the court</u>.

(emphasis supplied).

101. On August 6, 2013, Defendants filed a Notice of Removal in Superior Court stating that the Defendants had removed the case to federal court that day; but the Notice of Removal was not actually filed in federal court until August 12, 2013.  Defendants misrepresented the date of removal so that Judge Oberbillig would vacate the August 8 hearing date.  The Superior Court did in fact vacate the August 8 hearing date based on the Notice of Removal which falsely represented the date the action was removed as August 6, when the matter was not actually removed until August 12, 2013.

102.     Defendants Nationstar and T.D. filed a Motion to Dismiss with this Court.  Ten days after the response to the motion was due, Attorney Adair filed a motion seeking an extension of time.  That same day, September 26, 2013, this Court granted the Motion to Dismiss, unaware that a motion for an extension had been filed.

103.     Thereafter, Undersigned Counsel was retained, substituted in as Counsel in this matter, and on July 28, 2014, obtained a vacation of the Judgment of Dismissal which had been entered.  Pursuant to court order later extended by stipulation with Defendants Nationstar and T.D., Plaintiffs' First Amended Complaint was due on September 9, 2014.

104.     On September 5, 2014, the Third Substitution was signed by "AMSL Legal Group, LLC as attorney in fact for Nationstar Mortgage LLC," by Heidi Mucha, Operations Manager, substituting Attorney Japp as the trustee under the DOT.  A copy of the Third Substitution is attached hereto as Exhibit 17.

105.     The Third Substitution is void.  It depends for its validity on the void First and Second Assignments which resulted in the assignment of the DOT to Nationstar.  Nationstar, which is not the true beneficiary nor the agent of the true beneficiary, improperly told an AMSL entity to substitute the trustee.  *See* Doc. 74 at 5.  It is also void because AMSL, LLC does not exist and therefore cannot be attorney-in-fact for another, and cannot sign legal documents which are recorded, appointing a trustee.  Further, Ms. Mucha only purports to have authority to act for AMSL, LLC, not for AMSL, LLP.  *See* Doc. 74 at 4.  A copy of the Certifications from the California State Bar stating that AMSL

Legal Group, LLC does not exist, and that AMSL Legal Group LLP is successor to the law firm of Aronowitz Mecklenburg Spitalnick & Liepold, LLP, is attached hereto as Exhibit 20.

106.     Neither the Defendants, nor Defense Counsel, notified Plaintiffs or Undersigned Counsel, of this new Third Substitution which would obviously have a bearing on Plaintiffs' claims and their First Amended Complaint, due only 4 days later on September 9, 2014.

107.     The Third Substitution was not recorded until September 10, 2014, the day **after** the First Amended Complaint was filed, as Maricopa County Recorder Doc. No. 20140596798.  Exhibit 17.

108.     The Second Amended Complaint was timely filed on October 13, 2014, adding the new trustee Japp as a Defendant, and alleging various claims against her.

109.     Less than 3 weeks later, and again without any notice to Plaintiffs or Plaintiffs' Counsel, the Defendants **again** substituted the trustee under the DOT, through the Fourth Substitution signed September 29, 2014 and recorded October 2, 2014, Doc. No. 20140653071.  A copy of the Fourth Substitution is attached hereto as Exhibit 18.

110.     The Fourth Substitution was signed by "AMSL Legal Group, LLC as attorney in fact for Nationstar Mortgage LLC," by Heidi Mucha, Operations Manager, substituting Attorney Goff as the trustee under the DOT.

111.     The Fourth Substitution is void.  It depends for its validity on the void First and Second Assignments which resulted in the assignment of the DOT to Nationstar. Nationstar, which is not the true beneficiary nor the agent of the true beneficiary, improperly told an AMSL entity to substitute the trustee.  *See* Doc. 74 at 5.  It is also void because AMSL, LLC does not exist and therefore cannot be attorney-in-fact for anyone, and cannot sign legal documents which are recorded, appointing a trustee.  Further, Ms. Mucha only purports to be authorized to sign for AMSL, LLP, not AMSL, LLC.  *See* Doc.

74 at 4; Certifications from the California State Bar stating that AMSL Legal Group, LLC does not exist; Exhibit 20 hereto.

112.    On October 26, 2014, Plaintiffs sent a certified letter to Goff, pursuant to A.R.S. § 33-420(C), demanding that because he is named in the void Substitution, he immediately record a document voiding, releasing and nullifying the Fourth Substitution. A copy of this letter is attached hereto as Exhibit 19.

113.    To date, Goff has not recorded such a release/resignation.

114.    The Fourth Substitution required the filing of this Third Amended Complaint in order to bring the culpable parties, AMSL, LLP and Goff, into the action, and assert new causes of action which have arisen as a result of the improper actions of Nationstar, AMSL LLP and Goff which have now taken place.   AMSL LLP has defended the AMSL, LLC filings by claiming that the "LLC" designation was a scrivener's or typographical error. *See* Doc. Nos. 72 at 2-5; 74 at 4.   The "LLC" designation is no error, as illustrated by the multitude of recordings in Maricopa County, signed by Heidi Mucha for "AMSL Legal Group, LLC as attorney in fact for Nationstar Mortgage LLC."   A list of such recorded documents is attached hereto as Exhibit 21, along with exemplar copies of a Corporation Grant Deed and four other Notices of Substitution of Trustee, all signed by Heidi Mucha for the non-existent entity AMSL, LLC.

115.    As attorneys, Attorney Japp and Attorney Goff are held to the highest standards of honesty, justice and morality.   Attorneys Japp and Goff are bound not to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

116.    Attorneys Japp and Goff did not comply with their duties required by the DOT and set forth in the statutes.   Attorneys Japp and Goff breached their duties and obligations under the Deed of Trust by allowing themselves to be substituted as trustee under a pending Notice of Trustee's Sale without confirming that a written declaration of default, acceleration, and election to foreclose, was received from the Lender, and by now demanding that the pending trustee's sale be cancelled based on their substitutions as trustee.   Further, Attorneys Japp and Goff failed to determine the identity of the true

beneficiary, which they knew was not Nationstar.  Attorneys Japp and Goff have violated, without limitation, A.R.S. §§ 33-807(A) & (E); 33-808(C)(5); 33-809(C); and 33-801(10).

117.    Because of the numerous breaches of the Note and DOT by the Defendants, the numerous defects with the trustee's sale documents under statute and otherwise, and the Third and Fourth Substitutions signed by a non-existent entity **after** the Second NTS was signed and recorded, the Trustee's Sale is irreparably defective.

118.    Defendants Nationstar and T.D. have a policy and/or practice of:

a) proceeding on a foreclosure without legal standing to do so based on, including but not limited to: (i) MERS, Aurora Bank and Nationstar's purporting to transfer and accept, as applicable, the DOT as beneficiary when none of them are the Note Holder/Lender and therefore cannot be the true beneficiary; (ii) making knowingly false representations to borrowers, including the Gardners, regarding the identity of the Note Holder/Lender to whom the debt is owed; (iii) no Defendant's being the Note Holder/Lender entitled to payment, secured by the DOT; (iv) declaring default, accelerating the Note, and initiating foreclosure, without being the Lender, and without written instructions from the Lender to do so; (v) MERS, Aurora Bank and Nationstar's proceeding as the true beneficiary under the DOT when to claim that status is a violation of Arizona statutes as set forth above, as well as A.R.S. §§ 39-161 and 33-420;

b) knowingly initiating a trustee's sale on false documents which are signed by unauthorized individuals and entities, setting forth false information about the beneficiary, and improperly declaring default, acceleration and election to foreclose, while knowing that the location of the Note, the identity of the true beneficiary, the identity of the Note Holder, and the identity of the Lender, are all *not* as represented in the recorded documents;

