WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JAY N. GARDNER and RACHEL B.
GARDNER,

                           Plaintiffs,

      vs.

NATIONSTAR MORTGAGE, LLC, et al.,

                         Defendants.

No. 2:13-cv-1641-HRH
[Consolidated with
No. 2:13-cv-2478-HRH]

JAY N. GARDNER and RACHEL B.
GARDNER,

                           Plaintiffs,

      vs.

NATIONSTAR MORTGAGE, LLC, et al.,

                         Defendants.

O R D E R

Motions to Dismiss

The AMSL defendants move to dismiss[1] plaintiffs' Fourth Amended Complaint.  The

Nationstar defendants also move to dismiss[2] plaintiffs' Fourth Amended Complaint.  Both

motions are opposed.[3]  Oral argument was requested and has been heard.

---

[1]Docket No. 87.

[2]Docket No. 89.

[3]Docket Nos. 94 and 93.

<u>Background</u>

Plaintiffs are Jay N. Gardner and Rachel B. Gardner.  Defendants are Nationstar Mortgage LLC; T.D. Service Company of Arizona; U.S. Bank, N.A.;[4] Starlet J. Japp; Clayton A. Goff; AMSL Legal Group, LLC; and AMSL Legal Group, LLP.[5]

In April 2007, plaintiffs borrowed $960,000 from GreenPoint Mortgage Funding, Inc., to purchase "property located at 3601 East Mountain View Road, Phoenix, Arizona...."[6] The Adjustable Rate Note that plaintiffs signed named GreenPoint as the "Lender" and provided "that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"[7]  The Note provided that if the borrower is

> in default, the Note Holder may send me [the borrower] a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.[[8]]

Plaintiffs, as trustors, also executed a Deed of Trust.[9]  The Deed of Trust named GreenPoint as the "Lender" and Marin Conveyancing Corp. as the "Trustee."[10]  The Deed of Trust listed the Mortgage Electronic Registration Systems, Inc. (MERS), "as a nominee

---

[4]These three defendants are referred to collectively herein as the Nationstar defendants.

[5]These latter four defendants are referred to collectively herein as the AMSL defendants.

[6]Fourth Amended Complaint at 1, ¶ 1, Docket No. 82.

[7]Adjustable Rate Note at 1, ¶ 1, Exhibit 2, Fourth Amended Complaint, Docket No. 82-2.

[8]<u>Id.</u> at 3, ¶ 7(C).

[9]Deed of Trust, Exhibit 3, Fourth Amended Complaint, Docket No. 82-3.

[10]<u>Id.</u> at 1-2, ¶ (C) and (D).

for the Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Interest."[11]  The Deed of Trust provided that "[t]his Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Interest and Note."[12]  "For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale" the property at 3601 East Mountain View Road, Phoenix, Arizona.[13]

The Deed of Trust further provided:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies pro-vided in this Section 22, including, but not limited to, reason-able attorneys' fees and costs of title evidence.

---

[11]Id. at 2, ¶ (E).  "Listing MERS as a nominal beneficiary in the deed of trust facilitates a process common in the home lending industry today known as 'securitiza-tion.'"  Steinberger v. McVey ex rel. County of Maricopa, 318 P.3d 419, 427 n.9 (Ariz. Ct. App. 2014).  "Securitization describes the process by which large numbers of home loans are 'pooled into a trust and converted into mortgage-backed securities that can be bought and sold by investors.'"  Id. (quoting United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 46 (Mass. 2011).

[12]Deed of Trust at 3, Exhibit 3, Fourth Amended Complaint, Docket No. 82-3.

[13]Id. at 4, ¶ (R).

> If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale.  Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.[14]

The Deed of Trust also provided that "Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law."[15]

The Deed of Trust further provided that:

> [t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.[16]

The Deed of Trust does not define "other mortgage loan servicing obligations" nor does the Note define this term.

---

[14]Id. at 13, ¶ 22.

[15]Id. at ¶ 24.

[16]Id. at 11-12, ¶ 20.

At some point in time, Lehman Brothers Holdings Inc. came to own plaintiffs' Note. In July 2007, a trust entitled Lehman XS Trust Mortgage Pass-Through Certificates Series, 2007-15N was created by Structured Asset Securities Corporation, Aurora Loan Services LLC, and U.S. Bank National Association (the "Trust").[17]   Structured Asset Securities Corporation was the "depositor," Aurora Loan Services LLC was the "master servicer," and U.S. Bank was the "trustee."[18]   The pooled Trust Agreement provided that "[t]he Depositor has acquired the Mortgage Loans from Lehman Brothers Holdings Inc. ... and at the Closing Date is the owner of the Mortgage Loans...."[19]   The pooled Trust Agreement provided that "[c]oncurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, ... in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans."[20]   The trustee holds the Trust Fund, which includes the Mortgage Loans,[21] "for the benefit and use of the Holders of the related Certificates...."[22]   The pooled Trust Agreement provided that:

> the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee and/or a Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan ... so transferred and assigned:
>
>   (i) with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee ... or in blank...;

---

[17]Exhibit 6, Fourth Amended Complaint, Docket No. 82-6.

