1

2

3

**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

4

Brian J. Schulman, SBN 015286; schulmanb@gtlaw.com
*Attorneys for Defendants Nationstar Mortgage, LLC, T.D.*
*Service Company of Arizona, and U.S. Bank, N.A., as Trustee*
*of the Lehman XS Trust Mortgage Pass-Through Certificates,*
*Series 2007-15N*

5

6

7

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

8

9

| | |
|---|---|
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife; | Case No. 2:13-cv-01641-HRH |
| Plaintiffs, | [Consolidated with No. 2:13-cv-02478-HRH] |
| v. | |
| NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; T.D. SERVICE COMPANY OF ARIZONA, a California corporation; U.S. BANK, N.A., as TRUSTEE of the LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N; STARLET J. JAPP, a member of the California and Arizona State Bars; CLAYTON A. GOFF, a member of the Arizona, Texas, California and Nevada State Bars; AMSL LEGAL GROUP, LLC, aka AMSL LEGAL GROUP, LLP, fka ARONOWITZ MECKLENBURG SPITALNICK & LIEPOLD, LLP, a California Limited Liability Company; ABC Corporations 1-100; XYZ Limited Liability Companies 1-100; 123 Banking Associations 1-100; and DOES 1-100. | **DEFENDANTS NATIONSTAR MORTGAGE, LLC, T.D. SERVICE COMPANY OF ARIZONA, AND U.S. BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |
| Defendants. | |
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife; | |
| Plaintiffs, | |
| v. | |
| NATIONSTAR MORTGAGE LLC, a foreign limited liability company authorized to conduct business in the State of Arizona; U.S. BANK, N.A. as Trustee of the LEHMAN XS TRUST CERTIFICATES SERIES 2007-15N; ABC corporations, Limited Liability Companies and Partnerships 1-100; and DOES 1-100; | |
| Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants Nationstar Mortgage LLC ("Nationstar"), TD Service Company of Arizona ("TD"), and U.S. Bank, N.A., as Trustee for the Lehman XS Trust Mortgage Pass-Through Certificates, Series 207-15N  ("US Bank," and collectively with Nationstar and TD, the "Defendants"), through undersigned counsel, hereby move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against plaintiffs Jay N. Gardner and Rachel B. Gardner (the "Gardners") and in favor of Defendants. This Motion is supported by the following Memorandum of Points and Authorities, exhibits attached hereto, and the record, all of which are incorporated.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Though the technicalities involved in this case seem voluminous, the sum of this case is an effort by the Gardners to avoid a rightfully noticed trustee's sale of the property located at 3601 East Mountain View Road, Phoenix, Arizona 85028 (the "Property") following the Gardners' default on their mortgage loan. The entirety of the Gardners' case distills to three central arguments: (1) that the Mortgage Electronic Registration Systems, Inc. ("MERS") lacked the ability to assign the deed of trust related to the loan; (2) that the individuals who signed assignments and substitutions of trustee on behalf of MERS and its successors Aurora Bank FSB ("Aurora"), Nationstar, T.D., and AMSL Legal Group, LLP ("AMSL") somehow lacked authority to execute those documents or act on behalf of US Bank; and (3) that AMSL cannot act on behalf of Nationstar because the substitution of trustee includes a typographical error identifying AMSL as an "LLC" instead of an "LLP."

While the Gardners survived the pleading phase based on the tenuous allegation that the individual signatories of the various assignments lacked authority to execute the relevant documents, the actual facts do not support these allegations and summary judgment is proper:

First, the language in the deed of trust, as well as extensive case law from the Ninth Circuit, shows that MERS may assign the deed of trust.

Second, the uncontroverted evidence shows that the executing entities and individual signatories had authority to sign the relevant documents. Indeed, the Trust Agreement, with US

Bank as Trustee, and the Acquisition and Purchase Agreement between Aurora Loan Services (the "Master Servicer") and Nationstar clearly authorizes all of these documents.

Third, the scrivener's error identifying AMSL as a limited liability company instead of a limited liability partnership does not operate to invalidate the various substitutions of trustee.

The Gardners have no evidence to create a genuine dispute of material fact on any of these issues. Further, as the Court noted in its December 7, 2015 Order Re Motion to Dismiss Fourth Amended Complaint (the "Dismissal Order"), there is no question that "plaintiffs owe a debt that is secured by a Deed of Trust … [and] the money which the plaintiffs owe (or the proceeds of the security for the Deed of Trust) ultimately belongs to the LEHMAN XS TRUST, Series 2007-15N, Certificateholders, for whom US Bank National Association acts as the trustee." *See* Dismissal Order [Dkt. # 114]. The evidence shows no genuine dispute of material fact that Nationstar is entitled to enforce the deed of trust and complete a foreclosure sale. As such, this Court should enter summary judgment in favor of Defendants and dismiss the Fourth Amended Complaint [Dkt. # 82] ("FAC").

## II.      STATEMENT OF UNDISPUTED FACTS

The Gardners borrowed $960,000.00 from GreenPoint Mortgage Funding, Inc. (the "Loan" or "Note") to purchase property located at 3601 East Mountain View Road, Phoenix, Arizona (the "Property"), secured by a deed of trust (the "DOT") executed by the Gardners in favor of GreenPoint Mortgage Funding, Inc. recorded with the Maricopa County Recorder's Office on April 30, 2007 as Instrument No. 2007-0500849. *See* Exh. 1 (Note); Exh. 2 (DOT); Exh. 4 (Affidavit of Nationstar Mortgage LLC ("Nationstar Affidavit")) at ¶ 4.  The DOT named MERS as the beneficiary and the nominee for the lender, and its successors and assigns, and the trustee as Marin Conveyancing Corp. *See* Exh. 2 (DOT) at 2-3.