c) creating, signing, recording, and being named in false, groundless foreclosure documents containing material misstatements, without actual authority to do so, leading trustors to reasonably believe that the documents are accurate and made according to and pursuant to the law;

d) sending the 30-day Default Letter and other notices to Plaintiffs, and recording the Second NTS misrepresenting the identity of the creditor, when the Note and DOT require that the 30-day Default Letter be from the Note Holder/Lender and that only the Note Holder and Lender can declare default and elect to foreclose;

e) T.D.'s failing to obtain a written declaration of default from the Lender instructing T.D. to foreclose before initiating foreclosure, instead allowing Nationstar to "demand" that T.D. exercise its power of sale when Nationstar has no authority to do so under the Note and DOT;

f) T.D. and Nationstar's failure and refusal to cancel the pending trustee's sale after Nationstar twice substituted a new trustee under the Deed of Trust on September 5, 2014, and again on September 29, 2014, which new trustees did not notice the pending sale; and

g) Nationstar's instructing AMSL, LLP and/or the Barrett Firm to substitute the trustee under the DOT twice after litigation was filed, through the use of non-existent entity AMSL, LLC, in an effort to obfuscate the truth about Aronowitz' involvement and the Defendants' lack of authority from the true Note Holder/Lender and beneficiary to take action, and to obviate certain of  Plaintiffs' claims in litigation and render those claims outdated and inaccurate through those substitutions, one day after the First Amended Complaint was filed and less than one month after the Second Amended Complaint was filed.

119.    Defendant U.S. Bank as Trustee, has a policy and/or practice of acquiescing in, or instructing others to, proceed on a foreclosure without standing to do so based on, including but not limited to:

(a) Trust Agreement terms which state that U.S. Bank as Trustee is not the Lender, and holds the Trust Fund *in trust* for the benefit of the Certificateholders;

(b) violation of the Trust Agreement which required the placement of the Note and DOT into the Trust on or before the Trust closed on July 31, 2007;

(c) the separation of the note and deed of trust from loan inception or at a minimum when the DOT was assigned to Aurora Bank FSB;

(d) U.S. Bank's own knowledge, evidenced by the Trust Agreement, information on its website and its own brochure, *Role of the Corporate Trustee*,[3] that it does not own the loans in the Trust but "its interest is solely for the benefit of investors," yet allows servicers and trustees under deeds of trust to tell borrowers, including the Gardners, that U.S. Bank as Trustee "owns" their Note and their debt is owed to U.S. Bank as Trustee and agreed in the Trust Agreement that the MERS database shall list "U.S. Bank as Trustee" as the "Investor;"

(e) the inability to demonstrate its entitlement to payment and its properly taking the Note by transfer;

(f) a complete lack of evidence that the Loan was placed into this Trust at all, or any chain of title which shows the Loan was sold by GreenPoint to Lehman Capital, much less demonstrating how the Depositor Structured Asset Securities Corp. came into legal possession of the Loan;

(g) the inability to determine the identity of the beneficiary, the Note Holder or the Lender; and

(h) knowingly allowing the co-Defendants to proceed with a trustee's sale on false documents which are signed by unauthorized individuals and entities which clearly show that the location of the Note, the identity of the beneficiary, the identity of the Note Holder, and the identity of the Lender, are all ***unknown*** under applicable legal principles.

120.     T.D. has breached its duties and obligations as a trustee under the Arizona deed of trust statutes and the DOT, through its policies and practices of:

a) creating, signing, recording and being named in knowingly false, groundless foreclosure documents containing material misstatements without actual authority to do so from the Note Holder/Lender and true beneficiary, leading Plaintiffs to reasonably believe that the documents are accurate and prepared according to and pursuant to the law and the contracts;

---

[3]  Found at https://www.usbank.com/pdf/community/Role-of-Trustee-Sept2013.pdf

b) failing to obtain a written declaration of default and acceleration from the Lender instructing T.D. to foreclose, before initiating foreclosure;

c) failing to comply with the applicable statutes regarding the preparation of foreclosure documents, and the notices required;

d) proceeding with foreclosure without a good faith belief that Nationstar was the true beneficiary and without knowing the identity of the true beneficiary, and Note Holder/Lender and without being its agent; and

e) issuing the Second NTS based on a defective and void Substitution, claiming that Nationstar is the beneficiary under the DOT when T.D. knew that Nationstar is only a servicer, that U.S. Bank as Trustee is involved which means the Loan must have been sold into a REMIC, further meaning that only the Certificate Holders of the Trust can be the Note Holder/Lender and beneficiary, all with the goal of taking Plaintiffs' Property, knowing that the documents do not comply with the law.

121.    Attorneys Japp and Goff have breached their duties and obligations as attorneys and as trustees under the Arizona deed of trust statutes and the DOT, through their policies and practices of:

a)  allowing herself/himself to be substituted in as trustee and being named in a document recorded against title which is false, groundless, contains material misstatements and is otherwise invalid, without a good faith belief that Nationstar is the true beneficiary of the DOT, and without confirming the identity of the Lender and Note Holder/true beneficiary and confirming that said entity declared default and has elected to foreclose on the Property;

b)   failing to insist that prior to being substituted in as trustee or within a reasonable time thereafter, T.D. cancel the pending sale, as Attorneys Japp and Goff cannot legally proceed to sale on documents prepared by a different trustee which no longer has any interest in the Property, thereby rendering the pending foreclosure void;

c)  failing to determine the identity of the true beneficiary under the DOT, which is not and cannot be Nationstar, which is admittedly only the servicer;

d)  as an Arizona/California/Nevada/Texas attorney as the case may be, working for, taking direction from or working under the ownership or auspices of AMSL LLP fka Aronowitz, which law firm was forced out of business by the Colorado Attorney General for unethical and illegal practices;

e) as an Arizona/California/Nevada/Texas attorney as the case may be, allowing themselves to be substituted as trustee and be named in that Substitution, allowing that Substitution to be recorded, by or on behalf of an entity with no legal existence;

f) attempting to proceed to foreclosure without knowing the identity of the true beneficiary and Note Holder/Lender, all with the goal of taking Plaintiffs' Property, knowing that the documents do not comply with the law;

g) as to Goff, despite demand under A.R.S. § 33-420(C), failing and refusing to record a resignation of his trustee status.  *See* Exhibit 19 hereto.

122.     AMSL, LLP, fka Aronowitz, has a pattern and practice of:

a)     preparing and recording or authorizing the preparing and recording of record numbers of Substitutions of Trustee (in Maricopa County alone, in 6 days from September 30, 2014 to October 10, 2014, AMSL recorded thirty-four (34) Substitutions naming Goff as trustee) including Exhibits 17, 18 and 21 hereto, using the name AMSL, LLC as purported "attorney in fact for Nationstar," knowing that AMSL, LLC has no such authority and in fact is a non-existent entity;

b)     preparing and recording or authorizing the preparing and recording of Substitutions of Trustee Exhibits 17 and 18, and being named in those Substitutions claiming to be "attorney in fact for Nationstar," when AMSL, LLP knew, through its licensed attorneys, that AMSL, LLC does not exist; that Nationstar did not have the authority from the true beneficiary to substitute the trustee; that Nationstar is not the Note Holder/Lender but is only the servicer;

c)     having the non-existent entity AMSL, LLC through Heidi Mucha of the Barrett Firm purport to sign and record a new Substitution of Trustee as a regular practice during litigation with the intent to delay the proceedings, cause Plaintiffs to run up

attorneys' fees and sustain other damage, to further cloud Plaintiffs' title, and to obfuscate the Plaintiffs' efforts to proceed with their claims.

123.     The identity of the true Note Holder/Lender with entitlement to enforce the Note and DOT, if any, is unknown; if the Note is found to have been legally and timely transferred into the Trust, the Certificate Holders of the Trust, are the only persons/entities with a potential legal ability to enforce the Note and are the only persons/entities secured by the DOT.