[18]Id. at 1.

[19]Id.

[20]Id. at 112, Section 2.01(a).

[21]Id. at 104.

[22]Id. at 112, Section 2.01(a).

(ii) if applicable, the original of any guarantee, security agreement or pledge agreement executed in connection with the Mortgage Note, assigned to the Trustee[.[23]]

In other words, plaintiffs' Note and the Deed of Trust were to be transferred to U.S. Bank, as the trustee, which held them for the benefit and use of the Certificateholders, but the Trust owned plaintiffs' Note and held the Deed of Trust.

The pooled Trust Agreement identifies a number of loan servicers, including GreenPoint, GMACM, and Aurora[24] and provided that:

[t]he Master Servicer ... and each Servicer shall have full power and authority (to the extent provided in the applicable servicing agreement) to do any and all things necessary or desirable in connection with the servicing and administration of the Mortgage Loans, including but not limited to the power and authority (i) to execute and deliver, on behalf of the Certificateholders and the Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages, (iii) to collect any Insurance Proceeds and Liquidation Proceeds, and (iv) to effectuate foreclosure or other conversion of the ownership of the Mortgaged property securing any Mortgage Loan....[[25]]

The pooled Trust Agreement also provides that:

[t]he Master Servicer is further authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name or in the name of any Servicer ... when the Master Servicer or a Servicer, as the case may be, believes it is appropriate in its best judgment to register any Mortgage Loan with MERS, or cause the removal from the registration of any Mortgage Loan on the MERS system, to execute and deliver, on behalf of the Trustee and the Certificateholders, or any of them, any and all instruments of assignments and other comparable instruments with respect to such assignment or re-

---

[23]Id. at 113, Section 2.01(b).

[24]Id. at 102.

[25]Section 9.04(a), Trust Agreement, available at http://www.sec.gov.Archives/edgar/data/1406223/000114420407044356/v084952_ex4-1.htm (last visited on Dec. 3, 2015).

recording of a Mortgage in the name of MERS, solely as nominee of the Trustee and its successors and assigns.[26]

Plaintiffs allege that on July 13, 2007, GreenPoint advised them that the servicing of their loan was being transferred from GreenPoint to GMAC Mortgage, effective August 1, 2007.[27]  Plaintiffs further allege that on October 15, 2010, GMAC Mortgage advised them that the servicing of their loan was being transferred to Aurora Loan Services, effective November 1, 2010.[28]

On September 21, 2011, MERS "as nominee of GreenPoint ... and its successors and/or assigns" assigned plaintiffs' Deed of Trust to Aurora Bank FSB.[29]  MERS purported to assign "all its right, title, and interest in and to said Deed of Trust."[30]  As set out above, MERS was listed in the Deed of Trust as the "beneficiary under this Security Instrument" and MERS was authorized to act "solely as a nominee for Lender and Lender's successors and assigns."[31]  The assignment was executed by Stacy Sandoz, vice-president,[32] who plaintiffs allege works for Aurora Bank, not MERS.[33]  Plaintiffs refer to this as the First Assignment.[34]  Plaintiffs allege that the First Assignment is "invalid and void" because

---

[26]Id.

[27]Fourth Amended Complaint at 9, ¶ 40, Docket No. 82.

[28]Id. at ¶ 41.

[29]Corporate Assignment of Deed of Trust at 1, Exhibit 7, Fourth Amended Complaint, Docket No. 82-7.

[30]Id.

[31]Deed of Trust at 2, Exhibit 3, Fourth Amended Complaint, Docket No. 82-3.

[32]Corporate Assignment of Deed of Trust at 1, Exhibit 7, Fourth Amended Complaint, Docket No. 82.

[33]Fourth Amended Complaint at 9-10, ¶¶ 43-44, Docket No. 82.

[34]Id. at 9-10, ¶ 43.

Sandoz had no authority to act on behalf of MERS.[35]  Plaintiffs also allege that because the First Assignment purports to assign only the Deed of Trust, this assignment "separated the Note from the Deed of Trust."[36]

On October 25, 2011, Aurora Bank FSB, as "the present Beneficiary under said Deed of Trust," substituted Quality Loan Service Corporation as the trustee of the Deed of Trust.[37]  Plaintiffs refer to this as the First Substitution and allege that this First Substitution was void because "Aurora Bank FSB did not have the authority from the true beneficiary or beneficiaries, to sign the First Substitution."[38]

On November 9, 2011, Vanessa Sisk, an assistant secretary for Quality Loan Service Corporation, signed a Notice of Trustee's Sale.[39]  The Notice of Trustee's Sale listed Aurora Bank FSB as the current beneficiary of the Deed of Trust and Quality Loan Service Corporation as the trustee.[40]  The trustee's sale was scheduled for February 8, 2012.[41]  Plaintiffs allege that "Aurora Bank FSB could not be the true beneficiary" because it was not the note holder and/or the lender.[42]

Sisk also sent a Statement of Breach or Non-Performance on behalf of Aurora Bank FSB and Quality Loan Service Corporation, the "agent" of Aurora.[43]  Plaintiffs allege that

---

[35]Id. at 10, ¶ 44.