As the Borrowers under the DOT, the Gardners expressly agreed that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) **and the successors and assigns of MERS**." Exh. 2 (DOT) at 3. The Gardners agreed to "irrevocably grant[] and convey[] to Trustee, in trust, with power of sale, [the Property]." *Id.* The DOT also provides in pertinent part that:

2

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times **without prior notice to the Borrower**. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and applicable Law.
>
> \* \* \*
>
> There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. … If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*Id.* at 11, § 20 (emphasis added). The DOT further states, "Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all of the title, power and duties conferred upon Trustee herein and by Applicable Law." *Id.* at 13, § 24.

On or about July 1, 2007, US Bank entered into a Trust Agreement with Structured Asset Securities Corporation and the Master Servicer (the "Trust Agreement"). *See* Exh. 3 (Trust Agreement excerpts); *see also* Exh. 4 (Nationstar Affidavit) at ¶5. The Trust Agreement delineated the rights of the parties and its servicers, including that the Master Servicer or any servicer may **act in its own name** "to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan …." *See* Exh. 3 (Trust Agreement Excerpts) at 8-10, § 9.04(a). It further authorized US Bank, in its own name **or in the name of any Servicer**, to register or remove any instrument from the MERS® System and to make any associated assignments and recordings for MERS to act as beneficiary as nominee for the lender and its successors and assigns. *See id.* Essentially, the Agreement authorized the Master Servicer to take all actions necessary to service the loan entered into by the Gardners, including any assignments or foreclosure proceedings. *See id.* The Agreement also authorized the Master Loan Servicer to appoint any additional servicers to effectuate these actions. *See id.*

Additionally, on or about July 1, 2007, US Bank entered into a Master Servicing Agreement ("Servicing Agreement") with the Master Servicer, incorporated into the Trust Agreement. *See* Exh. 5 (Servicing Agreement excerpts); *see also* Exh. 4 (Nationstar Affidavit)

at ¶6.   The Master Servicer was authorized to take all actions necessary to service the loan entered into by the Gardners, including assigning the DOT and proceeding with foreclosure. *See* Exh. 5 (Servicing Agreement excerpts). This included assigning the DOT to Nationstar as an additional servicer.  *See id.*

On or about September 21, 2011, Stacey Sandoz executed a Corporate Assignment of Deed of Trust, recorded with the Maricopa County Recorder's Office on October 17, 2011 as Instrument No. 2011-0858688 (the "First Assignment") on behalf of MERS as nominee for GreenPoint Mortgage Funding, Inc. ("GreenPoint") and its successors and assigns. *See* Exh. 6 (First Assignment); *see also* Exh. 4 (Nationstar Affidavit) at ¶7. Ms. Sandoz was authorized by MERS to do so pursuant to a MERS Corporate Resolution dated September 21, 2011 issued to Aurora as identified by its ORG ID 1000487 (the "MERS Resolution"). *See* Exh. 4 (Nationstar Affidavit) at ¶8; Exh. 7 (MERS Resolution).   Pursuant to the MERS® System Milestones Report, on or about August 1, 2011, the MERS® System was updated to reflect Plaintiffs' loan being registered to Aurora with ORG ID 1000487, as the subservicer.  *See* Exh. 15 ("Milestone Report"). By way of the First Assignment, Aurora succeeded to all rights granted to the beneficiary under the DOT. *See* Exh. 4 (Nationstar Affidavit) at ¶9.

On or about October 25, 2011, Michele Rice, a Vice President of Aurora, executed a Substitution of Trustee recorded with the Maricopa County Recorder's Office as Instrument No. 20110923343 on behalf of Aurora, naming Quality Loan Service Corporation as the new Trustee (the "First SOT").   *See* Exh. 8 (First Substitution); *see also* Exh. 4 (Nationstar Affidavit) at ¶10.

On or about June 12, 2012, Nationstar entered into an Amended and Restated Residential Servicing Asset Purchase Agreement By And Among Aurora Bank FSB, Aurora Loan Services LLC, and Nationstar Mortgage LLC (the "Purchase Agreement"). *See* Exh. 9 (Purchase Agreement); *see also* Exh. 4 (Nationstar Affidavit) at ¶11. Pursuant to the Purchase Agreement, Nationstar acquired all servicing rights for all loans serviced by the Master Servicer and all rights for all loans where Aurora was the current beneficiary of a deed of trust. *See* Exh. 9 (Purchase Agreement). Nationstar also obtained all servicing rights for the Trust

4

Agreement, authorizing Nationstar to take all actions to service said loans, including foreclosure in the event of default.  *See id.* at § 7.10, Schedule 1.01(h) (Trust Agreement No. 157); *see also* Exh. 4 (Nationstar Affidavit) at ¶12.

On or about June 28, 2012, Julie Erickson, a Vice President of Aurora, executed a Corporate Assignment of Deed of Trust recorded as Maricopa County Recorder Instrument No. 2012-0789178 on behalf of Aurora, assigning all rights to Nationstar (the "Second Assignment"). *See* Exh. 10 (Second Assignment); *see also* Exh. 4 (Nationstar Affidavit) at ¶13. By way of the Second Assignment, Nationstar succeeded to all rights granted to the beneficiary under the DOT. *See id.* at ¶14; *see also* Exh. 10 (Second Assignment).

On or about April 19, 2013, Albert Nguende, an Assistant Secretary for Nationstar, executed a Substitution of Trustee, recorded with the Maricopa County Recorder's Office as Instrument No. 2013-0390424, on behalf of Nationstar, naming TD as Trustee (the "Second SOT").  *See* Exh. 11 (Second Substitution); *see also* Exh. 4 (Nationstar Affidavit) at ¶15.