124.     None of these Defendants has authority to enforce the Note; no Defendant both possesses the Note and was also **entitled to payment**, as required by the clear contractual terms of the Note, nor is any Defendant an agent for an entity with authority to enforce both the Note and the DOT together.

125.     At Loan initiation, the Lender was secured by the DOT.  That security has been nullified by assigning the DOT to Aurora Bank FSB in September of 2011, and then Nationstar in June of 2012, while the Note was allegedly sold into the Trust by GreenPoint Mortgage Funding, Inc. back in 2007.  An assignment of a deed of trust without the note, is a nullity; the DOT must be released.

126.     No Defendant is the true beneficiary and the Note Holder/Lender, or an authorized agent of the true beneficiary and the Note Holder/Lender; therefore, the Trustee's Sale is void and invalid and must be cancelled.


**COUNT ONE**
**DECLARATORY JUDGMENT RE CONTRACT RIGHTS**
**OF THE PARTIES/LACK OF STANDING TO ENFORCE NOTE AND DEED OF**
**TRUST/VOID ASSIGNMENTS OF DEED OF TRUST, SUBSTITUTIONS OF**
**TRUSTEE, AND NOTICES OF TRUSTEE'S SALE**
**(ALL DEFENDANTS)**

127.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

128.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court regarding the standing of the Defendants and the

27

rights of the parties with respect to the Note, Deed of Trust, and the validity and enforceability of the Assignments, Substitutions, and NTS.  In the alternative, Plaintiffs seek an Order that the Defendants lack standing to enforce the Note and DOT, and that all recordings against the Property since 2007 are void and invalid.

129.     The Note specifically states that in order to be the "Note Holder," one must have taken the Note by transfer, **and** be entitled to payment.  Only the Note Holder/Lender may demand payment, accelerate the balance under the Note, elect to foreclose, and tell the borrower and trustee of the default and its election to foreclose.  Only the Note Holder/Lender may enforce the rights under the Note, and *only the Note Holder* is protected from losses by the Deed of Trust.  *See* Exhibits 2, 3.  The Note Holder/Lender is the only entity which may be the beneficiary under the deed of trust statutes.

130.     The DOT states that if applicable law is silent on a subject, the parties may agree to whatever terms they choose.  *See* Exhibit 3, ¶ 16.

131.     The Arizona statutes governing non-judicial foreclosures do not specifically require that a foreclosing entity produce the original note in order to foreclose.  The statutes do not prohibit that requirement, either; the statutes are silent on the issue.

132.     The DOT states that only the Lender may send written notice to the trustee of an event of default, and of the election to cause the property to be sold.  *See* Exhibit 3, ¶ 22.  The deed of trust statutes do not allow the trustee to initiate foreclosure without a default.  A.R.S. § 33-807(A).

133.     The Note defines the Lender as "anyone who takes this Note by transfer and who is entitled to receive payments under the Note…."  Therefore, to identify the Lender, that entity must demonstrate that it took the Note by transfer and that it is entitled to receive payments under the Note.

134.     As set forth in, without limitation, ¶¶ 14-22, 43-99, 104-126 above, the document(s) prepared, signed, and recorded by the Defendants, to take Plaintiffs' home, and the letters addressed to the Gardners, do not comply with the terms of the Note and DOT, the applicable statutes, or the law.  The Assignments, Substitutions and two NTS

contain defects which render the documents, as a matter of fact, void, invalid, and unenforceable.

135.     Under the Note and DOT and applicable law, any attempt to foreclose on Plaintiffs without proving status as the Note Holder/Lender and true beneficiary, and otherwise being in compliance with all contract terms, is invalid.

136.     No Defendant is both true beneficiary/Lender under the DOT and the Note Holder, nor is any Defendant an agent of the true beneficiary/Lender under the DOT and the Note Holder, together.

137.     Under applicable law, the Defendants cannot foreclose without complying with the statutory requirements to do so.

138.     Under applicable law, the pending trustee's sale must be cancelled because, among other reasons, the Second NTS was signed by an entity no longer trustee.  Under A.R.S. § 33-803.01, the trustee may not delegate a number of duties; signing the Notice of Trustee's Sale is one such non-delegable duty.

139.     The present NTS was signed by T.D., which is no longer trustee.  Attorney Japp has no standing or authority to conduct a sale under the Second NTS, nor does Attorney Goff.  Neither Attorney Japp nor Goff has been legally and properly substituted as trustee.

140.     If any Defendant/Defendants are found to be parties to the Note or DOT, that/those Defendant/Defendants has/have breached the contracts, and failed to follow applicable statutes and laws, as set forth above.

141.     If the Defendants are found not to be parties or agents of parties to the Note or DOT, as is alleged above, Defendants have no standing to enforce the Loan or initiate or conduct a foreclosure of the Property.

142.     Plaintiffs seek a declaratory judgment or an Order from this Court, that pursuant to the Note and Deed of Trust, only the Note Holder/Lender and true beneficiary may pursue foreclosure, and that the Defendants must therefore prove their status as Note

Holder/Lender and true beneficiary, before they may be allowed to proceed to Trustee's Sale.

143.     Plaintiffs seek a declaratory judgment or an Order from this Court, that no Defendant is the Note Holder/Lender, nor has any Defendant sought foreclosure as the legal agent of the Note Holder/Lender, under written direction from the Note Holder/Lender as required by the Note and DOT.

144.     The First Assignment signed on September 21, 2011, recorded October 17, 2011, shows MERS as the nominee for GreenPoint, under the DOT, and claims to assign the DOT to Aurora Bank FSB.  The First Assignment does not claim to transfer the Note.

145.     The First Assignment is signed by Stacy Sandoz, an employee of Aurora Bank FSB.  On information and belief, Ms. Sandoz is not an authorized Certifying Officer or employee of MERS, she had no authority to sign the First Assignment.

146.     Aurora Bank FSB has no legal relation or connection to the Trust.

147.     The DOT should have been assigned into the Trust in 2007 or at the latest, September 21, 2011.

148.     Accordingly, the First Assignment is invalid and void.

149.     The Trust Agreement required that the Note be turned over to the Trust by July 31, 2007.  The First Assignment demonstrates that MERS was in possession of the DOT, while the Trust Agreement states that the Note was to be in the Trust.  Therefore, by the agreement of the parties to the Trust Agreement and MERS, the Note and DOT have been split since at least July 31, 2007.  In the alternative, the Note and DOT have been split since the DOT was assigned, purportedly by MERS, to Aurora Bank FSB.

150.     The First Substitution is void and invalid, because Aurora Bank FSB was not the Lender, and did not have authority from the true Note Holder/Lender/beneficiary, to sign the First Substitution.  It is also void and invalid because the First Assignment is void and invalid.

151.     The First NTS is void and invalid because the First Assignment and Substitution are void, because among other things, QLS did not receive a writing from the

Note Holder/Lender declaring a default and electing to foreclose, and because Aurora Bank FSB was not the true beneficiary or Note Holder/Lender.

152.    The Second Assignment is void and invalid, because among other things: the First Assignment is void and invalid; it purports to assign the DOT without the Note; and because the assignee is not the true beneficiary under the DOT.

153.    Any attempt to transfer the DOT without the debt it secures, is a nullity.

154.    Under the Note and DOT and applicable law, any attempt to assign the beneficial interest in the DOT to another, or to enforce the DOT without simultaneously being the Note Holder/Lender, is void.

155.    At no time, has any Defendant been both the Note Holder/Lender and the true beneficiary of the DOT, simultaneously.

156.    The Second Substitution is void.   Nationstar is not the true beneficiary because it is not the Note Holder/Lender.   Nationstar did not have authorization from the Note Holder/Lender and true beneficiary to substitute T.D. as trustee.   The Substitution is based on the void First and Second Assignments, and therefore is itself, void.