[36]Id. at ¶ 46.

[37]Exhibit 8, Fourth Amended Complaint, Docket No. 82-8.

[38]Fourth Amended Complaint at 11, ¶¶ 52-53, Docket No. 82.

[39]Exhibit 9, Fourth Amended Complaint, Docket No. 82-9.

[40]Id. at 1.

[41]Id.

[42]Fourth Amended Complaint at 11-12, ¶ 57, Docket No. 82.

[43]Exhibit 10 at 1, Fourth Amended Complaint, Docket No. 82-10.

"[t]his Statement of Breach is void and invalid, because QLS was not the agent of the true beneficiary, which must also be the Note Holder/Lender[.]"[44]   Quality Loan Service Corporation also sent a Debt Validation Notice that stated that "[t]he debt/loan is currently owed to:  Aurora Bank FSB."[45]   Plaintiffs allege that "Aurora Bank FSB was not then, or ever, the true beneficiary or the Note Holder/Lender."[46]

Plaintiffs allege that on June 28, 2012, Aurora Bank assigned its "purported" interest in the Deed of Trust to Nationstar.[47]   Plaintiffs refer to this as the Second Assignment. Plaintiffs allege that the Second Assignment was invalid and void because it was based on the First Assignment which was invalid and void.[48]   Plaintiffs further allege that Nationstar was not the note holder or the lender, but merely the servicer of the loan, and thus Nationstar could not be a true beneficiary under the Deed of Trust.[49]   Plaintiffs also allege that the Second Assignment was invalid "because a transfer of a deed of trust, without the note, is a nullity."[50]

On July 15, 2012, plaintiffs allege that Nationstar advised them that the servicing of their loan was being transferred to Nationstar.[51]   The letter advised plaintiffs that Nationstar was servicing the loan "on behalf of U.S. Bank, Trustee, LXS Series 2007-15N."[52]

---

[44]Fourth Amended Complaint at 12, ¶ 58, Docket No. 82.

[45]Exhibit 10 at 2, ¶ 1, Fourth Amended Complaint, Docket No. 82-10.

[46]Fourth Amended Complaint at 12, ¶ 59, Docket No. 82.

[47]Id. at 13, ¶ 64.

[48]Id. at ¶ 68.

[49]Id. at ¶ 66.

[50]Id. at 14, ¶ 70.

[51]Id. at  9, ¶ 42.

[52]Letter from Nationstar Mortgage to Gardners (July 15, 2012), Exhibit 5, Fourth
(continued...)

The letter further advised that "[t]he debt is owed to U.S. Bank, Trustee, LXS Series 2007-15N, but is being serviced by Nationstar."[53]

Plaintiffs allege that on October 9, 2012, Quality Loan Service Corporation cancelled the First Notice of Trustee's Sale.[54]

On March 4, 2013, Nationstar sent plaintiffs a default letter, in which Nationstar advised plaintiffs that it

> intends to enforce the provisions of the Note and Security Instrument. ...If you do not pay the full amount of the default, we may accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property.[[55]]

In the letter, Nationstar identified itself as the "Servicer" and indicated that it was acting "on behalf of 'U.S. Bank National Association as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N', the Creditor to whom the debt is owed[.]"[56] Plaintiffs allege that Nationstar had no right to declare a default, accelerate the balance of the Note, and elect to foreclose, because under the Deed of Trust only the lender can declare a default, accelerate the balance of the Note, and elect to foreclose.[57]   Plaintiffs contend that Nationstar could not act as the lender's agent.

---

[52](...continued)
Amended Complaint, Docket No. 82-5.

[53]Id.  Plaintiffs make much of the fact that U.S. Bank was not the "owner" of the debt, but these allegations have little to do with whether plaintiffs have stated plausible claims.

[54]Fourth Amended Complaint at 14, ¶ 73, Docket No. 82.

[55]Exhibit 12, Fourth Amended Complaint, Docket No. 82-12.

[56]Id.

[57]Fourth Amended Complaint at 14-15, ¶ 76, Docket No. 82.