On or about April 30, 2014, Nationstar executed a Limited Power of Attorney, granting AMSL authority as Nationstar's attorney-in-fact to execute various documents on Nationstar's behalf, including the Third SOT and the Fourth SOT (the "Nationstar Power of Attorney"). *See* Exh. 12 (Nationstar Power of Attorney); *see also* Exh. 4 (Nationstar Affidavit) at ¶16. The Nationstar Power of Attorney was recorded in the Official Records of Maricopa County Recorder's Office on June 25, 2014 as instrument 20140414601. *See* Exh. 12 (Nationstar Power of Attorney).

On September 10, 2014, AMSL, as attorney in fact for Nationstar Mortgage LLC, recorded a Notice of Substitution of Trustee as Instrument No. 20140596798, substituting attorney Startlet J. Japp as the trustee under the DOT (the "Third Substitution").  *See* Exh. 13 (Third Substitution); *see also* Exh. 4 (Nationstar Affidavit) at ¶17.

On October 2, 2014, AMSL, as attorney in fact for Nationstar Mortgage LLC, recorded a Notice of Substitution of Trustee as Instrument No. 20140653071, substituting attorney Clayton A. Goff as the trustee under the DOT (the "Fourth Substitution"). *See* Exh. 14 (Fourth Substitution); *see also* Exh. 4 (Nationstar Affidavit) at ¶18.

5

## III.   LEGAL ARGUMENT

### A.   LEGAL STANDARD.

Summary judgment is appropriate when, viewing the evidence presented in a light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the movant is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Evidence is insufficient to withstand a motion for summary judgment if facts produced in support of a claim do not have significant probative value. *See First Nat. Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-290 (1968). The non-moving party must present affirmative evidence in order to defeat a properly supported summary judgment motion by showing that there is evidence creating a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986). Where the non-moving party cannot present such evidence, the motion should be granted. *Id.* Here, there is no genuine dispute concerning any material fact and Defendants are entitled to judgment as a matter of law.

### B.   THE GARDNERS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THE UNDERLYING DOCUMENTS PROVIDE DEFENDANTS WITH THE AUTHORITY TO FORECLOSE.

The Gardners claim that "only" the Lender or Note Holder could be a "true" beneficiary under the DOT; that MERS was never a "true" beneficiary even though the original DOT expressly named it as beneficiary because it was not the Lender or Note Holder and did not take possession of the Note; that despite being named as the Beneficiary on the DOT, MERS was not the agent of Lender or Note Holder; that MERS lacked authority to make the First Assignment to Aurora; and that any such assignment improperly split the DOT from the Note. *See* FAC, generally.   The Gardners further claim that because the First Assignment was invalid, every subsequent assignment and substitution was invalid, and that any of the recordings of these documents were false recordings.   *See* FAC at ¶¶ 68-78.  Alternatively, the Gardners allege that the typographical error in the Third and Fourth Substitutions render them invalid.   *See* FAC at ¶¶ 105, 111. These arguments are meritless and summary judgment is proper.

### 1. The First Assignment and All Subsequent Assignments and Recorded Documents are Valid.

All of the Gardners' claims, directly or indirectly, rely on the Gardners' assertion that the DOT was not properly assigned by MERS as beneficiary in the first instance, and, therefore, any assignments to Aurora and ultimately to Nationstar are invalid. *See* FAC at ¶ 44. These allegations are premised on the faulty legal conclusions that (1) "only" the "Lender/Note Holder" with a financial interest in the Note can be the "true" beneficiary of the DOT; and (2) MERS cannot be a "true" beneficiary. However, the terms of the DOT belie these contentions.

The Gardners expressly agreed in the DOT that MERS would act as beneficiary as nominee for the lender's successors and assigns. As beneficiary (as nominee for the lender and its successors and assigns), MERS's authority to assign or transfer its interests in a deed of trust is not dependent on whether it ever had possession of the note. *See, e.g., Steinberger v. McVey ex rel. Cnty. of Maricopa*, 234 Ariz. 125, 133, n. 11, 318 P.3d 419, 427, n. 11 (2014). Moreover, the Ninth Circuit has consistently held that MERS is a valid beneficiary of a deed of trust even if it lacks "actual interest" in the loan at issue.  *See, e.g.*, *Buchna v. Bank of Am.*, 478 F. App'x 425, 426 (9th Cir. 2012); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038, 1042 (9th Cir. 2011); *MacKenzie v. Fed. Nat'l. Mortg. Ass'n*, Case No. CV12-8092-PCT-JAT, 2012 WL 4711908, at *2 (D. Ariz. 2012); *Robinson v. BAC Home Loans Servicing, LP*, Case No. CV11-1920-PHX-JAT, 2012 WL 1520125, *3 (D. Ariz. 2012).

The Gardners' arguments that MERS cannot act as beneficiary as nominee merely reiterates arguments that courts have uniformly rejected in binding Ninth Circuit precedent as invalid attacks on the MERS. *See Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1169 (9th Cir. 2013); *Simmons v. Citibank, NA*, 594 Fed. App'x 383, 384 (9th Cir. 2015); *Buchna*, 478 F. App'x 425, 426 (9th Cir. 2012); *Watson v. U.S. Bank Nat'l Ass'n,* 2011 WL 2746333, at *3 (D. Ariz. July 15, 2011; *Maxa v. Countrywide Home Loans, Inc.*, 2010 WL 2836958, at *6 (D. Ariz. July 19, 2010); *Contreras v. U.S. Bank as Tr. for CSMC Mortg. Backed Pass-through Certs., Series 2006-5*, 2009 WL 4827016, at *5 (D. Ariz. Dec. 15, 2009); *Stauffer v. U.S. Bank Nat'l Ass'n,* 308 P.3d 1173, 1175 n.1 (Ariz. Ct. App. 2013); *Delo v. GMAC Mortgage, LLC*, 232 Ariz. 133, 137-38, 302 P.3d 658, 661-63 (Ct. App. 2013); *Sitton v. Deutsche Bank Nat'l*

7

*Trust Co.*, 233 Ariz. 215, 221, 311 P.3d 237, 243 (Ct. App. 2013); *MacKenzie*, 2012 WL 4711908, at *2 (D. Ariz. Oct. 3, 2012); *Kentera v. Fremont Inv. & Loan,* 2011 WL 4005411, at *5 (D. Ariz. Sept. 8, 2011).