157.    The Second NTS is void.   Nationstar is not the true beneficiary, the Note Holder/Lender did not declare a default and send written notice to Plaintiffs and T.D. to foreclose, and the Second NTS is based on the void Assignments and the void Second Substitution.   The Second NTS is also void because the trustee which signed it, T.D., is no longer the trustee under the DOT.

158.    The Third Substitution is void.   Nationstar is not the true beneficiary because it is not the Note Holder/Lender and true beneficiary; Nationstar therefore cannot substitute Attorney Japp as trustee or instruct anyone else to do so.   In addition, AMSL, LLC is not a legal "attorney in fact" for Nationstar because among other things, AMSL, LLC does not exist, and Ms. Mucha has no authority to sign documents on behalf of that non-existent entity.    The Third Substitution is based on the void First and Second Assignments, and therefore is itself, void.

159.     The Fourth Substitution is void.   Nationstar is not the true beneficiary because it is not the Note Holder/Lender and true beneficiary; Nationstar therefore cannot substitute Attorney Goff as trustee, or instruct anyone else to do so.   In addition, AMSL, LLC is not a legal "attorney in fact" for Nationstar because among other things, AMSL, LLC does not exist, and Ms. Mucha has no authority to sign documents on behalf of that non-existent entity.   The Fourth Substitution is based on the void First and Second Assignments, and therefore is itself, void.

160.     Both Statements of Breach are void.   They are not from the true beneficiary or an agent of the true beneficiary; the Note Holder/Lender has not sent a writing declaring a default and electing to foreclose, to the borrower and the foreclosure trustee.

161.     Plaintiffs seek a declaratory judgment or Order from this Court that the First and Second Assignments, the First, Second, Third and Fourth Substitutions and the First and Second NTS are void and unenforceable, and that these recorded documents must be cancelled and title cleared by recordings at the Maricopa County Recorder's Office.

162.     Plaintiffs further seek a declaratory judgment or Order from this Court that no party may notice or re-notice a trustee's sale without proving status as Note Holder/Lender and true beneficiary under the Note and Deed of Trust, and otherwise complying with the contracts, and applicable law.

163.     Plaintiffs seek a further declaratory judgment or Order from this Court that the Note and DOT require that only the Note Holder/Lender may enforce the terms of the Note and accelerate the balance, that only the Note Holder/Lender is protected by the Deed of Trust as security, and only the Note Holder/Lender may initiate foreclosure of the Deed of Trust.   Any other result subjects Plaintiffs to the danger of multiple liability on the Note, and an endless string of false beneficiaries initiating void and invalid trustee's sales.

164.     Plaintiffs seek a further declaratory judgment or Order that Nationstar and its alleged attorney-in-fact AMSL, LLC or any other agent, cannot sign and record any further substitutions of trustee or assignments of the DOT, as Nationstar is not the Lender, Note Holder or true beneficiary of the DOT.

165.     Plaintiffs seek a further declaratory judgment or Order that no Defendant is the Note Holder/Lender and true beneficiary, that the DOT has been rendered a nullity, and that until an entity can prove its status as Note Holder/Lender, no entity may seek to enforce the Note.

166.   Without such a declaratory judgment, Plaintiffs will forever be in jeopardy of being pursued by multiple alleged creditors to collect on their Note, and a real risk of being subject to foreclosure by more than one entity.

167.   Without such a declaratory judgment, Plaintiffs will be faced with the continuing bad faith practice by AMSL, LLP and Nationstar of using the non-existent entity AMSL, LLC through Heidi Mucha or other Barrett Firm employee to prepare and record new Substitutions of Trustee on a regular basis in an effort to thwart Plaintiffs' attempts at achieving a legal remedy for the invalid, illegal and void foreclosure action initiated against them.  In the alternative, AMSL, LLP and/or Nationstar will instruct a new entity to serve as trustee; but regardless neither Defendant has the legal authority as beneficiary/Note Holder/Lender or an agent of same, to substitute trustees or instruct another to do so.

168.   Without such a declaratory judgment, Plaintiffs' title in their home will be forever clouded, impairing their ability to alienate their property, and reducing its market value.

169.   Plaintiffs are entitled to their attorney's fees and costs arising out of this claim, pursuant to the Note and DOT and A.R.S. § 12.341.01.

///

///

///

///

///

**COUNT TWO**
**BREACH OF CONTRACT**
**(ALL DEFENDANTS)**

170.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

171.     Defendants, as an alleged beneficiary, servicer, trustee, or alleged successor, assign or agent of a party to the Note and/or DOT, are all bound in contractual privity with Plaintiffs.

172.     In pursuing the Trustee's Sale in violation of the terms of the Note and DOT, as set forth in, among other places, ¶¶ 14-22, 47, 49, 50, 53, 55, 57, 58-61, 63, 66-69, 71, 72, 74-77, 80, 81, 85-90, 93, 96-99, 105, 111, and 116 above, the Defendants have breached the contracts.

173.     In pursuing the Trustee's Sale in violation of the deed of trust statutes and law as set forth in, among other places, ¶¶53, 57, 58, 63, 79, 83, 84, 88, 90, 91, 93, 94, 112, and 116, which are a part of every contract, the Defendants have breached the contracts.

174.     In pursuing a trustee's sale in violation of the contracts and applicable law, Defendants breached the duty of good faith and fair dealing implied in every contract.

175.     Defendants' breaches of contract caused Plaintiffs damages in the form of the concrete and particularized injury of the initiation of foreclosure without performing conditions precedent to a valid sale, acceleration of the Note,  multiple invalid recordings against the Property clouding Plaintiffs' title and affecting market value, late fees, penalties, accruing interest, trustee's fees, and other fees which would not have been incurred but for the improper initiation of foreclosure; substantial damage to credit, attorney's fees, and other damage.

176.     As this matter arises out of contract, Plaintiffs are entitled to their attorney's fees and costs incurred, pursuant to the contracts and pursuant to A.R.S. § 12-341.01.

## COUNT THREE
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (ALL DEFENDANTS)

177.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

178.     Defendants are obligated under the Note and DOT, the First, Second, Third and Fourth Substitutions, the First and Second Assignments, the First and Second NTS (if such documents are valid and legal), and the common law, to act in good faith and to deal fairly with Plaintiffs.

179.     The purpose of this covenant is to guarantee that the parties remain faithful to the intended and agreed-upon expectations of the parties in their performance.

180.     The duty of good faith extends beyond the written words of the contracts.

181.     When a party or parties to a contract manipulate bargaining power to its/their own advantage, injuring the other party, the party/parties with bargaining power breach its/their duty of good faith.

182.     Plaintiffs reasonably expected that the entities which would seek to enforce their Loan contracts would be those legally entitled to do so.

183.     Plaintiffs reasonably expected that the entities with standing to enforce their Loan contracts or those who appeared and claimed that entitlement, would use good faith and deal fairly in declaring default and initiating and proceeding with foreclosure.