On April 19, 2013, Nationstar, as the purported beneficiary of the Deed of Trust, substituted T.D. Service Company as the trustee.[58]  Plaintiffs refer to this as the Second Substitution.[59]  Plaintiffs allege that the Second Substitution is void because Nationstar was not a true beneficiary and did not have the authority from the true beneficiary to sign the Second Substitution.[60]  Plaintiffs also allege that the Second Substitution is void "because it depends on the void and invalid First and Second Assignments for its own validity."[61]

On April 30, 2013, T.D. Service Company recorded a Notice of Trustee's Sale.[62]  The Notice listed Nationstar as the beneficiary of the Deed of Trust and T.D. Service Company as the current trustee.[63]  The trustee's sale was set for August 1, 2013.[64]  Plaintiffs allege that the second Notice of Trustee's Sale was void because Nationstar was not a true beneficiary and could not declare a default.[65]

On July 20, 2013, Nationstar responded to a letter from plaintiffs.[66]  In the letter, Nationstar advised that "[o]ur records indicate U.S. Bank as Trustee for LLXS Series 2007-15N is the current owner of the Note."[67]  Nationstar further advised that it was "the

---

[58]Exhibit 13, Fourth Amended Complaint, Docket No. 82-13.

[59]Fourth Amended Complaint at 15, ¶ 78, Docket No. 82.

[60]Id.

[61]Id.

[62]Exhibit 14, Fourth Amended Complaint, Docket No. 82-14.

[63]Id. at ¶ 1.

[64]Id.

[65]Fourth Amended Complaint at 17, ¶¶ 90-91, Docket No. 82.

[66]Exhibit 15, Fourth Amended Complaint, Docket No. 82-15.

[67]Id. at 1.

servicer of the loan" and that "[s]ervicing matters include ... [f]oreclosure proceedings[.]"[68]

On September 18, 2013, U.S. Bank responded to an email from plaintiffs about their loan.[69]  The email advised that plaintiffs' "loan is owned by the Trust and US Bank serves as Trustee for that Trust.  However, as Trustee, we do not own your loan...."[70]  The email further advised that Nationstar was the servicer and that "[w]hile the Servicer does not own the loan either (again it is the Trust), they have all of the decision making authority for any action deemed necessary on your loan."[71]

On September 5, 2014, AMSL Legal Group, LLC, as "attorney in fact for Nationstar Mortgage LLC" substituted Starlet J. Japp as the trustee.[72]  Plaintiffs refer to this as the Third Substitution.[73]  Plaintiffs allege that the Third Substitution is void because "[i]t depends for its validity on the void First and Second Assignments which resulted in the assignment of the DOT to Nationstar."[74]  Plaintiffs further allege that the Third Substitution is void "because AMSL, LLC does not exist and therefore cannot be attorney-in-fact for another[.]"[75]

On September 29, 2014, AMSL Legal Group, LLC, again acting "as attorney in fact for Nationstar Mortgage LLC", appointed Clayton A. Goff, as trustee.[76]  Plaintiffs refer to

---

[68]Id.

[69]Exhibit 16, Fourth Amended Complaint, Docket No. 82-16.

[70]Id. at 1.

[71]Id. at 2.

[72]Exhibit 17, Fourth Amended Complaint, Docket No. 82-17.

[73]Fourth Amended Complaint at 19, ¶ 104, Docket No. 82.

[74]Id. at ¶ 105.

[75]Id.

[76]Exhibit 18, Fourth Amended Complaint, Docket No. 82-18.

this as the Fourth Substitution.[77]  Plaintiffs allege that the Fourth Substitution was void because "[i]t depends for its validity on the void First and Second Assignments which resulted in the assignment of the DOT to Nationstar."[78]  Plaintiffs further allege that the Fourth Substitution was void "because AMSL, LLC does not exist and therefore cannot be attorney-in-fact for anyone, and cannot sign legal documents, which are recorded, appointing a trustee."[79]

On October 26, 2014, plaintiffs sent a letter to Goff "demand[ing] that [he] immediately record a document voiding, releasing and nullifying" the Fourth Substitution.[80]  Plaintiffs allege that "[t]o date, Goff has not recorded such a release/resignation."[81]

Plaintiffs commenced this action in state court on July 30, 2013.  On August 12, 2013, it was removed to this court.  Defendants moved to dismiss plaintiffs' complaint and on September 26, 2013, the court granted the motion to dismiss after plaintiffs failed to respond to the motion.[82]  Judgment was entered dismissing plaintiffs' complaint.[83]  This judgment was subsequently vacated and plaintiffs were given leave to file an amended complaint.[84]  Plaintiffs filed their first amended complaint on September 9, 2013.[85]  Pursuant

---

[77]Fourth Amended Complaint at 20, ¶ 109, Docket No. 82.

[78]Id. at ¶ 111.

[79]Id.

[80]Exhibit 19, Fourth Amended Complaint, Docket No. 82-19.

[81]Fourth Amended Complaint at 21, ¶ 113, Docket No. 82.

[82]Docket No. 14.

[83]Docket No. 15.

[84]Docket No. 27.