The express language of the DOT defeats the Gardners' challenges to the designation of MERS as beneficiary and subsequent assignments as a matter of law. As the Ninth Circuit Court of Appeals has held, allegations that a note and deed of trust were never properly assigned "cannot elide the express provisions in the deed of trust for selling the note and for appointing a successor trustee without prior notice to the borrowers …. These deed of trust terms explicitly foreclose the [borrowers'] claims premised on the sale or transfer of the note to a successor trustee." *Zadrozny,* 720 F.3d at 1168. In reaching its conclusion, the Ninth Circuit focused on two clauses from the deed of trust at issue in that case that mirror the language found in the DOT at issue here: Paragraph 20 and Paragraph 24. Paragraph 20 of the DOT expressly provides for the sale of the Note and appointment of a successor trustee without prior notice to the borrowers:

> Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

*See* Exh. 2 (DOT) at 11, § 20. Paragraph 24 similarly provides that:

> Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

*See id.* at 13, § 24. Like in *Zadrozny,* the DOT terms here explicitly foreclose the Gardners' claims. *Id.*; *Zadrozny*, 720 F.3d at 1168, 1173.[1]  As a matter of law, the DOT and assignments

---

[1] The Arizona Deed of Trust Act (the "Act") does not define "beneficiary" as the lender, the holder of the note, or the secured party.  Rather, the Act provides for a broader definition of "beneficiary" that is more flexible and commercially practical by allowing the parties to *designate* a person to hold legal title to the trust deed for the benefit of (and as the nominee for) the person to whom the debt obligation is owed. A.R.S. § 33-801(1) (defining "beneficiary" as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given").  Nor does the definition of "beneficiary" limit the *capacity* in which one may receive the "benefit" of the trust deed, e.g., MERS as nominee or agent of the Lender.  Moreover, in the Act the definition of beneficiary applies "unless the context otherwise requires[,]" and is "not to be applied mechanistically and rigidly." *See also,*

8

1   evidence Defendants' authority to proceed with the trustee's sale.

2       The Gardners' sole remaining argument on assignability appears to be that the

3   individuals who executed the various assignments lacked specific authority from MERS, and

4   subsequently Aurora and Nationstar based on the *Steinberger* decision. *Steinberger*, 234 Ariz.

5   at 133, ¶30, 318 P.3d at 427, ¶30. While the allegation survived the pleading stage in that case,

6   no facts exist to support that that allegation.  *See, e.g., Vawter v. ReconTrust Co*., No. CV11-

7   1916-PHX-GMS, 2012 WL 1745604, at *2 (D. Ariz. May 16, 2012) *aff'd sub nom. Vawter v.

8   ReconTrust Co. NA*, 566 F. App'x 563 (9th Cir. 2014); *Wolfson v. Bank of Am., N.A.*, No. 1

9   CA-CV 12-0691, 2014 WL 931423, *3 (App. Mar. 11, 2014); *Coronado v. Chevy Chase Bank,

10  FSB*, 554 F. App'x 549, 551 (9th Cir. 2014). Setting aside the Gardners' threadbare allegations,

11  the evidence shows Stacy Sandoz had clear, express authority. *See* Exh. 4 (Nationstar

12  Affidavit) at ¶16;[2] *see also* Exh. 7 (MERS Resolution).

13      Though the chain of title and authority is clear and valid, the Gardners will likely

14  attempt to again misconstrue the language of the MERS Resolution to claim Ms. Sandoz had

15  authority from MERS to execute documents on behalf of Aurora, but not any documents

16  assigning the DOT **to** Aurora. However, this argument would be misguided. While the MERS

17  Resolution was issued "at the request of Aurora Bank, FSB," it appointed Ms. Sandoz as "an

18  assistant secretary and vice president of MERS …." *See* Exh. 7 (MERS Resolution) at 2. Thus,

19  Ms. Sandoz had authority as an officer of MERS. The MERS Resolution provided Ms. Sandoz

20

21  *Walgreen Ariz. Drug Co. v. A.D.O.R.,* 97 P.3d 896 (Ariz. Ct. App. 2004) (quotation omitted);
    A.R.S. § 33-801.  In other words, the definition of beneficiary has practical flexibility
22  depending on the context.  The context here is that MERS was the beneficiary as the nominee
    of the Lender and Plaintiffs agreed in a signed contract to designate MERS to be the
23  beneficiary authorized by the DOT to enforce the Lender's rights on its behalf.