184.     Defendants and/or their agents breached their duty of good faith and fair dealing by, without limitation:

a)     hiding from Plaintiffs the identity of the true beneficiary by affirmatively misrepresenting to Plaintiffs that the true beneficiary was Aurora Bank FSB and then Nationstar through letters and the recording of false documents, and Nationstar's masquerading as the party entitled to declare a default, accelerate the balance, and take action to foreclose;

b)       hiding the identity of the true Note Holder/Lender by affirmatively misrepresenting the "owner" of the Loan and the creditor as U.S. Bank as Trustee through correspondence to the Gardners and, on the part of U.S. Bank as Trustee, signing the Trust Agreement which specifically set out the scheme by which the MERS database would falsely state that U.S. Bank as Trustee was the "Investor" on the Loan;

c)       failing to comply with  contractual obligations, including without limitation allowing an entity, not the Note Holder and Lender, to write to the Gardners declaring a default, to accelerate the debt, and to initiate a foreclosure;

d)       initiating foreclosure without requiring that the Lender notify the Deed of Trust trustee, in writing, that the loan was in default, and of an election to foreclose;

e)       seeking to proceed to Trustee's Sale on clearly invalid  documents, i.e., the First and Second Assignments, the Second, Third and Fourth Substitutions, the First and Second NTS, the 30-Day Default Letter, and the two Statements of Breach, as fully set forth in detail above;

f)       knowingly and purposely separating the Note from the DOT thereby rendering the Note unsecured, but attempting to foreclose on the Property nevertheless;

g)       falsely listing the servicer of the Loan as Aurora Commercial Corp., on the MERS database;

h)       having a non-existent entity sign the Third Substitution on September 5, 2014, but not recording it until after Plaintiffs' First Amended Complaint was filed, and never disclosing same to Plaintiffs, in an effort to obfuscate Plaintiffs' efforts in their litigation against the Defendants and nullify the effect of the First Amended Complaint immediately after its filing;

i)       having a non-existent entity sign the Fourth Substitution on September 29, 2014, and recording it on October 2, 2014 without disclosing same to Plaintiffs in spite of this pending litigation, in an effort to obfuscate Plaintiffs' efforts in their litigation against the Defendants and nullify the effect of the Second Amended Complaint immediately after its filing; and

36

j)      clouding Plaintiffs' title to such an extent that Plaintiffs will be hampered in their ability to alienate their property, and resulting in a decrease in its market value.

185.     Therefore, the Defendants have exercised discretion retained or unforeclosed under the Note, DOT and the foreclosure statutes, in such a way as to deny Plaintiffs a reasonably expected benefit of their bargain: Plaintiffs reasonably expected that enforcement of the Note and DOT would be authorized in writing by the Note Holder and Lender, which has not occurred here.

186.     Nationstar, AMSL, LLP and their agents have abused the discretion granted to the Lender in the DOT and the beneficiary in the statutes, which allows for the substitution of the trustee, declaring of default, and electing to foreclose.   These Defendants are not the Lender, and have otherwise acted in a way inconsistent with the Plaintiffs' reasonable expectations that their Lender and true beneficiary would be known, available, and control the rights and duties reserved to the Lender and Note Holder. Plaintiffs also reasonably expected that non-existent entities would not be allowed to sign important documents which would be recorded against their title.   Defendants' actions bear adversely on Plaintiffs' reasonably expected benefit of their bargain made with their Lender.

187.     As a result of Defendants' failure to act in good faith and with fair dealing, Defendants have caused Plaintiffs concrete and particularized injury, in the form of a default claimed by the Defendants but not asserted by the Note Holder/Lender; acceleration of the Note; cloud on Plaintiffs' title with multiple groundless filings containing material misstatements, and false claims against their title; reduction in market value of their home; attorneys' fees and costs paid to stop an invalid trustee's sale sought by entities with no standing to do so and without the Defendants' having performed conditions precedent to a valid sale, as fully alleged above.

188.     As this claim arises out of the contracts between the parties, Plaintiffs are entitled to their attorney's fees and costs incurred in having to bring this claim, pursuant to the terms of the contracts as well as A.R.S. § 12-341.01.

## COUNT FOUR
### QUIET TITLE AND DAMAGES UNDER A.R.S. § 33-420/ SLANDER OF TITLE
### (ALL DEFENDANTS)

189.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

190.     At the time the loan closed on April 19, 2007, the Note gave GreenPoint Mortgage Funding, then the Lender and originator, the right to payments.

191.     The Note makes it clear that only one who takes the Note by transfer, **and** who is entitled to receive payments, is the Note Holder.

192.     Plaintiffs have a Warranty Deed on the Property, and have a claim to the Property superior to all others except the true, legal and valid trustee under the DOT, as the fee simple absolute title holder, and otherwise, as is fully set forth in this Fourth Amended Complaint.

193.     Numerous parties have come forward, attempting to demonstrate an entitlement to the Property or entitlement to foreclose, through a claimed interest as nominee on the Deed of Trust, as a beneficiary under the Deed of Trust, as a purported Note Holder, "owner" of the Note, creditor, agent of a servicer or beneficiary, or other undeclared, unspecified interests.

194.     As fully detailed above, those parties claiming interests were/are MERS, Aurora Bank FSB, Nationstar, U.S. Bank as Trustee, QLS, T.D., and Attorneys Japp and Goff.    The defective and void nature of each person/entity's claim to the Property is set forth above.   Each Defendant and entity has actual knowledge of the defects in the recorded chain of title.  Each Defendant has contributed to the cloud currently existing on the title to the Property, represented by the false, groundless, fraudulent and otherwise invalid documents recorded against the Property.

195.     Each Defendant's acts against Plaintiffs' title, whether as the claimed Note Holder, Lender, owner, beneficiary, trustee or otherwise, was malicious, done from improper motives of profit and in an effort to wrongfully and illegally foreclose on

Plaintiffs, without an actual true and legal relationship to the Plaintiffs and the Property. Each Defendant acted without a reasonable belief in the validity and efficacy of his/her/its claim.

196.   Each Defendant knew that the Assignments, Substitutions, and Notices of Trustee's Sale, were actually false, either in themselves or because the document(s) was/were dependent on a false document for its validity.

197.   Plaintiffs have been given conflicting information about the identity of the Note Holder.  The MERS database claims that U.S. Bank as Trustee is the Investor, and Nationstar has three times falsely told the Gardners that U.S. Bank as Trustee is their creditor and "owns" their Loan.  But U.S. Bank itself admits through its brochure and through an e-mail directly to the Gardners, that it does not own the loans in the Trust or the Gardner Loan in particular, it "does not have any loan-level authority," and "its interest is solely for the benefit of investors."  *See* Exhibit 16.

198.   Plaintiffs have no knowledge of, and no way to determine outside of discovery in this lawsuit, who the legal Note Holder/Lender is, if any, who is entitled to payments if anyone; whether the Note still exists, and whether the Note has been paid through insurance, through a Trust-related insurance policy such as that reflected in the Certificate of Guaranty Insurance Policy Endorsement effective July 31, 2007,[4] or by other sources.

199.   As is fully set forth in allegations above, no Defendant is the true beneficiary under the DOT, as no Defendant is the Note Holder/Lender.

200.   Plaintiffs are in jeopardy of multiple liabilities under the Note, because the true Note Holder is unknown.  That entity, as well as third parties, could come forward claiming an unsatisfied interest in the Note, and may or may not be subject to Plaintiffs' various affirmative defenses and counterclaims.  Under the Uniform Commercial Code, if

---

[4]  This 10-page endorsement was filed with the SEC and can be found at http://www.sec.gov/Archives/edgar/data/1406223/000114420407044356/v084952_ex99-18.htm.  The endorsement is incorporated here by this reference.

the Gardners pay the wrong entity, their debt is *not* discharged.  Given the cloud on title and the uncertainty surrounding the Note, Plaintiffs are entitled to proof of the true Note Holder/Lender, and the true beneficiary if any, to avoid this imminent danger.

201.     The Assignments which purport to assign the DOT from MERS to Aurora Bank FSB and from Aurora Bank FSB to Nationstar are void, as is fully set forth in allegations above.

202.     A note and deed of trust are inseparable.  If a note and deed of trust are purposely separated, in that the Note Holder/Lender and the beneficiary of the deed of trust are not the same individual or entity, the note becomes unsecured.