[85]Docket No. 30.

to stipulations, plaintiffs filed a second and third amended complaint.[86] On March 20, 2015, pursuant to a stipulation, this case was consolidated with Case No. 2:13-cv-2478.[87]  On May 11, 2015, plaintiffs filed their Fourth Amended Complaint in this consolidated action.[88]

In their Fourth Amended Complaint, plaintiffs assert eight counts. Count One is a declaratory judgment claim asserted against all defendants.  Specifically, plaintiffs seek a declaratory judgment:  (1) "that pursuant to the Note and Deed of Trust, only the Note Holder/Lender and true beneficiary may pursue foreclosure, and that the Defendants must therefore prove their status as Note Holder/Lender and true beneficiary, before they may be allowed to proceed to Trustee's Sale[;]"[89] (2) "that the First and Second Assignments, the First, Second, Third and Fourth Substitutions and the First and Second [Notices of Trustee's Sales] are void and unenforceable, and that these recorded documents must be cancelled and title cleared by recordings at the Maricopa County Recorder's Office[;]"[90] (3) "that no party may notice or re-notice a trustee's sale without proving status as Note Holder/Lender and true beneficiary under the Note and Deed of Trust, and otherwise complying with the contracts, and applicable law[;]"[91] (4) "that the Note and DOT require that only the Note Holder/Lender may enforce the terms of the Note and accelerate the balance, that only the Note Holder/Lender is protected by the Deed of Trust as Security, and only the Note

---

[86]Docket Nos. 38 and 44.

[87]Docket No. 71.  Case No. 2:13-cv-2478 was brought by plaintiffs against Nationstar and U.S. Bank, and the complaint in that case originally asserted one claim alleging that plaintiff's mortgage loan was never transferred to the Trust.

[88]Docket No. 82.

[89]Fourth Amended Complaint at 29-30, ¶ 142, Docket No. 82.

[90]Id. at 32, ¶ 161.

[91]Id. at ¶ 162.

Holder/Lender may initiate foreclosure of the Deed of Trust[;]"[92] (5) that Nationstar and its alleged attorney-in-fact AMSL, LLC or any other agent, cannot sign or record any further substitutions of trustee or assignments of the DOT, as Nationstar is not the Lender, Note Holder or true beneficiary of the DOT[;]"[93] and (6) that "no Defendant is the Note Holder/Lender and true beneficiary, that the DOT has been rendered a nullity, and that until an entity can prove its status as Note Holder/Lender, no entity may seek to enforce the Note[.]"[94]

Count Two is a breach of contract claim asserted against all defendants in which plaintiffs allege that in pursuing the trustee's sales in violation of the deed of trust statutes, the Deed of Trust, the Note, and other applicable law, defendants have breached the Deed of Trust and the Note.[95]

Count Three is a breach of the duty of good faith and fair dealing claim against all defendants in which plaintiffs allege that defendants breached their duty of good faith and fair dealing by: (1) hiding from plaintiffs the identify of the true beneficiary and misrepresenting that Aurora Bank and then Nationstar were true beneficiaries;[96] (2) hiding the identity of the true Note Holder/Lender by misrepresenting the owner of the loan as U.S. Bank;[97] (3) allowing someone other than the note holder/lender to write to plaintiffs declaring a default;[98] (4) initiating foreclosure without requiring that the lender notify the

---

[92] Id. at ¶ 163.

[93] Id. at ¶ 164.

[94] Id. at 33, ¶ 166.

[95] Id. at 34, ¶¶ 172-173.

[96] Id. at 35, ¶ 184(a).

[97] Id. at 36, ¶ 184(b).

[98] Id. at ¶ 184(c).

trustee in writing that the Note was in default and of an election to foreclose;[99] (5) seeking to proceed to a trustee's sale on clearly invalid documents;[100] (6) "knowingly and purposefully separating the Note from the DOT thereby rendering the Note unsecured[;]"[101] (7) "falsely listing the servicer of the Loan as Aurora Commercial Corp., on the MERS database;"[102] (8) "having a non-existent entity sign the Third Substitution on September 5, 2104, but not recording it until after Plaintiffs' First Amended Complaint was filed and never disclosing same to Plaintiffs[;]"[103] (9) "having a non-existent entity sign the Fourth Substitution on September 9, 2014, and recording it on October 2, 2014 without disclosing same to Plaintiffs in spite of this pending litigation[;]"[104] and (10) "clouding Plaintiffs' title to such an extent that Plaintiffs will be hampered in their ability to alienate their property, and resulting in a decrease in its market value."[105]

In Count Four, plaintiffs assert quiet title and slander of title claims under A.R.S. § 33-420 against all defendants. These claims are based on allegations that defendants have recorded documents that "are groundless, contain material misstatements, and [make] false claims against" plaintiffs' property.[106]

In Count Five, plaintiffs assert negligence per se claims against Nationstar, T.D. Service Company and the AMSL defendants. Plaintiffs allege that these defendants

---

[99] Id. at ¶ 184(d).

[100] Id. at ¶ 184(e).

[101] Id. at ¶ 184(f).

[102] Id. at ¶ 184(g).