24  [2] Plaintiffs' claims fail as a matter of law because "a borrower d[oes] not have standing to
    challenge an assignment that d[oes] not change the borrower's obligation but only changed the
25  entity to whom the borrower was obligated." *Robertson v. DLJ Mortg. Capital, Inc.*, CV-12-
    8033-PCT-LOA, 2012 WL 4840033, at *10 (D. Ariz. Oct. 11, 2012) (citations omitted). *See
26  also, Russell v. OneWest Bank, FSB*, No. CV11-01463-PHX-FJM, 2011 WL 5007958, at *3
    (D. Ariz. Oct. 20, 2011). Plaintiffs lack standing because Plaintiffs cannot show any injury.
27  *Graham–Miller v. Nationstar Mortg. LLC,* 2012 WL 2368494, at *4 (D. Ariz., June 21, 2012)
    (citations omitted); *In re Mort. Elec. Registration Sys. (MERS) Litig.,* 2011 WL 4550189, *5
28  (D. Ariz. Oct. 3, 2011); *Silving v. Wells Fargo Bank, NA,* 2012 WL 135989, at *3 (D. Ariz.
    Jan. 18, 2012), *aff'd.*, 552 F. App'x 684 (9th Cir. 2014) (citations omitted).

with authority to take a variety of actions, including:

> (2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS® System, is shown to be registered to the Member;

*See id.*

Pursuant to the MERS® System Milestones Report, on or about August 1, 2011, the MERS® System was updated to reflect Plaintiffs' loan being registered to Aurora with ORG ID 1000487, as the subservicer. *See* Exh. 4 (Nationstar Affidavit) at ¶8; Exh. 7 (MERS Resolution); Exh. 15 (Milestone Report), at 2. Thus, Ms. Sandoz had clear authority to execute the First Assignment on behalf of MERS. *See* Exh. 3 (Trust Agreement Excerpts) at 8-10, § 9.04(a); Exh. 4 (Nationstar Affidavit) at ¶¶6-8; *see also* Exh. 5 (Servicing Agreement excerpts); Exh. 6 (First Assignment); Exh. 15 ("Milestone Report"). This is consistent with the precedent of the Ninth Circuit, and this Court permitting MERS to appoint employees of other entities to execute documents on MERS's behalf. *See, e.g.*, *Cervantes,* 656 F.3d at 1042; *Frame v. Cal-Western Reconveyance Corp.*, 2011 WL 3876012, at *10 (D. Ariz. Sept. 2, 2011).[3]

Finally, the Gardners' assertion that the individuals who executed the subsequent assignments and recorded documents lacked authority is directly contradicted by the undisputed facts showing that each individual had the requisite authority to execute the relevant recorded documents. *See* Exh. 3 (Trust Agreement Excerpts) at 8-10, § 9.04(a); Exh. 4 (Nationstar Affidavit) at ¶¶6-8; *see also* Exh. 5 (Servicing Agreement excerpts); Exh. 7 (MERS Resolution) at 2; Exh. 15 ("Milestone Report").

---

[3] Even if the Court entertained the Gardners' unsubstantiated claims that Ms. Sandoz was not authorized, the Assignments would be voidable – not false or invalid – and voidable assignments are valid, as a matter of law. *See, e.g.*, *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 10 (1st Cir. 2014); *Epstein v. U.S. Bank Nat'l Ass'n,* 540 Fed. App'x 354, 357-58 (5th Cir. 2013); *Paik-Apau v. Deutsche Bank Nat'l Trust Co.*, Case No. 10-00699-SOM/RLP, 2012 WL 5207495, at *5 (D. Haw. Oct. 19, 2012).

### 2.   The Gardners' Claims Defendants are Not the Lender or Note Holder Are Irrelevant and Lack Merit.

All of the Gardners' claims are premised, at least in part, on the allegation that Defendants are not the proper parties to enforce the DOT because they are not the lender or rightful holder of the Note and, thus, are not the real parties in interest. *See* FAC at ¶¶ 52-53, 57, 64-70. The Arizona Supreme Court has flatly rejected this theory, holding that "Arizona's non-judicial foreclosure statutes do not require the beneficiary to prove its authority or 'show the note' before the trustee may commence a non-judicial foreclosure." *See Hogan v. Washington Mutual Bank, N.A.*, 230 Ariz. 584, 277, P.3d 781, 782 (2012) (*en banc*); *see also Kentera v. Fremont Inv. & Loan*, No. CV-10-8259-PHX-GMS, 2012 WL 1132760, at *5 (D. Ariz. Apr. 4, 2012).   Under Arizona law, deeds of trust and trustee's sales are governed exclusively by A.R.S. §§ 33-801 through 33-821, which provide the "only procedure" for a valid trustee's sale. *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978). These statutes do **not** require that a beneficiary or trustee prove it is entitled to enforce the borrower's promissory note in order to hold a sale. *See* A.R.S. § 33-807(A); *Hogan*, 230 Ariz. at 586, 277 P.3d at 783. Rather, Arizona law recognizes authority of a successor trustee to initiate and conduct a foreclosure sale after the borrowers' default without **any** such requirement. *Id.*

The holding in *Hogan* is consistent with numerous decisions of this Court and requires dismissal of the Gardners' claims. *See, e.g., Grey v. First Am. Title Ins. Co.*, No. CV09-1807-PHX-JAT, 2010 WL 1962323, at *2 (D. Ariz. May 14, 2010); *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (collecting cases); *Diessner v. MERS*, 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009). Moreover, there is no requirement in Arizona that a promissory note, an assignment of a promissory note, or an assignment of a trust deed be recorded. *See Vasquez v. Saxon Mortgage, Inc.*, 228 Ariz. 357, 266 P.3d 1053, 1055-56 (2011) (*en banc*). Here, the Gardners' tortured construction of the "Note Holder" contradicts the DOT and are insufficient as a matter of law. Anyone that has the legal right to

collect payments from the obligor, such as the servicer, may be a Note Holder.   As such, Plaintiffs' claims fail as a matter of law.

### 3.      The Gardners' Arguments Regarding Securitization and Split Note/DOT Arguments Fail to Support a Claim for Relief.

The Gardners' assert that their Note was sold as part of a securitized mortgage trust shortly after the DOT was recorded. They claim that this somehow gives them the right to stop the foreclosure sale, void the assignments and substitution of trustee, and strip the lien created by the DOT against the Property. The Gardners are wrong and present no evidence to support their position.