203.     The Note and DOT have been purposely separated since at least September of 2011, if not July of 2007.

204.     The assignment of a deed of trust without a legal transfer of the debt, transfers nothing.

205.     The Defendants having voluntarily separated the Note/debt from the DOT; the DOT secures nothing.

206.     Defendants seek to enforce the Note and Deed of Trust.  Because the Note has been unsecured since at least September of 2011, no Defendant may legally pursue foreclosure pursuant to the Deed of Trust.

207.     No Defendant has standing to pursue foreclosure, as no one Defendant is both the true beneficiary of the Deed of Trust and also the Note Holder.

208.     Further, pursuant to the terms of the Note, only the Note Holder can enforce the Note through foreclosure or otherwise.

209.     Various Defendants have recorded void and invalid documents against the Property, or are named in those documents, without the legal authority to do so or be so named.  Those documents include, but are not limited to, the two Assignments, the four Substitutions, and the two NTS.

210.     Plaintiffs have suffered a distinct and palpable injury from the recorded documents which are groundless, contain material misstatements and false claims against

their Property.   The recorded documents have clouded their title which has directly affected their ability to possess, use and sell the Property, as is their right as trustor.   The clouded title has also resulted in a reduction in the Property's market value.

211.     Through payments from Plaintiffs/Borrowers, PMI or other insurance coverage, the Guaranty Insurance Policy referred to above, government payments, credit default swaps or other methods, any party with a valid claim to payment under the Note as Note Holder, has on information and belief, already been paid.

212.     On October 26, 2014, Plaintiffs sent a demand to Goff that he release the Fourth Substitution through a recording at the Maricopa County Recorder's Office.   As of the date of this filing, which is more than twenty (20) days since the demand was sent, no release of the Fourth Substitution or resignation as trustee has been filed.

213.     Plaintiffs are entitled to an order from this Court against the Defendants, that the Plaintiffs' estate in the Property be established in Plaintiffs, that title be quieted in their name as against these Defendants, that the groundless and false recorded documents be declared null and void with filings at the Maricopa County Recorder's Office to that effect, and that all Defendants be barred and forever estopped from having or claiming any right or title to the Property, adverse to Plaintiffs, and that the Deed of Trust be declared void and of no force and effect, and be released by a recording at the Maricopa County Recorder's Office.

214.     Plaintiffs further seek the statutory sum of no less than $5,000, or treble their actual damages caused by the recordings, whichever is greater, plus an award of their attorneys' fees and costs, pursuant to A.R.S. § 33-420(A).

215.     Plaintiffs also seek judgment against Goff, for being named in the Fourth Substitution but refusing to resign, in the amount of no less than $1,000.00 or treble actual damages, whichever is greater, and reasonable attorney's fees and costs as a result of his refusal to record a release/resignation of the Fourth Substitution, pursuant to A.R.S. § 33-420(C).

1
2
3

**COUNT FIVE**
**NEGLIGENCE PER SE**
**(NATIONSTAR, T.D. SERVICE COMPANY, AMSL,**
**ATTORNEYS JAPP & GOFF)**

4
5

216.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

6
7

217.     Nationstar knew that Aurora Bank FSB was not and could not be a true beneficiary under the DOT with legal authority to assign the DOT to Nationstar.

8
9

218.     Nationstar knew that the Loan was purportedly placed into the Trust in 2007 before its Closing Date.

10
11
12

219.     In allowing, acquiescing in, or sending the Second Assignment to be recorded at the County Recorder, which contained unauthorized signatures and false information, Nationstar violated A.R.S. § 39-161.

13
14
15

220.     T.D. did not receive a writing from the Note Holder/Lender, declaring a default and electing to foreclose the DOT.   Rather, Nationstar "demanded" that T.D. initiate foreclosure on the Property.  *See* Exhibit 14.

16

221.     T.D. was not and is not the agent of the Lender.

17
18
19

222.     T.D. knew or should have known that Nationstar was not the true beneficiary of the DOT.  T.D. did not have and could not have had a good faith belief that Nationstar was the true beneficiary.

20

223.     T.D. nevertheless initiated a trustee's sale and recorded the Second NTS or caused the Second NTS to be recorded.

21
22
23
24

224.     In allowing, acquiescing in, or sending the Second NTS to be recorded at the County Recorder, which contained unauthorized signatures false information, was unauthorized by the Lender, and which Second NTS has not been cancelled in spite of the substitution of Attorneys Japp and Goff as trustee, T.D. violated A.R.S. § 39-161.

25
26
27

225.     In recording groundless documents asserting false claims at the County Recorder's Office claiming invalid interests in the Property and making material misstatements therein, including but not limited to the Second Assignment, the Second,

28

Third and Fourth Substitutions and the Second NTS, Nationstar, T.D., and AMSL LLP (through the use of the non-existent entity AMSL, LLC) violated A.R.S. § 33-420.

226.    Japp knew or should have known that Nationstar was not the true beneficiary of the DOT.  Japp did not have and could not have had a good faith belief that Nationstar was the true beneficiary with the legal authority to appoint AMSL, LLC, a non-existent entity as its attorney in fact to prepare, sign and record the Third Substitution and appoint her trustee of the DOT.

227.    In being a person named in the Third Substitution, and knowing the document is groundless, contains a material misstatement, false claim and/or is otherwise invalid, Attorney Japp violated A.R.S. § 33-420(C).

228.    Goff knew or should have known that Nationstar was not the true beneficiary of the DOT.  Goff did not have and could not have had a good faith belief that Nationstar was the true beneficiary with the legal authority to appoint AMSL, LLC a non-existent entity as its attorney in fact to prepare, sign and record the Fourth Substitution and appoint him trustee of the DOT.

229.    In being a person named in the Fourth Substitution, having received the Plaintiffs' demand under A.R.S. § 33-420(C) and knowing the document is groundless, contains a material misstatement, false claim and/or is otherwise invalid, Attorney Goff violated A.R.S. § 33-420(C).

230.    On information and belief, the Second Assignment, the Second, Third and Fourth Substitutions, and the Second NTS were not signed before a notary public, nor did the signer appear before the notary and acknowledge the signer's signature.

231.    In allowing documents to be notarized by notaries who did not witness the signatures or have the signers acknowledge their signatures before them, Nationstar, T.D. and AMSL violated A.R.S. §§ 33-503, 41-311; 41-312 and 41-313.

232.    Each of these statutes was put into place for the specific purpose of protecting homeowners' interests in their homes, and the specific purpose of ensuring that individuals who sign important legal documents are actually authorized to do so.

43

233.     Plaintiffs are in the class of persons for whose protection these statutes were put into place.

234.     Acts in violation of these statutes constitute negligence per se.

235.     Violation of A.R.S. § 39-161 is a Class 6 felony.

236.     Violation of A.R.S. § 33-420(A) carries statutory damages of not less than $5,000 per recorded document or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

237.     Violation of A.R.S. § 33-420(C) carries statutory damages of not less than $1,000 or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

238.     Plaintiffs seek an order of this Court that Nationstar, T.D., AMSL and Attorneys Japp and Goff prepare and record any and all documents needed to clear the cloud on Plaintiffs' title related to their efforts to illegally foreclose.

239.     Plaintiffs seek damages against the Defendants of not less than $5,000 per recorded document or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

240.     Plaintiffs also seek damages against the Defendants Japp and Goff of not less than $1,000 or treble the actual damages, whichever is greater, plus attorneys' fees and costs.

241.     Plaintiffs suffered and will suffer damages due to the negligence per se of Nationstar, T.D., AMSL, and Attorneys Japp and Goff, in the form of clouded title to their Property resulting in interference with Plaintiffs' right to use and alienate the Property as well as a reduction in its market value; statutory damages under A.R.S. § 33-420, acceleration of the Note, damage to credit, accrual of late charges, fees, costs, trustee's fees, attorney's fees, and other damage.