[103] Id. at ¶ 184(h).

[104] Id. at ¶ 184(i).

[105] Id. at 37, ¶ 184(j).

[106] Id. at 40-41, ¶ 210.

violated A.R.S. § 39-161,[107] that Nationstar, T.D. Service Company, and AMSL Legal Group LLP violated A.R.S. § 33-420,[108] that Japp and Goff violated A.R.S. § 33-420(C),[109] and that all of these defendants violated A.R.S. §§ 33-503, 41-311, 41-312, and 41-313.[110]

In Count Six, plaintiffs assert a Fair Debt Collection Practices Act claim against T.D. Service Company, Japp, and Goff.  Plaintiffs allege that these defendants used false, deceptive, and misleading representations or means in connection with collection of a debt.[111]

In Count Seven, plaintiffs assert a cancellation of trustee's sale claim against Nationstar, T.D. Service Company, Japp, and Goff.  Plaintiffs allege that these defendants had an obligation to cancel the second Notice of Trustee's Sale because they knew their substitutions as trustee were not valid.[112]

In Count Eight, plaintiffs assert an intentional interference with contractual relations claim against all defendants.  Plaintiffs allege that defendants have interfered with plaintiffs' contracts with their lender.[113]

Pursuant to Rules 8 and 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss all of plaintiffs' claims.

---

[107]Id. at 42, ¶¶ 219 and 224.

[108]Id. at 42-43, ¶ 225.

[109]Id. at 43, ¶¶ 227 and 229.

[110]Id. at ¶ 231.

[111]Id. at 45, ¶ 243.

[112]Id. at 48, ¶ 265.

[113]Id. at 51, ¶ 292.

Discussion

"Rule 12(b)(6) is read in conjunction with Rule 8(a)[.]" <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 998 (9th Cir. 2013). "Rule 8 requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Eclectic Properties East, LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990, 995 (9th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)). "To meet this requirement, the Supreme Court has held that an 'entitlement to relief' requires 'more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above a speculative level.'" <u>Id.</u> (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "Although a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable, plaintiffs must include sufficient factual enhancement' to cross the line between possibility and plausibility." <u>Id.</u> (internal citations and quotation marks omitted). "This standard represents a balance between Rule 8's roots in relatively liberal notice pleading and the need to prevent 'a plaintiff with a largely groundless claim' from tak[ing] up the time of a number of other people, with the right to do so representing an <u>in terrorem</u> increment of settlement value.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557–58). "Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> at 995-96 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)). "First, a court should 'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). "Then, a court should 'assume the[] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'" <u>Id.</u> at 996 (quoting <u>Iqbal</u>, 556 U.S. at 679). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."

Order – Motions to Dismiss                                                                 -18-

<u>Paulsen v. CNF Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009).  "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Eclectic Properties</u>, 751 F.3d at 996 (quoting <u>Iqbal</u>, 556 U.S. at 678).

In reaching the following conclusions on issues presented by the motions to dismiss, the court has considered the parties' arguments and authorities and has applied the foregoing principles for evaluating the adequacy of plaintiffs' Fourth Amended Complaint.

Allegations that Defendants are not
the Lender or Note Holder

Plaintiffs have alleged that the person who signed the First Assignment was not authorized to do so.  Plaintiffs have pled a plausible claim that the First Assignment was invalid.  It appears to the court that plaintiffs are challenging more than the MERS system.  They are challenging the authority of the people who were actually signing documents for MERS.  The court concludes for purposes of the motions to dismiss that plaintiffs have stated a plausible claim that defendants lacked authority to conduct the trustee's sale (presently noticed but held in abeyance) because the First Assignment was not valid.

Allegations Based on Plaintiffs' Challenges
to the Assignments of the Deed of Trust

Defendants contend that all of plaintiffs' claims, directly or indirectly, rely on plaintiffs' allegations that the Deed of Trust was not properly assigned to MERS as beneficiary in the first instance, and thus any subsequent assignments (to Aurora and to Nationstar) were invalid.  Plaintiffs contend that MERS could have transferred its <u>nominee status</u> under the Deed of Trust, but that did not mean it could transfer any <u>beneficiary rights</u> under the Deed of Trust.

Plaintiffs have stated a plausible claim that the person who signed the First Assignment was not authorized to do so on behalf of MERS.

<u>Securitization and Split Note / Deed of Trust Arguments</u>

Defendants believe that plaintiffs are alleging that because their Note was sold as part of a securitization mortgage trust shortly after the Deed of Trust was recorded, they somehow have the right to stop the foreclosure sale.  Plaintiffs disagree.  Plaintiffs contend that they have alleged that the securitization of their loan means that the Certificateholders are the lender and note holder.  Based upon that contention, plaintiffs assert that only the Certificateholders can declare default on the Note, accelerate it, and tell the trustee to initiate foreclosure.