Securitization does not deprive a beneficiary of its contractual rights under a loan. *See Henkels v. J.P. Morgan Chase*, No. CV11-0299-PHX-JAT, 2011 WL 2357874, at *7 (D. Ariz. June 14, 2011); *Warren v. Sierra Pacific Mortg. Servs. Inc.*, No. CV10-02095-PHX-NVW, 2011 WL 1526957, at *6 (D. Ariz. April 22, 2011); *Colonial Savs., FA v. Gulino*, No. CV09-1635-PHX-GMS, 2010 WL 1996608, at *5 (D. Ariz. May 19, 2010). Borrowers like the Gardners simply are not entitled to determine the destiny of their note or who owns it at any given time. The DOT here expressly authorizes securitization of the Gardners' loan "without prior notice" to the Gardners. *See* Exh. 2 (DOT) at 11, § 20. Furthermore, federal statutes, such as the Securities Act of 1933, 15 U.S.C. § 7a *et seq.*, and the Secondary Mortgage Market Enhancement Act of 1984, 15 U.S.C. § 77r-l, permit securitization of mortgages. *See*, *e.g.*, 15 U.S.C. § 77-4-1(A)(1)(B).

To the extent the Gardners allege that securitization of their loan resulted in the Note and DOT being severed, rendering them unenforceable and prohibiting foreclosure, this argument has also been found to be wholly without merit. *See*, *e.g.*, *Cervantes*, 656 F.3d at 1044; *Ciardi v. Lending Co.*, No. CV10-0275-PHX-JAT, 2010 WL 2079735, *3 (D. Ariz. May 24, 2010). Moreover, the Ninth Circuit has recently rejected a "split note" theory premised on the false legal conclusion that MERS's assignees lack authority to serve as beneficiaries. *See Vawter*, 566 F. App'x at 564 (9th Cir. 2014).

PHX331846185

The Gardners' remaining securitization and "split note" arguments asserting that Nationstar lacks authority to proceed with foreclosure also fail because they ignore provisions of the pooled Trust Agreement that grant authority to the loan Servicer to act as Lender's authorized agent for purposes of foreclosure, among other things. For example, Section 9.04, titled, "Power to act; Procedures," states in part:

> **The Master Servicer** shall master service the Mortgage Loans and shall have full power and authority, subject to the REMIC Provisions and the provisions of Article X hereof, **and each Servicer shall have full power and authority (to the extent provided in the applicable Servicing Agreement) to do any and all things that it may deem necessary or desirable in connection with the servicing and administration of the Mortgage Loans, including but not limited to the power and authority** (i) to execute and deliver, on behalf of the Certificateholders and the Trustee, customary consents or waivers and other instruments and documents, (ii) **to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages**, (iii) to collect any Insurance Proceeds and Liquidation Proceeds, and **(iv) to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan, in each case, in accordance with the provisions of this Agreement and the applicable Servicing Agreement, as applicable**; …The Master Servicer further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name **or in the name of any Servicer (to the extent permitted in the applicable Servicing Agreement)**, when the Master Servicer or a Servicer, as the case may be, believes it is appropriate in its best judgment **to register any Mortgage Loan with MERS, or cause the removal from the registration of any Mortgage Loan on the MERS system, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns**.

*See* Exh. 3 (Trust Agreement excerpts) at § 9.04 (emphasis added).

These provisions are consistent with the Arizona Deed of Trust Act, which expressly authorizes appointment of successor trustees, either by the beneficiaries "or their agents as authorized in writing." A.R.S. § 33-804(D). No statute requires the beneficiary to record evidence of its agent's authority before the agent may act.  Thus, even if the Court entertained Plaintiffs' absurd "lender" argument (which is unnecessary as Nationstar is clearly the beneficiary per the DOT as explained above), summary judgment remains appropriate.

Further, Section 9.20(a) of the pooled Trust Agreement, relating to Realization Upon Defaulted Mortgage Loans, provides in part that "The Master Servicer shall use its reasonable best efforts to, **or to cause the applicable Servicer to, foreclose upon**, repossess or otherwise

1   comparably convert the ownership of Mortgaged Properties securing such of the Mortgage

2   Loans as come into and continue in default and as to which no satisfactory arrangements can be

3   made for collection of delinquent payments, all in accordance with the applicable Servicing

4   Agreement." *See* Exh. 5 (Servicing Agreement excerpts) at § 9.20(a) (emphasis added). Thus,

5   the Master Servicer or any other applicable servicer has authority to foreclose. *See* Exh. 3

6   (Trust Agreement excerpts); Exh. 5 (Servicing Agreement excerpts) at § 9.20(a); *see also* Exh.

7   4 (Nationstar Affidavit); Exh. 15 ("Milestone Report"). The Gardners do not contend

8   Nationstar failed to provide notice that it had become a Servicer of their loan. Further, the

9   Purchase Agreement makes clear that Nationstar obtained as "Master Servicing Rights" and

10  succeeded as Master Servicer to various trust agreements, including the Trust Agreement for

11  Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N. *See* Exh. 9 (Purchase

12  Agreement) at § 7.10, Schedule 1.01(h) (Trust Agreement No. 157); Exh. 4 (Nationstar

13  Affidavit) at ¶12.[4] Nationstar rightfully became Master Servicer for the pooled Trust

14  Agreement and is duly authorized to proceed with foreclosure.

## C.   THE GARDNERS' REQUEST FOR DECLARATORY RELIEF FAILS BECAUSE DEFENDANTS ARE VALID ASSIGNEES

16      "[I]njunctive and declaratory relief are remedies for underlying causes of action, and are

17  not independent causes of action. Plaintiff must base his request for injunctive and declaratory

18  relief on a cognizable legal theory." *Oraha v. Metrocities Mortg., LLC*, No. CV 11–1113–

19  PHX–JAT, 2012 WL 70834, *3 (D. Ariz. Jan. 10, 2012); *In re MERS Litig.,* 744 F. Supp. 2d

20  1018, 1032 (D. Ariz. 2010). The Gardners' request for declaratory relief effectively requests

21  validation of their "show the note," split note, and securitization theories, all of which fail.