///

///

///

**COUNT SIX**
**FAIR DEBT COLLECTION PRACTICES ACT**
**(T.D. SERVICE COMPANY, ATTORNEYS JAPP & GOFF)**

242.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

243.     A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  15 U.S.C. § 1692e.  This includes a threat to take any action that cannot legally be taken.  This also includes the false representation of the legal status of any debt, such as the identity of the creditor.  Such a misidentification is also a deceptive practice under 15 U.S.C. § 1692g.  This also includes a threat to take any action that cannot legally be taken.

244.     A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.  This includes taking or threatening to take any nonjudicial action to effect dispossession of property if there is no present right to possession of the property.

245.     Liability under §§ 1692(e) and (g) is determined by the "least sophisticated debtor" standard.

246.     T.D. and Attorneys Japp and Goff are debt collectors; they are not trustee fiduciaries.   T.D. served as trustee under the DOT and signed the Second NTS in this matter.  Attorneys Japp and Goff were (as to Japp) and are (as the Goff) the trustee under the DOT.  All three have been substituted as foreclosure trustee in this matter.

247.     T.D. sent a letter to the Gardners dated May 23, 2013, stating that "[r]einstatement of the delinquent loan may be made by cash or cashier's check in the full amount due…."  T.D. further stated that "[t]he Beneficiary may be attempting to collect a debt…."  *See* Exhibit 14.

248.     T.D. also sent the Gardners a Statement of Breach.  That Statement claimed payments from January 1, 2013, were past due, and that "Trustee is only required to accept payment by cash, cashier's check or certified check."

249.     T.D. claims, falsely, that Nationstar is the (true and valid) beneficiary under the DOT.  *See* Exhibit 14.

250.     A foreclosure is the collection of a debt.  *National Bank of Arizona v. Schwartz,* 230 Ariz. 310, 283 P.3d 41, 44 ¶ 9 (2012)("[T]he contractual debt is foremost with any foreclosure or sale being secondary and merely a means of recovery on the original debt."); *see also Quintana v. Bank of America,* 2014 WL 690906 at *9 (D.Ariz. Feb. 24, 2014)("trying to collect the note that secures the deed of trust qualifies as the collection of a debt.").

251.     T.D. misidentified the creditor in its foreclosure package mailed to the debtor, saying Nationstar was the creditor, and claimed that Nationstar "demanded" that T.D. exercise its power of sale.  *See* Exhibit 14.  T.D. also misidentified the creditor in the Second NTS, again saying Nationstar was the creditor.  *See* Exhibit 14.  As Nationstar itself admits on many occasions, it is not the creditor.  *See* Exhibits 5, 12, 15.

252.     T.D. has therefore made false, deceptive and misleading representations to the Gardners.

253.     T.D.'s continued pursuit of foreclosure and its failure to cancel the trustee's sale is a threat to take action which cannot legally be taken.  T.D. cannot legally take this action, nor can Attorneys Japp or Goff, because: (a) Nationstar is not the creditor therefore T.D. is not the legal agent of the creditor; (b) T.D. did not receive written notice of default and election to foreclose, from the true creditor/Lender; and (c) T.D. is no longer the trustee and therefore a trustee's sale cannot occur pursuant to the Second NTS, signed by and recorded on behalf of T.D.

254.     T.D. and Attorneys Japp and Goff are using unfair and unconscionable methods to collect the Gardner debt through foreclosure or demand.  T.D. and Attorney Japp were, and Attorney Goff is currently, threatening to foreclose on the Gardners when there is no present right to possession of the Property.  There is no present right to possession because the sale was illegally initiated, and the signer of the Second NTS is no longer trustee, requiring cancellation of the sale.  There is further no present right to

possession because Nationstar is not the creditor, and no foreclosure trustee, including T.D., Attorney Japp or Attorney Goff has ever received a written notice of default and election to foreclose from the Lender, nor were any of the 3 trustees substituted at the request of the true beneficiary or an agent of the true beneficiary.

255.    The Gardners have suffered damages as a result of T.D.'s misidentification of the creditor.  The Gardners were confused about who owns their Loan, who they could contact for a modification, and on information and belief would be granted an equitable modification if they could deal with the true Lender on these issues.  The Gardners have serious concerns about whether the payments they have made, went to an entity with any legal relationship to this Loan, or any entitlement to payments.

256.    The Gardners also suffered the damage of acceleration of the Note by Defendants without legal authority to do so, and by having their Property set for a Trustee's Sale without legal authority, by parties without any standing to foreclose.

257.    As trustee under the Deed of Trust, T.D. and Attorney Japp had, and Attorney Goff has, contractual duties to perform, including obtaining written notice of default from the Lender, Lender's written election to foreclose, and the duty to cancel the Second NTS when Attorney Japp was substituted as trustee, and again when Attorney Goff was substituted.  T.D., Attorney Japp and Attorney Goff did not receive the required writings from the Lender and have not cancelled the sale.

258.    The Gardners have suffered other actual damages as a result of T.D., Attorney Japp and Attorney Goff's false, deceptive, and misleading practices, and their unfair and unconscionable methods for collecting this Loan.  Without limitation, they have incurred attorneys' fees from two law firms which the Gardners were compelled to hire to stop the illegal trustee's sale of the Property.   Attorneys' fees continue to accrue.

259. Plaintiffs are also entitled to statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A).

47

## COUNT SEVEN

### CANCELLATION OF TRUSTEE'S SALE

### (NATIONSTAR, T.D., ATTORNEYS JAPP & GOFF)

260.     Plaintiffs repeat and reallege every allegation above as if fully set forth herein.

261.     A non-judicial foreclosure is an equitable proceeding.

262.     He who seeks equity must do equity.

263.     The Defendants have unclean hands in this non-judicial foreclosure matter.

264.     The Defendants have violated good faith and have unclean hands, in seeking to foreclose pursuant to documents which are void ab initio and illegal, or were later rendered void, such as the Second NTS through the Third Substitution.

265.     The Defendants have violated good faith and have unclean hands in allowing themselves to be substituted as trustee under the DOT, knowing that the entity signing the Substitution is not the true Lender/Beneficiary, nor an agent of that entity and as to Attorneys Japp and Goff, they knew that AMSL, LLC in fact did not exist; yet each trustee has failed and refused to cancel or release its substitution through the appropriate recorded document, and each trustee has allowed the trustee's sale to remain pending in spite of the illegal foreclosure documents and in spite of the present trustee's not having signed the Second (and presently-pending) NTS.

266.     The Defendants have violated good faith and have unclean hands in failing to cancel the Second NTS even though the trustee which set that sale and signed that document and caused its recording, no longer has any legal relationship to the Property.

267.     The Second NTS was signed by the then-trustee under the DOT, T.D.  The signing of the NTS is a non-delegable duty of the trustee.  A.R.S. § 33-803.01(A)(1)(a).

268.     Only the current, legally appointed trustee under the DOT may exercise the power of sale through a Notice of Trustee's Sale signed by that same trustee, "by virtue of his position" as the "trustee of a trust deed."  A.R.S. § 33-807(A).

269.     The power of sale of trust property, conferred upon the trustee, cannot be

48

exercised before the ninety-first day after the trustee records the notice of sale which must be signed by the trustee.      A.R.S. §§ 33-807(D); 33-803.01(A)(1)(a).

270.      After the Second NTS was signed and recorded, Attorney Japp was substituted as trustee under the DOT, and thereafter, Attorney Goff was substituted.

271.      The Second NTS was signed by an entity no longer the trustee.  Therefore, the Second NTS must be cancelled by T.D.  A.R.S. § 33-803.01(A)(1)(b).

272.      The deed of trust statutes must be construed strictly, and in favor of borrowers.

273.      The legislature intended that only the trustee which signed the Notice of Trustee's Sale, could then foreclose pursuant to that Notice, after the ninetieth day.  This intent is demonstrated by, in addition to the statutes cited above, A.R.S. § 33-808(F) which prohibits the Notice of Trustee's Sale from being re-recorded for any reason.