The respective roles of the various entities involved in the multiple transactions affecting plaintiffs' Deed of Trust are not entirely clear.  Some relevant documents evidence at least uncertainty as to the parties' roles.  It is plausible that MERS had the authority to transfer the lender's beneficial interest in the Deed of Trust.  But the issue remains:  did the person who signed the First Assignment have the authority to act on behalf of MERS.

<u>Count One – Declaratory Action</u>

Plaintiffs' Count One seeking declaratory relief states a plausible cause of action. The court will exercise its discretion to entertain plaintiffs' Count One.  As suggested by the foregoing, a primary issue which must be addressed by the parties and the court is the validity of the First Assignment.  The validity of the First Assignment will depend upon two factors:  (1) who – under the Deed of Trust, the pooled Trust Agreement, and other relevant documents – had the authority to assign or otherwise change beneficiary status under the Deed of Trust, and (2) was that authority validly exercised?  If the First Assignment was valid, then it will become necessary to evaluate proceedings that took place following the First Assignment.  However, if the First Assignment were invalid, then much of what followed will also fail.

<u>Count Two – Breach of Contract</u>

Plaintiffs have plausibly alleged a breach of the Deed of Trust based upon their contention that the First Assignment was invalid – which, if established, would render the Second Assignment invalid.

Count Three – Breach of Duty<br><u>of Good Faith and Fair Dealing</u>

Because plaintiffs have stated a plausible breach of contract claim (Count Two), then it follows that their breach of implied covenant claims are also plausible.

<u>Count Four – Quiet Title and Slander of Title</u>

Plaintiffs contend, based upon A.R.S. § 33-420.A, that one or more of the defendants caused a forged, groundless, or false statement of claim as to the real property in question to be recorded.  Defendants argue that none of the recordings made by them contain false statements or misrepresentations or, in the alternative, that any misstatements were not material to the plaintiffs.

If, as plaintiffs contend, the First and Second Assignments of the Deed of Trust are invalid, then plaintiffs' claim that a purported lien holder has caused the recording of a knowingly groundless or false claim against the real estate in question is plausible.  Because of the significant rights that go with beneficiary status, the recording of a groundless or false assignment of a deed of trust is material to the plaintiffs, for beneficiary status carries with it the right to accelerate the loan, to declare a default, and to proceed with foreclosure.

<u>Count Five – Negligence per se Claims</u>

Plaintiffs have pled a plausible negligence <u>per se</u> claim based upon A.R.S. § 39-161 because plaintiffs allege that defendants recorded the First Assignment that is alleged to have been signed by someone without authority to do so.  Plaintiffs have also stated a plausible negligence <u>per se</u> claim based upon A.R.S. § 33-420 and the recording of documents containing material false statements as discussed above.  At this stage of

proceedings, the court is unpersuaded that plaintiffs have pleaded this claim with insufficient particularity.

Count Six – Fair Debt Collection Practices Act Claim

Count Six of plaintiffs' Fourth Amended Complaint alleges a Fair Debt Collection Practices Act Claim against T.D. Service Company, Japp, and Goff.   Each of these defendants were substituted as trustees under the Deed of Trust.   "'[A] non-judicial foreclosure proceeding is not the collection of a "debt" for purposes of the FDCPA.'"  Zinni v. Jackson White, P.C., No. CV 11–02143–PHX–FJM, 2012 WL 869008, at *2 (D. Ariz. March 14, 2012) (quoting Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)).   "Moreover, 'mortgagees and their assignees, servicing companies, and trustee fiduciaries are not included in the definition of "debt collector."'" Id. (quoting Mansour, 618 F. Supp. 2d at 1182).  Because trustees in non-judicial foreclosure proceedings are not debt collectors, plaintiffs' Count Six is dismissed.

Count Seven – Cancellation of Trustee's Sale Claim

This claim is asserted against Nationstar, T.D. Service Company, Japp, and Goff. Plaintiffs argue that Japp and Goff were obligated to cancel the trustee's sale set by T.D. Service Company.

A.R.S. § 33-813 requires that a trustee cancel a pending sale if a trustor has reinstated the deed of trust through payment of amounts due.   Here, there has been no such reinstatement.  Plaintiffs' Count Seven does not state a plausible claim.  Indeed, it appears to the court that plaintiffs' Count Seven merely states a potential remedy that might be imposed if plaintiffs prevail on their declaratory action (Count One).

Plaintiffs' Count Seven is dismissed.

<u>Count Eight – Intentional Interference with Contractual Relations</u>

> The elements of a cause of action for intentional interference with contract are a contract between the plaintiff and a third party; knowledge of the defendant that the contract exists; intentional interference by the defendant which causes the third party to breach the contract; a showing that the defendant acted improperly; and a showing that damage resulted to the plaintiff.