22  Additionally, the Gardners seek an injunction prohibiting any party from enforcing the DOT

23  "without proving status as Note Holder/Lender and true beneficiary." But this request is based

_____

25  [4] There is no requirement under Arizona law to provide borrowers with notice of any of the authorizations that occur between or among the parties to the Trust Agreement and the related

26  servicing agreements. Rather, the lender or note holder [or is this beneficiary?], directly or through an authorized agent, need only give written notice to the trustee of the deed of trust

27  that the borrower is in default on a mortgage loan. That notice need not be recorded or disclosed to the borrower. All that is required is that the trustee of the deed of trust record a

28  notice of trustee's sale in accordance with the statutory requirements to effectuate non-judicial foreclosures.

on a false legal premise as previously discussed. As the undisputed facts show, Nationstar is acting with proper authority. Thus, the Gardners' faulty legal conclusion must be rejected here, just as it was rejected in *Vawter*, 2012 WL 1745604, at *2, *Coronado,* 554 F. App'x at 551, and *Wolfson,* 2014 WL 931423, *3.

**D.    THE GARDNERS BREACH OF CONTRACT CLAIM FAILS BECAUSE DEFENDANTS MAY ENFORCE THE DOT**

In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff. *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012) (emphasis added, citations omitted). Though the Gardners claim that Defendants are **not** the real parties in interest under their Note and DOT and that they have **_not_** acceded to the original contracting parties' rights by way of any of the assignments or substitutions in this case, Defendants do not dispute that Defendants are parties to the Note and DOT pursuant to the valid transfers of the Note and assignments of the DOT and substitutions.

Nevertheless, the Gardners have no evidence in support of this claim. The Gardners appear to believe that Defendants breached the Note and/or DOT by pursuing a trustee's sale "in violation of the deed of trust statutes and law … which are part of every contract …" FAC at ¶173. However, as discussed above, no specific provisions have been violated, rendering the claim meritless. *See Howard v. JPMorgan Chase Bank, N.A.*, No. CV12-0952-PHX DGC, 2012 WL 6589330, at *2 (D. Ariz. Dec. 17, 2012). Moreover, no facts exist to create a dispute of material fact as to Defendants' valid and authorized actions consistent with the terms of the Note and DOT. Thus, summary judgment is proper as to the Gardners' breach of contract claim.

**E.    THE GARDNERS' BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS AS A MATTER OF LAW**

No breach of the duty of good faith and fair dealing exists where a defendant's conduct complies with the terms of the Note and/or DOT. "Acts in accord with the terms of one's contract cannot without more be equated with bad faith." *Snyder*, 873 F. Supp.2d at 1153 (citation omitted). Here, the Gardners' claims that Defendants lacked authority to act as "true"

15

beneficiaries stem from the faulty legal conclusion that "only" the Lender or Note Holder may lawfully serve as beneficiary and that Defendants somehow misrepresented their positions, rights, and authority by "hiding" the true beneficiary. As discussed above, not only is this legal conclusion false, but it also contradicts the express terms of the DOT, which provides that MERS, and its successors and assigns, shall act the beneficiary as nominee for the Lender and its successors and assigns. *See* Exh. 2 (DOT) at 2-3. Because Count Three is premised on meritless claims that directly contradict DOT paragraphs 20-24, which provide that the Note may be sold one or more times **without notice to borrowers** and that servicing obligations on the Note (such as foreclosure) may be transferred or assigned, the Gardners have presented no evidence of a bad faith claim. *See Silving,* 2012 WL 135989, at *8; *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423–24, 46 P.3d 431, 434–35 (App. 2002). As no general dispute of material fact exists, this Court should enter summary judgment in favor of Defendants as to Count Three.

## F.   THE GARDNERS' QUIET TITLE CLAIM FAILS BECAUSE THE RECORDED DOCUMENTS ARE VALID

The Gardners assert a "quiet title" claim, seeking revision to the title, theoretically in the Gardners' names, under A.R.S. §33-420, and alleging that they "have a claim to the Property superior to all others as the fee simple absolute title holder." *See* FAC ¶192. As noted in the Court's Dismissal Order, the Gardners' quiet title claim is dependent on the argument that the recorded assignments and substitutions are invalid. *See* Dismissal Order at 21. As explained above, all of the various recordings are valid and none of them contain any false information, let alone any **knowingly false** information. *See supra* Section III.B.2.

Further, the Gardners cannot present any evidence supporting allegations of "slander of title" under A.R.S. §33-420. Setting aside the fact that the recordings are valid and accurate, even where recordings arguably contain some purported inaccuracy, any claim for slander of title/false recording or to remove the recording must be dismissed where the purported falsity is not material. *See, e.g., Sitton v. Deutsche Bank Nat'l Trust Co.*, 233 Ariz. 215, 220-21, 311 P.3d 237, 242-43 (App. 2013).  Any alleged misstatements as to the identity of the "true

1    beneficiary" or trustee are not material as a matter of law. *Id.* This is consistent with A.R.S. §

2    33-808(E), which prohibits invalidation of a trustee's sale based on "any error or omission" the

3    names and addresses of the beneficiary and trustee, the original trustor as stated in the deed of

4    trust, the signature of the trustee, the qualifications of the trustee, or legal description as long as

5    the legal description is sufficient to identify the trust property. Thus, it is illegal to set aside a

6    trustee's sale even where the recorded notice of sale, publication of notice or posting of the

7    notice purportedly misidentifies a beneficiary because this information cannot be material to a

8    borrower who is in default. *See, e.g., Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055,

9    1068 (D. Ariz. 2011). As such, the Court should grant summary judgment as to Count Four.