274.      It would be inequitable, and in fact illegal, to allow the Defendants to proceed pursuant to the void and illegal Second NTS and the other void and illegal foreclosure documents recorded against the Property.

275.      If the Defendants are allowed to maintain the trustee's sale as pending or to proceed to sale pursuant to the Second NTS, Defendants will be given an equitable remedy that encourages illegal activity.

276.      Accordingly, Plaintiffs seek an Order from this Court that the Second NTS is invalid, and that T.D. must sign and record a cancellation of trustee's sale.

## COUNT EIGHT

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### (ALL DEFENDANTS)

277.      Plaintiffs repeat and reallege every allegation as though fully set forth herein.

278.      On or about April 19, 2007, the Gardners entered into two contracts with the Lender GreenPoint: the Note and the DOT.  *See* Exhibits 2 and 3.

279.      All Defendants are aware of the Note and DOT created in 2007, between the Gardners and GreenPoint.

280.     Nationstar claims that the Loan was sold into the Trust.  Assuming this is true, by July 31, 2007, the Loan was transferred, assigned, set over and deposited with U.S. Bank to be held in trust for the benefit of the Certificate Holders.

281.     The Certificate Holders are therefore, the Note Holder and Lender on the Loan, and the Certificate Holders are the only ones who can be the true beneficiary of the DOT.

282.     Each Defendant is fully aware that it is not the Note Holder, or Lender, or true beneficiary of the Loan.

283.     Each Defendant is aware that under the DOT, the Lender must send a writing to the trustee and the trustor, declaring a default and electing to foreclose.   The writing cannot be sent by an agent of the Lender.

284.     Each Defendant is aware that only the Note Holder, defined as the entity which takes the Note by transfer and is entitled to receive payment, is secured by the DOT.

285.     Each trustee under the DOT is fully aware that Nationstar is not the Note Holder, Lender or true beneficiary under the DOT.

286.     Each Defendant is aware that the Lender never sent the required writing to the trustee or the trustor before foreclosure was initiated.

287.     Each Defendant has intentionally interfered with the contracts between the Gardners and GreenPoint, thereby causing one or more breaches of those contracts.

288.     The Defendants' interference is detailed in allegations above, but includes but is not limited to: signing and mailing the 30-Day Default letter, creating, signing, recording or acquiescing in these actions with respect to the Assignments, the Substitutions of Trustee, and the Notices of Trustee's Sale, all of which breach the Note and DOT as is described above.

289.     The Defendants intended that by their actions, they would initiate and conduct a foreclosure sale not authorized by the true Note Holder, Lender and beneficiary, purely for their own financial gain, without having any legal connection or relation to the Loan.

290.     Each of these illegal and void documents (the Assignments, Substitutions and Notices of Trustee's Sale) has prevented the Gardners from being able to: (i) discern the identity of the Note Holder and Lender/beneficiary; (ii) break through the roadblocks preventing them from being able to contact the true Lender/beneficiary and Note Holder with whom the contracted; (iii) determine the true facts with respect to their Loan including any Loan balance and the identity of the entity or entities to pay; (iv) negotiate with the Note Holder and Lender; and (v) otherwise arrive at resolution of pending issues, if any, related to their Loan.

291.     The Defendants' interference violates the contracts, public policy and Arizona statutes, including but not limited to A.R.S. §§ 33-807(A) & (E); 33-808(C)(5); 33-809(C); and 33-801(10).

292.     The Defendants' interference with Plaintiffs' contracts with their Lender has caused damage to the Gardners, including but not limited to:

a)     risk of multiple liabilities on their Note, and having to pay the true Lender who may appear later, after having already paid the Defendants and/or lost their home in foreclosure to imposters;

b)     prevented the Plaintiffs from the opportunity to work and negotiate with the only entity/entities with standing who are motivated to come to resolution on any outstanding issues from a rational commercial business perspective;

c)     caused the clouding of title to their Property, resulting in a loss of market value and reduced ability to use and sell their Property;

d)     obstruction of Plaintiffs' attempts to exercise their legal rights, through obfuscation of the truth, and repeated Substitutions of Trustee signed by a non-existent entity, intended to lead Plaintiffs to believe that the documents were legal, to hide Aronowitz' involvement, and to make Plaintiffs' complaint obsolete immediately after its filing; and

e)     the Gardners' need to retain two different law firms to halt the illegal and void attempts to foreclose on the Property without any legal authority to do so.

293.     Defendants have acted improperly in interfering with the Note and DOT, as no Defendant is the true Note Holder, Lender and beneficiary, or an agent of the true Note Holder, Lender and beneficiary.

294.     Plaintiffs are entitled to a release of all wrongful recordings, the revelation of the identity and contact information of the true Note Holder/Lender and beneficiary, damages including the decreased value of their Property due to wrongful recordings against it clouding title, all their attorneys' fees and costs incurred, and punitive damages against the Defendants for their intentional and willful and wanton conduct.

**WHEREFORE**, Plaintiffs request the following relief:

A.     For a Declaratory Judgment and/or an Order that the Assignments, Substitutions and two NTS, as well as the DOT which is now a nullity, are void and must be cancelled/revoked with recordings at the Maricopa County Recorder's Office;

B.     For a Declaratory Judgment and/or Order that no Defendant is the Note Holder/Lender and true beneficiary, that no Defendant may initiate or conduct a trustee's sale of Plaintiffs' Property, and no Defendant has standing to enforce the Note or DOT;

C.     For damages sustained by the Plaintiffs as a result of the Defendants' breaches of contract, and breach of the duty of good faith and fair dealing;

D.     For damages sustained by the Plaintiffs as a result of the negligence per se of Nationstar, T.D., AMSL, LLP, Japp and Goff;

E.     For a judgment finding the Defendants slandered Plaintiffs' title, and quieting title in the Plaintiffs as to the Defendants under A.R.S. § 33-420, and for statutory damages of not less than $5,000 per recorded document and no less than $1,000 against Attorney Goff or for treble the actual damages, whichever is greater;

F.     For damages against T.D. and Attorney Japp for violations of the Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692k(a)(2)(A), and as otherwise alleged;

G.     For an Order from this Court that the Second NTS be cancelled through the recording of a cancellation of sale;

     H.     For judgment for Plaintiffs' legal fees and costs incurred, pursuant to A.R.S. § 12-341.01 and A.R.S. § 33-420(A) and (C);

     I.     For judgment against the Defendants for their intentional interference with the Plaintiffs' Note and DOT, and for punitive damages to deter them from continuing their illegal practices with other homeowners;

     J.     For interest on the reasonable attorney's fees, court costs, and other costs of collection at the highest legal rate from the date of entry of judgment herein until paid in full; and

     K.     For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury as a matter of right.

DATED this 11th day of May, 2015.

                        BARBARA J. FORDE, P.C.

              By:     s/ Barbara J. Forde
                        Barbara J. Forde, Esq.
                        20247 N. 86th Street
                        Scottsdale, AZ  85255
                        *Attorney for Plaintiffs*

ORIGINAL e-filed this 11th
day of May, 2015, with
COPIES delivered through ECF to:

Laura Sixkiller
Stacey F. Gottlieb
GREENBERG TRAURIG, LLP
2375 East Camelback Rd., Ste 700
Phoenix, AZ  85016
*Attorneys for Defendants Nationstar*
*Mortgage, T.D. Service Co., and*
*U.S. Bank as Trustee*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cameron G. LaDuke
LAKE & COBB, P.L.C.
1095 W. Rio Salado Pkwy., Suite 206
Tempe, AZ  85281
*Attorneys for AMSL, LLP,*
*Japp & Goff*


s/Barbara J. Forde_____