<u>Barrow v. Arizona Bd. of Regents</u>, 761 P.2d 145, 152 (Ariz. Ct. App. 1988).  Plaintiffs allege that "[e]ach defendant has intentionally interfered with the contracts between the Gardners and GreenPoint, thereby causing one or more breaches of those contracts."[114]

Plaintiffs contend that they have adequately alleged that defendants interfered with their contract with the true lender.  Plaintiffs contend that the Certificateholders, the note holder, and the lender on the loan are the only ones who can be true beneficiaries of the Deed of Trust.  Plaintiffs contend that defendants interfered with plaintiffs' contract with the Certificateholders.  Defendants argue that plaintiffs are not parties to the pooled Trust Agreement and have no standing to assert rights thereunder.

As stated above, the court has concluded that plaintiffs' Count One for declaratory relief states a plausible cause of action.  It is the court's perception that in the course of ruling on Count One, the court will necessarily confront and decide who is and who is not a beneficiary under the Deed of Trust for purposes of enforcing the Deed of Trust if the Note is not paid.  Plaintiffs' Count Eight is plausible if, as plaintiffs contend, only the lender/note holder can be the beneficiary.  The court declines to address that proposition at this time.

<u>Statute of Limitations</u>

Defendants contend that all of plaintiffs' claims rely on a theory that MERS could not have been a true beneficiary and that all assignments and substitutions flowing from

---

[114]Fourth Amended Complaint at 50, ¶ 287, Docket No. 82.

its appointment were invalid.  Defendants also argue that all claims that depend upon a purported defect in acknowledgment of a recorded document are time-barred.

The court declines to take up the parties' statute of limitations arguments until plaintiffs' claims (especially those in connection with Count One for declaratory relief) are better defined.

### Claims against T.D. Service Company, Japp, and Goff

T.D. Service Company, Japp, and Goff argue that all claims against them should be dismissed pursuant to A.R.S. § 33-807(E).  That statute provides in pertinent part that a trustee should not be joined in a legal action except for breach of the trustee's obligations under the statute or the deed of trust in question.

Plaintiffs contend that there were multiple breaches of obligation by the trustees in question, including their knowledge that Nationstar was not the true beneficiary for purposes of initiating foreclosure proceedings.

Taking the allegations of plaintiffs' complaint as true, plaintiffs have stated plausible claims against T.D. Service Company, Japp, and Goff.

### Plaintiffs' Standing

Nationstar argues that plaintiffs have no standing to challenge the validity of the Third Substitution, which plaintiffs contend was void because AMSL Legal Group LLC does not exist.  This quarrel has to do with use of the company named AMSL Legal Group LLC, as opposed to AMSL Legal Group LLP.

Plaintiffs have standing to inquire into the validity of the various documents underlying the Notice of Sale recorded for purposes of enforcing plaintiffs' Deed of Trust.

### Declaratory Relief

Defendants argue that plaintiffs' request for declaratory injunctive relief should be denied because they are remedies for underlying causes of action and not independent causes of action.

Order – Motions to Dismiss                                                                                            -24-

Plaintiffs have stated a plausible cause of action for declaratory relief, and the remedies for which they pray remain viable.

Allegations Not Contained<br>in Proposed Fourth Amended Complaint

The AMSL defendants argue that plaintiffs have improperly included allegations in their Fourth Amended Complaint that were not contained in the <u>proposed</u> Fourth Amended Complaint.

The court has already rejected that argument when it ruled upon the Nationstar defendants' motion to strike.[115]

Conclusion

The motions to dismiss[116] are granted in part and denied in part.  Count Six as to T.D. Service Company of Arizona, Japp, and Goff is dismissed.  Count Seven as to Nationstar Mortgage, T.D. Service Company of Arizona, Japp, and Goff is dismissed.  Count Six and Seven are dismissed with prejudice as plaintiffs have had multiple opportunities to plead the claims asserted in these counts.  The motions to dismiss are denied as to all other counts and contentions.

The court reminds the parties of its conviction that plaintiffs owe a debt that is secured by a Deed of Trust.  Laying aside the technicalities of the voluminous records over which the parties disagree, the money which the plaintiffs owe (or the proceeds of the security for the Deed of Trust) ultimately belongs to the LEHMAN XS TRUST, Series 2007-15N, Certificateholders, for whom U.S. Bank National Association acts as the trustee.  There is no doubt but that  someone on behalf of the Certificateholders and the trustee for the Certificateholders is entitled to collect payments, declare a default if payments are not made, and, if the default is not cured, demand foreclosure.  The parties would save

---

[115]Docket No. 102.

[116]Docket Nos. 87 and 89.

themselves a great deal of effort and money if they were to reach an agreement identifying the entity presently entitled to demand payment of plaintiffs' debt, the entity entitled to declare a default if payment is not made, and the trustee entitled to foreclose if full payment of plaintiffs' debt is not made.

The court urges the parties to seriously consider engaging a private mediator or requesting the designation of a United States magistrate judge to assist them with a settlement conference.

DATED at Anchorage, Alaska, this 7th day of December, 2015.

/s/ H. Russel Holland<br>United States District Judge