10       **G.   THE GARDNERS' NEGLIGENCE PER SE CLAIMS FAIL ON THE MERITS**

11

12       Count Five asserts negligence per se claims under a host of different statutes, though

13   this Court narrowed the claims to purported violations of A.R.S. § 39-161 and A.R.S. § 33-

14   420. *See* Dismissal Order at 21. As with all of the Gardners' claims, these allegations are

15   predicated on the position that the various assignments were executed by persons who lacked

16   authority and contained false statements, ostensibly as to the identity of the "true beneficiary".

17   As discussed above, there is no evidence supporting these claims.

18       Furthermore, negligence per se applies only to statutes with concrete and specific rules

19   of conduct, not statutes that govern "general or abstract principles." *See, e.g., Griffith v. Valley*

20   *of the Sun Recovery & Adjustment Bureau, Inc.*, 126 Ariz. 227, 229, 613 P.2d 1283, 1285

21   (App. 1980). In *Griffith*, the court explained that negligence per se is only appropriate "where

22   certain acts or omissions constitute negligence **without further inquiry into the**

23   **circumstances** or reasonableness of their occurrence." *Id.* (emphasis added). The statutes in

24   question here cannot meet that test because they contain the element of knowledge. For

25   example, a violation of A.R.S. § 39-161 requires proof that the defendant has "acknowledge[d],

26   certifie[d], notarize[d], procure[d] or offere[d] to be filed, registered or recorded" an instrument

27   that "**he knows to be false or forged**." A.R.S. § 39-161 (emphasis added). The element of

28   knowledge defeats the application of negligence per se because it requires "inquiry into the

17

circumstances or reasonableness" of the purportedly negligent acts or omissions. *Deering v. Carter*, 92 Ariz. 329, 333, 376 P.2d 857, 860. Thus, the Gardners' claims for negligence per se fails and the Motion should be granted.

**H.    THE GARDNERS' INTENTIONAL INTERFERENCE CLAIM FAILS BECAUSE THERE IS NO INTERFERENCE RESULTING IN THE GARDNERS' BREACH**

A claim for intentional interference with contract requires (1) a contract between the plaintiff and a third party, (2) knowledge of the defendant that the contract exists, (3) intentional interference by the defendant that caused the third party to breach the contract, (4) the defendant acted improperly, and (5) damages. *Barrow v. Arizona Bd. of Regents*, 158 Ariz. 71, 78, 761 P.2d 145, 152 (App. 1988). As the Court already determined, this claim requires evidence that only the Certificateholders can be the beneficiary. *See* Dismissal Order at 23. However, the Gardners have no evidence to support this claim and the relevant documents grant Nationstar the right to serve as the valid beneficiary. *See* Exh. 2 (DOT) at 2-3, at 11, § 20, at 13, § 24; Exh. 4 (Nationstar Affidavit) at ¶¶5-8; *see also* Exh. 3 (Trust Agreement excerpts); Exh. 7 (MERS Resolution); Exh. 8 (First Substitution); Exh. 9 (Purchase Agreement); Exh. 10 (Second Assignment); Exh. 15 ("Milestone Report"). As such, there is no possibility of intentional interference with a "third party." Moreover, even if there was still an argument for a third party existing, the Gardners' claim still fails because there is no evidence that Defendants acted improperly or caused a breach by either the Gardners or a third party. Defendants have all acted within their contractual right.  As such, the Gardners' claim fails and the Court should enter summary judgment in favor of Defendants as to Count Eight.

**I.    ALL CLAIMS AGAINST TD MUST BE DISMISSED IN THEIR ENTIRETY.**

Under A.R.S. § 33-807(E), TD is entitled to "immediate dismissal" and recovery of attorneys' fees on the allegations presented. Because the Gardners cannot present any evidence of a violation by TD, TD is not a proper party to an action. *Cervantes*, 656 F.3d at 1045. There is no evidence that TD violated any duty by "allowing" itself to be substituted as trustee, initiating a trustee's sale without first confirming that Nationstar was the true beneficiary of the

18

DOT or Note, or failing to cancel the sale after another trustee was substituted. In Arizona, a trustee is not required to confirm whether an alleged beneficiary has authority to appoint the trustee. *Id*. at 1042. A trustee "has the absolute right under Arizona law to rely upon any written direction or information furnished to him by the beneficiary." *Id*. at 1045. Under A.R.S. § 33-804(B), a beneficiary may remove a trustee and appoint a successor trustee at any time for any reason. And, under A.R.S. § 33-813, a trustee is required to cancel a pending sale only if the trustor has reinstated the deed of trust. The Gardners have not reinstated the DOT pursuant to A.R.S. § 33-813. Moreover, the Gardners cannot present evidence that they can defeat A.R.S. § 33-807(E)'s dismissal requirement. As such, the Court should rule in favor of TD as to all claims.

## IV.   CONCLUSION

Defendants respectfully request this Court grant their Motion and enter summary judgment in favor of Defendants on the Gardners' claims. Defendants also request an award of attorneys' fees and costs under the Note, the DOT, and A.R.S. §§ 12-341 and 12-341.01.

DATED this 9th day of November, 2016.

GREENBERG TRAURIG LLP

By:  */s/ Brian J. Schulman*
Brian J. Schulman
*Attorneys for Defendants Nationstar Mortgage LLC, T.D. Service Company of Arizona, and U.S. Bank, N.A.*

19

# CERTIFICATE OF SERVICE

☒ I hereby certify that on November 9, 2016, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

Barbara J. Forde
Barbara J. Forde, P.C.
20247 N. 86th Street
Scottsdale, AZ 85255
Email: barbarajforde@gmail.com
*Attorney for Plaintiffs*

By: */s/ Amy L. Hershberger*

20