Barbara J. Forde (013220)
BARBARA J. FORDE, P.C.
20247 N. 86th Street
Scottsdale, AZ 85255
(602) 721-3177
BarbaraJForde@gmail.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife;<br><br>    Plaintiffs,<br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware Limited Liability Company; et al,<br><br><br>    Defendants. | Case No. 2:13-cv-01641-HRH<br><br>[Consolidated with No. 2:13-cv-02478-HRH]<br><br>**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT** |
| JAY N. GARDNER and RACHEL B. GARDNER, Husband and Wife;<br><br>    Plaintiffs,<br>v.<br><br>NATIONSTAR MORTGAGE LLC, a foreign Limited Liability Company authorized to conduct business in the State of Arizona; et al,<br><br><br>    Defendants. | |

## I.   INTRODUCTION.

Plaintiffs Jay N. Gardner and Rachel B. Gardner hereby file their Response to Motion for Summary Judgment (the "Motion") filed by the Defendants (Doc. 147).   The Motion can swiftly be denied.  **First**, the Motion is in large part a duplicate of the Motion to Dismiss Defendants filed on June 5, 2015 (Doc. 89), which this Court already denied.  **Second**, the Motion purports to be

supported by the Affidavit of Fay Janati of Nationstar, who has no competency under applicable rules of evidence and whose cohort testified more accurately at deposition.  **Third**, the Motion is based on law from a bygone era in foreclosure jurisprudence, *already rejected by this Court* in its Order of December 7, 2015 (Doc. 114), and overruled by, among other cases, *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125 (Ct. App. 2014).  **Fourth,** a multitude of genuine, disputed factual issues prevent summary judgment; the Motion should be denied.

## II.   FACTS SUPPORTED BY THE EVIDENCE.

On or about April 19, 2007, Jay and Rachel Gardner (the "Gardners"), signed an Adjustable Rate Note (the "Note") and a Deed of Trust (the "DOT").  The documents list the Gardners as the Borrower, and the Lender as GreenPoint Mortgage Funding, Inc.  According to the Defendants, a "true and accurate copy of the Note," is attached as Doc. 147-1 at 3-9.  This copy of the Note is **unendorsed**.  *See* Affidavit of Fay Janati ("Janati Affidavit"), Doc. 147-1 at 48 ¶ 4.

The Note, which identifies GreenPoint as Lender, states that:  (a) "Lender or anyone who takes this Note by transfer and who is entitled to receive payment under this Note is called the 'Note Holder;'" (b) [i]f the Note Holder has required me to pay immediately in full … the Note Holder will have the right to be paid back by me…." (c) "[i]n addition to the protection given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed ('Security Instrument') … protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note."   See Doc. 147-1 at 3-9.

The DOT is a "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS."  It secures to Lender (*not the beneficiary*) (i) the repayment of the Loan and (ii) the performance of Borrowers' agreements under the DOT and Note.  The DOT states that MERS is the nominee for the Lender and is the beneficiary under the DOT.  The DOT states that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under the Security Instrument.  The DOT is very specific, that under the Note, "Borrower owes Lender" $960,000.00 plus interest.  The DOT it also provides that if applicable law is silent on whether the parties may agree to something by contract, "such silence shall not be construed as a prohibition against agreement by contract."   The DOT

requires that the Lender write to the Borrower and give notice of default, and separately write to the trustee under the DOT declaring default and electing to foreclose.  *See* Deed of Trust, a copy of which is attached hereto as Exhibit 1.[1]

"Beneficiary" is defined in Arizona statute as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest."  A.R.S. § 33-801(1).  Therefore, under the plain terms of the DOT, the person for whose benefit the DOT is given, is the Lender/Note Holder. ("This Security Instrument secures to Lender:  (i) the repayment of the loan….").  "Trust Deed" is defined as "a deed … to secure the performance of a contract or contracts …."  A.R.S. § 33-801(8).  "Contract" is defined as, among other things, a promissory note.  A.R.S. § 33-801(4).

MERS admits that it has no interest in any loan listed on its registration system:

> MERS shall serve as mortgagee of record with respect to all MERS Loans *solely as a nominee*, in an administrative capacity, for the beneficial owner….
> MERS shall have no rights whatsoever to any payments made on account of MERS Loans, to any servicing rights related to MERS Loans, or to any mortgaged properties securing MERS Loans.  MERS agrees not to assert any rights … with respect to MERS Loans or mortgaged properties.

*See* MERS System Terms & Conditions, attached as Exhibit 40 to the Videotaped Deposition of Aaryn Ryan Richardson ("Richardson Depo.,") an excerpt of which is attached hereto as Exhibit 2.  The Rule 30(b)(6) deponent for Nationstar Mortgage LLC, Aaryn Ryan Richardson, affirmed these Terms and Conditions.  *See* Richardson Depo., Exhibit 2, at 128-129.

The Gardners dispute that the Trust Agreement is an admissible document.  First, no version of the Trust Agreement produced or found on the Securities and Exchange Commission ("SEC") website, is signed by any party thereto.  The excerpt attached by the Defendants is not certified, or signed.  The Nationstar Deponent had no idea whether the Trust Agreement was ever signed.  *See* Richardson Depo. at 165-166.  Further, as a non-party to the Trust Agreement, Nationstar is

---

[1] Defendants failed to provide a recorded copy of the DOT.  *See* Doc. 147-1 at 11-34.  Therefore, their copy is not admissible in evidence.

not competent to authenticate the Trust Agreement through Affidavit.  *See* Janati Affidavit, Doc. 147-1 at 48 ¶ 5.[2]  The Gardners dispute any "facts" or arguments based on the Trust Agreement.

For the same reasons, the Gardners dispute any references to the terms of the "Servicing Agreement" provided as Exhibit 5.  That excerpt is simply another part of the Trust Agreement. It is inadmissible for the same reasons that the Trust Agreement is inadmissible.

Regardless, as is fully analyzed below, an agreement between Structured Asset Securities Corporation, Aurora Loan Services LLC, and U.S. Bank National Association, cannot abrogate the terms of the Note and Deed of Trust between the Gardners and GreenPoint.

According to the contracts the Gardners signed, GreenPoint was both their Lender and Servicer, as of April, 2007.  But in July 2007, the servicing rights to the Loan were sold by GreenPoint to GMAC Mortgage.  GreenPoint wrote to the Gardners, stating that "[t]he transfer of your mortgage loan does not affect any term or condition of your mortgage instrument, other than the terms directly related to the servicing of your loan."  *See* Declaration of Jay N. Gardner ("Gardner Declaration"), attached hereto as Exhibit 3, ¶ 3.

In October 2010, GMAC sold the servicing rights for the Loan to Aurora Loan Services LLC. *See* Gardner Declaration, Exhibit 3 ¶ 4.  This letter stated that the "assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan."  *Id*.

Then, effective July 21, 2011, servicing of the Loan was again transferred, this time from Aurora Loan Services LLC to Aurora Bank FSB.  *See* Gardner Declaration, Exhibit 3 ¶ 5.  This letter states that the "transfer does not affect the terms or conditions of your loan documents other than the terms directly related to the servicing of your loan."

On August 4, 2011, Aurora Bank wrote to the Gardners claiming they were in default, and giving them 30 days to pay all amounts due.  Aurora Bank threatened to accelerate the debt, and start "legal action to foreclose…."  *See* Gardner Declaration, Exhibit 3 ¶ 8.

---

[2] The Gardners dispute the Janati Affidavit which purports to provide evidence of authority of signers of the recorded documents.  At Nationstar's deposition, its Rule 30(b)(6) witness had no such knowledge, even as to purported Nationstar employees who signed documents.

On September 21, 2011, Aurora Bank reviewed its file and determined that in order to proceed with the foreclosure, it needed to *create* an assignment and thereby manufacture a chain of title.  "RRG" completed a Checklist, stating that an Assignment needed to be created.  *See* Richardson Depo., Exhibit 2 at 117-118, and Exhibit 33 thereto.

That *very same day*, "RRG" created the Corporate Assignment of Deed Trust (the "First Assignment"), in which Assignor MERS, "as nominee for GreenPoint," purported to assign and transfer to Assignee Aurora Bank FSB, "all its rights, title and interest in and to said Deed of Trust." The Note is not mentioned.

This First Assignment was signed on September 21, 2011, by Stacy Sandoz, claiming to be Vice-President of MERS.  She signed the First Assignment "as nominee for GreenPoint."  Under the law, this gives Aurora Bank FSB the status only of nominee.  Nationstar testified that it does not know whether Ms. Sandoz was actually a Vice President of MERS authorized to sign the First Assignment, other than by reference to the Corporate Resolution.  *See* Richardson Depo., Exhibit 2 at 119-121, and Exhibit 34 thereto.

Again on that *very same day*, September 21, 2011, MERS purportedly created a Corporate Resolution for Aurora Bank, FSB, appointing certain of its employees as MERS Signing Officers, including Stacy Sandoz.  The Corporate Resolution requires that Signing Officers abide by and follow the MERS System Rules, that only the actions specifically listed in the Resolution are authorized, and only then, if those actions are "taken in accordance with the requirements of applicable laws…." The Corporate Resolution authorizes the assigning of "the lien of any mortgage loan naming MERS as the mortgagee," but only if Aurora Bank FSB was also the "current promissory note-holder," or if the loan was registered on the MERS System to Aurora Bank, FSB. *See* Richardson Depo., Exhibit 2 at 122-124, and Exhibit 36 thereto.

At *no time* has the Gardner Loan been registered to Aurora Bank FSB, on the MERS System. *See* Richardson Depo., Exhibit 2 at 124-125, and Exhibits 37, 38 thereto; Doc. 147-1 at 311-312.

On October 25, 2011, Michele Rice, claiming to be Vice President of Aurora Bank FSB, with the legal status of nominee, now suddenly claims to be the "present Beneficiary under said Deed of Trust," and signs a Substitution of Trustee (the "First SOT") substituting Quality Loan Service

Corporation ("QLS") as trustee.  This First SOT was recorded on November 7, 2011.  *See* Richardson Depo., Exhibit 2 at 133-135, and Exhibit 45 thereto.  But Aurora Bank FSB could not be the Beneficiary, because the interest it received through the First Assignment, if any, was only as a nominee.  Further, Ms. Sandoz was not authorized to sign the First Assignment under MERS' own Corporate Resolution.  Therefore, Aurora Bank FSB had no authority to sign or record the First SOT.   Further, Nationstar testified to a complete lack of knowledge as to whether Ms. Rice had the authority to sign the First SOT.  *Id*. at 135.

The Gardners were sent a letter on November 9, 2011, by QLS notifying them that the debt represented by the Note and Deed of Trust, was "owed to:  Aurora Bank FSB."  Attached to the letter was a Statement of Breach or Non-Performance, which represented that the Beneficiary had elected to sell the Gardner home.  *See* Gardner Declaration, Exhibit 3 ¶ 9; Richardson Depo., Exhibit 2, at 35-36 and Exhibit 46 thereto.   Aurora Bank FSB is the one who told QLS to foreclose.  *See* Richardson Depo., Exhibit 2 at 134, and Exhibit 44 thereto.

On November 9, 2011, QLS signed and recorded a Notice of Trustee's Sale, claiming that the "Current Beneficiary" was Aurora Bank FSB.  *See* Richardson Depo., Exhibit 2 at 137, and Exhibit 47 thereto.   That Trustee's Sale was later canceled, on October 5, 2012, through a recorded Cancellation of Trustee's Sale on October 9, 2012, at Doc. No. 2012-0915878.

Effective July 1, 2012, the servicing of the Gardner Loan was transferred from Aurora Bank FSB to Nationstar Mortgage LLC.  The Gardners were told that the "assignment, sale or transfer of the servicing of the loan does not affect any terms or conditions of the loan instruments, other than terms directly related to the servicing of your loan."  *See* Gardner Declaration, Exhibit 3 ¶ 6; Richardson Depo., Exhibit 2 at 54, and Exhibit 8 thereto.

On June 28, 2012, Julie Erickson, claiming to be Vice-President of Aurora Bank FSB, signed a Corporate Assignment of Deed of Trust (the "Second Assignment"), purporting to assign and transfer to Nationstar Mortgage, LLC, "all its rights, title and interest in and to said deed of trust." The Note is not mentioned.  The Second Assignment was not recorded until August 31, 2012. *See* Richardson Depo., Exhibit 2 at 63-68, and Exhibit 10 thereto.

Nationstar testified that it did not know whether Julie Erickson was actually a Vice President of Aurora Bank when she signed the Second Assignment.   Mr. Richardson admitted that Nationstar did not purchase the Note.   Mr. Richardson testified that he believed Aurora Bank could assign the DOT to Nationstar, but only because of the existence of the First Assignment. Nationstar further testified that it is the present beneficiary under the DOT, but only based on the existence of the Second Assignment.   Nationstar testified it did not know whether the notary was a valid notary at the time the Second Assignment was signed.   *Id*.   Nationstar testified that it would have requested the Second Assignment be recorded.   *Id*. at 67-68.

Then, between the time the Second Assignment was signed and the time it was recorded, representing that Nationstar was now the Beneficiary under the DOT, Nationstar mailed the Gardners a July 15, 2012 letter, telling them that Nationstar is the servicer "on behalf of U.S. Bank, Trustee, LXS Series 2007-15N."   The letter represented to the Gardners that the "debt is owed to U.S. Bank, Trustee, LXS Series 2007-15N, but is being serviced by Nationstar."   *See* Gardner Declaration, Exhibit 3 ¶ 10; Richardson Depo., Exhibit 2 at 140-142, Exhibit 49 thereto.

Therefore, the Second Assignment did not gave Nationstar "all rights granted to the beneficiary under the DOT," as Defendants claim.   *See* Doc. 147 at 6:8-9.   At best, the Second Assignment transferred nominee status to Nationstar.   Nationstar itself admitted that the debt is not owed to Nationstar. Under A.R.S. § 33-801(1), Nationstar cannot possibly be the Beneficiary.

On March 4, 2013, Nationstar wrote to the Gardners, telling them that Nationstar is the servicer of their loan, "on behalf of 'U.S. Bank National Association as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N,' the Creditor to whom the debt is owed…."   The letter goes on to declare the Gardners in default, stating that Nationstar "intends to enforce the provisions of the Note and Security Instrument."   Nationstar threatens that if the default is not cured, it will accelerate the debt and foreclose on the property.   *See* Gardner Declaration, Exhibit 3 ¶ 11; Richardson Depo., Exhibit 2 at 68-71, and Exhibit 11 thereto.

Nationstar began the foreclosure process against the Gardners' home by instructing a San Diego law firm, Pite Duncan, LLP, to foreclose in the name of Nationstar.   Pite Duncan then told TD to initiate a Trustee's Sale.   U.S. Bank as Trustee did not instruct TD to foreclose, nor did

any Certificateholder/Owner in the Trust.  *See* Affidavit of T.D. Service Company of Arizona ("TD Affidavit"), attached hereto as Exhibit 4, ¶¶ 7, 16; Richardson Depo., Exhibit 2 at 71-74; 78-79, and Exhibit 12, 14 thereto.  TD knew or should have known that the Gardner Loan had purportedly been placed into the Trust; TD produced a screen print related to the Loan showing the "Client Investor Name" as "LXS 2007-15N (GMAC)."  Nevertheless, TD closed its eyes to this reality and proceeded in the name of Nationstar, upon the orders of a California law firm. *See* Richardson Depo., Exhibit 2 at 74-77 and Exhibit 13 thereto (bates TD_000185); TD Affidavit, Exhibit 4 ¶¶ 8, 11-13.

On April 19, 2013, Albert Nguende, claiming to be an Assistant Secretary of Nationstar, signed a Substitution of Trustee (the "Second SOT") appointing TD Service Company as trustee under the deed of trust.  The Second SOT was recorded on April 30, 2013, and represents that the Beneficiary under the DOT is Nationstar, while at the same time acknowledging that the original Beneficiary was MERS, "solely as nominee for GreenPoint…." *See* Richardson Depo., Exhibit 2 at 82-83, and Exhibit 17 thereto.   Although Mr. Nguende claimed to be a Nationstar employee, Nationstar could not affirm that Mr. Nguende was an Assistant Secretary for Nationstar, or testify whether the notary had authority.  Nationstar testified that it did not know whether Mr. Nguende had actual authority to sign the Second SOT.  *Id*.  TD also did not know whether the SOT was authorized or valid.  *See* TD Affidavit Exh. 4 ¶ 14.

On April 29, 2013, pursuant to the Second SOT, and based on instructions from Pite Duncan, TD signed a Notice of Trustee's Sale (the "Second NTS") listing Nationstar as the Beneficiary. This Second NTS was recorded on April 30, 2013.  TD never received a writing from U.S. Bank as Trustee, or the Certificateholders/Owners of the Trust, or from Depository Trust Company, telling TD to foreclose.  *See* TD Affidavit Exh. 4 ¶¶ 15, 16; Richardson Depo., Exh. 2 at 84-85, and Exh. 18 thereto.  Nationstar testified that it does not know whether the signer of the Second NTS was actually an Assistant Secretary of TD, or whether she was authorized to sign the Second NTS.  Nationstar did request that the Second NTS be recorded.  *Id*.

On May 2, 2013, TD wrote to the Gardners telling them that the current beneficiary "has demanded" that TD initiate foreclosure.  A Debt Validation Notice told the Gardners that

Nationstar is owed the debt, and is their creditor.  *See* Gardner Declaration, Exhibit 3 ¶ 12; TD Affidavit, Exh. 4 ¶ 19; Richardson Depo., Exh. 2 at 85-88, and Exh. 19, 20 thereto.

On May 23, 2013, TD sent the Gardners another set of documents, stating that the beneficiary had demanded that TD foreclose, and enclosing copies of the Statement of Breach or Non-Performance, a Substitution of Trustee and the Notice of Trustee's Sale.  All represented that Nationstar was the beneficiary.  *See* Gardner Declaration, Exh. 3 ¶ 13; TD Affidavit, Exh. 4 ¶ 20.

Then on July 20, 2013, Defendants reversed direction after recording documents stating that Nationstar was the beneficiary.  Nationstar wrote to the Gardners telling them that U.S. Bank as Trustee for LLXS Series 2007-15N "is the current owner of the Note."  Nationstar stated it was simply the servicer.  *See* Gardner Declaration, Exhibit 3 ¶ 14.

Because of the confusing and mixed messages from the servicer and trustee, unable to determine the identity of their Lender, the Gardners e-mailed Bruce Knutson at U.S. Bank on September 17, 2013, to try to find out.  They received a response, telling them that as "Trustee, we do not own your loan- but rather have specific responsibilities to the Trust.  Nationstar serves as the Servicer for this Trust…."  U.S. Bank told the Gardners that Nationstar does not own the Loan, either.  *See* Gardner Declaration, Exhibit 3 ¶ 15.

The irreconcilable information on the Gardner Loan is summarized by the Gardners' expert. *See* Affidavit of Marie McDonnell ("McDonnell Affidavit"), attached hereto as Exh. 5 ¶ 104.

On April 30, 2014, Nationstar signed a Limited Power of Attorney ("LPOA"), appointing "AMSL Legal Group" as its attorney-in-fact for certain purposes, including the execution of substitutions of trustee.  *See* Doc. 147-1 at 302-304.  But the LPOA failed to name a legal entity as attorney-in-fact.  That is, AMSL Legal Group LLP was at that time a valid and existing legal entity.  But "AMSL Legal Group" was not.[3]

Two Substitutions of Trustee were thereafter signed by Heidi Mucha, purporting to be Operations Manager for AMSL Legal Group, LLC "as attorney in fact for Nationstar Mortgage LLP."  *See* Doc. 147-1 at 306-309.  The supposed authority for signing, was a Limited Power of

---

[3] The Court is aware of these facts, because of past briefing.  *See, e.g.*, Doc. 94.

Attorney which granted AMSL Legal Group (***minus*** any entity designation such as LLC or LLP) attorney in fact status.  *See* Doc. 147-1 at 302-304.  But there is no such entity as AMSL Legal Group, LLC.  *See* State Bar of California Certification re no record of AMSL Legal Group LLC, attached hereto as Exhibit 6.

And lastly, on April 19, 2016, a Fifth Substitution of Trustee was signed, this time supposedly by Rebecca C. Wallace, assistant secretary of Nationstar, representing that Nationstar is the present beneficiary, and substituting Carson Emmons as trustee under the DOT.  This Fifth SOT was recorded on April 27, 2016.  See Richardson Depo., Exhibit 2 at 113-114, and Exhibit 31 thereto.  Nationstar testified that it does not know if Ms. Wallace is an assistant secretary for Nationstar, and did not know why AMSL Legal Group did not sign the Fifth SOT.  *Id*. at 114.  Mr. Richardson acknowledged that Nationstar requested that the Fifth SOT be recorded.  *Id*.

Even if the Gardners are in default, *which is not in evidence before this Court*, the Lender/Beneficiary has not experienced any default.  Advances of principal and interest are being made on the Gardner Loan, and as of October 1, 2016, such advances totaled $151,615.60.  *See* McDonnell Affidavit, Exh. 5 ¶¶ 105-110, 115.  The Nationstar deponent testified he had no knowledge on this subject, in spite of the fact that the Rule 30(b)(6) deposition notice listed servicer advances as an area of inquiry.  *See* Richardson Depo., Exh. 2 at 149-152; 179-180.  On June 28, 2012, related to the acquisition of mortgage servicing rights from Aurora Bank FSB, Nationstar entered into three (3) ***non-recourse*** revolving advance financing facilities with Wells Fargo Bank, Credit Suisse AG and The Royal Bank of Scotland plc totaling $1,300,000,000.00 for advances made of delinquent principal and interest where the borrower is in default.  *See* certified 8-K dated June 28, 2012, attached as Exhibit 7; Richardson Depo., Exh. 2, at 174-175.

The purported transfer of the Gardner Loan into the Trust may not have been a "true sale."  Rather, it was a "disguised loan."  *See* McDonnell Affidavit, Exh. 5 ¶¶ 45-66, 72-80, 115.  And an enforceable interest in that "disguised loan" may never have been perfected, particularly given the separation of the Note from the DOT and the groundless assignments of the DOT, described above.  *Id*. at ¶¶ 79-80.  Questions of material fact exist with respect to whether the Gardner Loan ever made it into the Trust to begin with.  *Id*. at ¶¶ 83-91, 97, 115.

The acquisition of the Gardner Loan was actually funded by Lehman Brothers, Inc.   The Certificateholders/Owners are the ones who own the Trust Fund, which consists of the Mortgage Loans.   Certificates in the Trust as listed on the Terms Agreement contained a total price of $14,288,867,000.   But the Mortgage Loans that collateralize the Trust had a total principal balance of only $2,828,002,465; a staggering difference of $11,460,864,535.   *Id.* at ¶¶ 66, 68-71, 112-114.

### III.      LEGAL ANALYSIS.

**A.      The Summary Judgment Standard**.

Summary judgment is warranted when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).   "Material facts are those which may affect the outcome of the case." *Nationstar Mortgage LLC v. D'Andrea Comm. Ass'n*, 2017 WL 58582 at *2 (D.Nev. Jan. 4, 2017)(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).   A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* (citing *Anderson*).

To establish a factual dispute, the opposing party need not demonstrate a material issue of fact conclusively in its favor.   It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Circ. 1987).   "Moreover, at the summary judgment stage, the evidence of the non-movant is 'to be believed, and all justifiable inferences are to be drawn in his favor.'" *Anderson*, 477 U.S. at 255.

**B.      Nothing Can Be Decided in this Lawsuit Without First Identifying the Lender/Note Holder/Beneficiary, and that is not Nationstar.**

The Defendants claim that the identity of the Lender and Note Holder is "irrelevant."   *See* Doc. 147 at 12:1-2.[4]   But the identity of the Lender/Note Holder/Beneficiary must be known to

---

[4] Plaintiffs' references to page numbers in the Motion will be those placed on the page by the ECF system, not the page numbers Defendants put on their pages.

enforce those contracts.  The facts mandate the conclusion that Nationstar, U.S. Bank as Trustee, and TD, cannot foreclose.

Without the Note and DOT, there would be no Loan and no controversy.  Those two contracts must be enforced as written.  "A valid contract must be given full force and effect even if its enforcement is harsh." *Isaak v. Massachusetts Indem. Life Ins. Co.* 127 Ariz. 581, 584, 623 P.2d 11, 14 (*In Banc* 1981).  A court may not "revise, modify, alter, extend, or remake" a contract.  *Id.* A later interloper such as Nationstar, cannot override or alter the terms of the Note and Deed of Trust between the Gardners and the purported Lender, GreenPoint; nor can the Court:

> Where parties bind themselves by a lawful contract, in the absence of fraud a court must give effect to the contract as it is written, and the terms … are conclusive.  … It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement.

*Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 588 (*In Banc* 1977)(citation omitted).  Indeed, even if Nationstar were GreenPoint's successor, Nationstar still could not alter the contract terms without the Gardners' agreement.

In spite of these basic first-year-of-law-school hornbook principles, Defendants claim that the Gardners' definition of "Note Holder," copied directly from the Note itself, is a "tortured construction" of the term.  Doc. 147 at 12:26-27.  These adhesion contracts were presented to the Gardners for signature; the Defendants must live or in this case, die by them.

It is truly astounding that the Defendants are still chanting "show-me-the-note," in the face of *Steinberger*, and in the face of this Court's ruling against Defendants on this very argument in their Motion to Dismiss ("MTD").  *See* Motion at 12:6-16; Doc. 89 at 8:23 to 9:26 (making exactly the same argument and citing the same case law); Doc. 114 (denying the MTD).  Plaintiffs already addressed the legal arguments at p. 12 of the Motion, in Plaintiffs' Response to the Motion to Dismiss; Plaintiffs incorporate those arguments here.  *See* Doc. 93 at 3:4 to 7:12.

Without any citation to authority or the contracts, Defendants next pronounce that because it collects payments from borrowers, the servicer "may be a Note Holder."  *See* Motion at 12:27 to 13:1.  Not so.  First, when the DOT discusses the servicer role, it uses entirely different terminology, stating that the servicer "collects" payments.  But when defining Note Holder and

describing the Lender's interest in payments, the DOT uses the words, "entitled to payment." Further, each servicing transfer letter to the Gardners represented that a change of servicer had **no effect** on the terms and conditions of the loan documents. *See* Gardner Declaration, Exh. 3, ¶¶ 3-6.   The California Supreme Court recently met the "entitled to payment" issue head-on, and drove home the same point the Gardners make here:

> The borrower owes money not to the world at large but to a particular person or institution, and **only the person or institution entitled to payment may enforce the debt by foreclosing on the security.**
>
> It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so.  (Levitin, *The Paper Chase:  Securitization, Foreclosure, and the Uncertainty of Mortgage Title,* 63 Duke L.J. at p. 650.)   "Such a view fundamentally misunderstands the mortgage contract.  The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan.  Instead, it is an agreement that if the homeowner defaults on the loan, *the mortgagee* may sell the property pursuant to the requisite legal procedure."
>
> The logic of defendant's no-prejudice argument implies that *anyone*, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to *someone*, though not to the foreclosing entity.  This would be an "odd result" indeed.  As a district court observed in rejecting the no-prejudice argument, "[b]anks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust." (*Miller v. Homecomings Financial, LLC* (SD. Texas 2012) 881 F.Supp.2d 825, 832.)

*Yvanova v. New Century Mortg. Corp.*, 365 P.3d 845, 857-58 (Cal. 2016)(bold face added, italics in original).

The plain terms of the Note and DOT require that the entity which seeks to enforce the Note and foreclose on the security (once the conditions precedent are satisfied), must not only possess the Note, but also be "entitled to payment."  This is the only entity secured by the DOT. This is simply a "straightforward application [] of well-established commercial and real-property law…" Levitin, *The Paper Chase:  Securitization, Foreclosure, and the Uncertainty of Mortgage Title* (2013) 63 Duke L.J. 637, 640.

Arizona, of course, applies these same sound legal principles:

> [A] deed of trust, like a mortgage, "may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures."

*Hogan* 238 Ariz. 584, 586 ¶ 6 (*En Banc* 2012*)*(quoting Restatement 3d of Prop: Mortgages § 5.4(c)(1997); citing *Hill v. Favour*, 52 Ariz. 561, 568-69 (1938)).  *See also Steinberger v. McVey ex rel. County of Maricopa,* 234 Ariz. 125, 141 ¶¶ 69-70, 318 P.3d 419, 435 (Ct. App. 2014)(finding that allegations that the Defendants were not the Note Holder or Lender, stated claims against the Defendants seeking to enforce the contracts).

Nationstar has admitted that Nationstar and U.S. Bank as Trustee are *not* the ones who keep the principal and interest payments.  Whether the Gardner Loan was sold into the Trust, or whether the transfer of the Loan was not a "true sale" as opined by Expert McDonnell, the conclusion is the same.  No Defendant is the Lender/Note Holder/Beneficiary, and no Defendant may declare a default, accelerate the debt, and elect to foreclose.[5]

Another condition precedent to foreclosure, is a default by the Borrower.   Even Defendants admit this.  *See* Motion at 12:16-18; A.R.S. § 33-807(A); *In re Kekauoha-Alisa*, 674 F.3d 1082, 1093 (9th Cir. 2012)(failure to strictly follow all conditions precedent to foreclosure caused Ninth Circuit to ***void*** the trustee's sale).  Conspicuously absent from the Motion, is any evidence of a default by the Gardners.  On this basis alone, the Motion must fail.  And because only the Lender can declare that default, Defendants cannot pursue foreclosure even if one of them purported to put on evidence of default.  Nationstar admits that it did not purchase the Note, and does not keep the principal and interest payments.  Nationstar also admits that U.S. Bank as Trustee does not keep the principal and interest payments.

All this evidence proves that no Defendant is the Lender/Note Holder/Beneficiary.   The Ninth Circuit defines "Lender" as "one who puts money at risk," and whose "own money [is] at risk of Borrowers' default."  *Easter v. American West Financial,* 381 F.3d 948, 957 (9th Cir. 2004).   In the context of foreclosure, the California District Court recently confronted the issue

---

[5] Defendants proclaim without any support that an "agent" can do these things. *See* Motion at 15 n.4. Untrue.  The DOT allows an agent to act for the Lender in only one place in the document.   See DOT ¶ 7.   In every other place, the "or its agent" phrase is absent, demonstrating the intent that the Lender itself must declare default, accelerate and elect to sell.

of who is "the true or de facto lender" in a transaction, and defined "lender" as the one with a "predominant economic interest" in the loan.   *Consumer Financial Protection Bureau v. CashCall, Inc.,* 2016 WL 4820635 at *6 (C.D.Ca. Aug. 31, 2016).   According to the court, "[t]he key and most determinative factor is whether [the one claiming to be the lender] placed its own money at risk … or whether the entire monetary burden and risk of the loan [] was borne by [another]."  *Id.*  "Indeed, as the Ninth Circuit stated in *Easter*, 'a lender is one who puts money at risk.'"  *Id*. (citing *Easter,* 381 F.3d at 957).

Certainly, no Defendant is the Lender, whose money is at risk.  Nor has the Trust or the Certificateholders/Owners of the Trust, suffered a loss as a result of any default by the Gardners. Plaintiffs' expert, Marie McDonnell, testifies in her Affidavit that Advances are being made against the Gardner Loan, making the Lender whole.   Nationstar testified that no Certificateholder/Owner has contacted Nationstar regarding the Gardner Loan.   Expert McDonnell's uncovering of an $11 billion excess in the sale of Certificates for this Trust, may very well explain the origin of those Advances.   Regardless, no one but Nationstar is complaining, and Nationstar has itself suffered no loss.   To the extent it made Advances, Nationstar was paid by non-recourse revolving advance financing facilities.

The Defendants cannot enforce the Gardner Loan.   The Motion should be denied.

## C.      No Evidence Proves the Recorded Documents Were Authorized or Valid.

Defendants are wrong to claim that all of the Gardners' claims rely on the groundless nature of the MERS Assignment.  See Doc. 147 at 8:2-4.  Even if all the recorded instruments were valid (which they are not), the Defendants still cannot foreclose.  Because none of the Defendants is entitled to payment, no Defendant can legally be the Beneficiary under Arizona law.  A genuine fact issue is yet to be resolved, as to whether the Loan was sold into the Trust. The Gardners have already laid out that evidence in Section II, above.  The statutory definition of "beneficiary" must be strictly enforced.  "The Deed of Trust statutes [ ] strip borrowers of many of the protections available under a mortgage.  Therefore, lenders must strictly comply with the

Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower." *Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 477 (*In Banc* 1978).

The Defendants' attempt to save MERS' designation as "beneficiary" in the Deed of Trust by saying the parties agreed to it,[6] or "designated" MERS as beneficiary, does not save them.  If a contract term violates statute, that term is illegal, and cannot be enforced.  *Yank v. Yuhrend,* 151 Ariz. 587, 590, 729 P.2d 941, 944 (Ct. App. 1986).  "Arizona law is well-settled that the defense of estoppel cannot be invoked against an agreement which is void as against public policy." *Peterson v. Anderson,* 155 Ariz. 108, 113 (Ct. App. 1987).  Illegal contracts/documents are void ab initio; "wherever the contamination [of the illegality] reaches, it destroys." *National Union Indemnity Co. v. Bruce Bros.,* 44 Ariz. 454, 466, 38 P.2d 648, 653 (1934).

Arizona litigants made precisely the same argument, which was soundly rejected:

> [T]he Arizona Deed of Trust statutes define "beneficiary" as "the person for whose benefit a trust deed is given."  It is undisputed that MERS never was "the person for whose benefit a trust deed is given."  Because non-judicial foreclosure is permitted only in strict compliance with the statutes, it is unlikely that the parties' agreement may override the statutory definition of "beneficiary."  If MERS was not the beneficiary, it could not assign beneficial interest to [the servicer].  Therefore, [the servicer] likely did not receive authority from MERS to issue notice of default to Plaintiff and to appoint [a] successor trustee under the Deed of Trust to commence non-judicial foreclosure proceedings under the Arizona Deed of Trust statutes.

*Erickson v. Green Tree Servicing, LLC,* 2015 WL 3507350 at *7 (D.Ariz. June 4, 2015).  *See also, Brandrup v. ReconTrust Co., N.A.,* 353 Or. 668, 674, 303 P.3d 301, 304 (*En Banc* 2013)(interpreting similar definition of beneficiary in ORS 86.713(1)(b)(D), holding that the designation of beneficiary in the DOT is clear in its statement that it "secures to Lender" repayment of the Note).  As nominee, MERS cannot legally assign a beneficial interest:

> [T]he trustee under a deed of trust holds legal title to the lien, and the beneficiary holds equitable title to that lien.  It follows that, because MERS is neither the trustee nor the beneficiary, it holds no interest at all in the lien conveyed by the trust deed.

---

[6] *See* Doc 147 at 8:8-9; 9 n.1.

*Brandrup,* 303 P.3d at 320.   And for the same reason that MERS cannot be the Beneficiary, Aurora Bank FSB and Nationstar cannot be the Beneficiary.   Each was/is simply the loan servicer, not "the person for whose benefit [the] trust deed is given,"[7] and could only get the interest which MERS had to convey.

Arguing that MERS can be a beneficiary, Defendants string cite nine (9) antiquated, obsolete, and inapplicable decisions arising out of the initial onslaught of foreclosure litigation, written by federal judges without any guidance from state courts.   *See* Motion at 8:14 to 9:3.[8]   These decisions cannot now be considered, on the issue of whether MERS can be a beneficiary under Arizona law.[9] First, in *none* of the cited cases, did the plaintiff argue that the definition of "beneficiary" in Arizona statute prevents MERS from legally being a beneficiary, as the Gardners do here.     Second, subsequent law from state court and the federal bench, has overridden those decisions.   *See, e.g., Erickson.*   And *Cervantes* only **helps** the Gardners, stating, "the legality of MERS's role as a beneficiary may be at issue where … plaintiffs allege a violation of state recording and foreclosure statutes based on the designation."   *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1044 (9th Cir. 2011).   Of course that is exactly what the Gardners argue.   *Zadrozny* cites to that same *Cervantes* language and therefore supports the Gardners.   *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1169 (9th Cir. 2013).

Defendants then make the same word-for-word argument regarding the ability to sell the note and appoint a successor trustee, which they made in their MTD.   *Compare* Doc. 147 at 9:4 to 10:1, with Doc. 89 at 11:10 to 12:3.   Those DOT terms are not disputed, but they have absolutely

---

[7] Defendants toss multiple bases for beneficiary status of MERS into one sentence in a footnote. *See* Motion at 9 n.1.   Space limitations prevent full analysis; all these arguments were made and rejected in *Erickson*, after the court requested an additional 17 pages of briefing from each side on the validity of MERS as a beneficiary in Arizona.   *See Erickson,* 3:14-cv-08090-NVW, Doc. Nos. 81, 86, 87.   *See generally, Erickson*, 2015 WL 3507350, and re "agent" at *7.   As for the "context otherwise requires" language, it does not mean "that the *parties* can alter statutory provisions by contract."   *Bain v. Metropolitan Mortg. Group, Inc.,* 175 Wash.2d 83, 100, 285 P.3d 34, 42 ¶ 21 (*En Banc* 2012).   The argument of "practical flexibility" flies in the face of Arizona's canons of statutory construction, which must be strictly construed in favor of the borrower.   *Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 477 (*In Banc* 1978).

[8] Even the published Arizona state court decisions are of no moment; the plaintiffs in those cases did not argue that A.R.S. § 33-801(1) bars MERS from being a beneficiary, either.

[9] Defendants repeatedly use the phrase "as beneficiary as nominee" in discussing MERS.   *See* Motion at 8:8-9, 19.   The phrase is never used in the DOT and makes no sense.   Plaintiffs reject the contention that MERS can accurately be described in that manner.

no application to this controversy.  Rather than consume space rehashing this irrelevant

argument, the Gardners incorporate their prior Response here.  *See* Doc. 93 at 12:22 to 13:6.

Federal law is clear, that a nominee has a limited status with respect to any contract:

> The word "nominee" … connotes … a representative or nominal capacity only, and
> does not connote the transfer or assignment to the nominee of any property in or
> ownership of the rights of the person nominating him.

*Ott v. Home Savings & Loan Ass'n*, 265 F.2d 643, 647 (9th Cir. 1958)(citation omitted).

Accordingly, as nominee, MERS cannot transfer or assign any interest, because as a nominee of

GreenPoint, MERS holds no interest of GreenPoint.  And as has already been established above,

MERS cannot legally be the Beneficiary.  MERS may only assign the interest it held; not more,

not less.  "An assignee steps into the shoes of her assignor.  She 'can stand in no better position

than the assignor' and '[a]n assignment cannot alter the defenses or equities of the third party.'"

*Vig v. Nix Project II Partnership*, 221 Ariz. 393, 399 (Ct. App. 2009)(citations omitted).  MERS

itself realized it had no legal interest as "Beneficiary," because the First Assignment was signed

"*as nominee*," **not** *as "beneficiary."*

Therefore, the documents recorded against Gardners' title, which declare to the world that a

loan servicer is the Beneficiary, contain false and groundless information.  "[S]igners of

documents should be held responsible for the statements in the document."  *U.S. Securities and

Exchange Comm'n v. Jensen*, 835 F.3d 1100, 1112 (9th Cir. 2016)(citation omitted).  A signer

attests to the document's accuracy.  *Id*.

And finally, Defendants have provided this Court with *no admissible evidence* proving that

the signers of the documents at issue, were authorized.[10]  Rather, the only evidence proves that

the signers *did not* have authority.  As to the First Assignment, the Loan was never registered on

MERS to Aurora Bank FSB[11] so the Corporate Resolution did not give Stacy Sandoz authority,

---

[10] Defendants' references to the Trust Agreement/Servicing Agreement are irrelevant; U.S.
Bank as Trustee cannot authorize a servicer to do that which the Note and DOT require the
Lender to do; further, no power of attorney has ever been produced showing the delegation of
that power, which is required under the Trust Agreement.  *See* Doc. 147-1 at 44.
[11] Defendants show a lack of candor in representing that the Loan was registered on the MERS
system with "Aurora."  *See* Motion at 11:6-8.  What they fail to mention is the Loan was
registered to Aurora Commercial Corp. and/or Aurora Loan Services LLC at that time, but

and acts pursuant to the Corporate Resolution had to be in compliance with the law, which they were not, since MERS cannot be a beneficiary in Arizona and as a nominee it cannot assign beneficial interest.   Further, the record is clear that on September 21, 2011, Aurora Bank concocted not only the First Assignment, but also (perhaps in concert with MERS), the MERS Corporate Resolution, in order to provide the appearance of compliance with the law.   And of course, the First Assignment fails to transfer any beneficiary interest because MERS held none. Nationstar testified to no actual knowledge as to the validity of the document.   At the very least, a genuine issue of fact exists, as to whether Ms. Sandoz had authority or not.[12]

The other recorded instruments fare no better under scrutiny.   Defendants only refer to the Trust Agreement excerpts in claiming that all subsequent signers had authority.   But the Trust Agreement, even if admissible, fails to prove any such thing.   The Gardners are not a party to the Trust Agreement, nor is their Lender.   Thus, that Agreement cannot conceivably alter the Note and DOT terms which contain conditions precedent to foreclosure never satisfied here.   And again, no power of attorney has been produced empowering the servicer to foreclose upon "Mortgaged Property."   See Doc. 147-1 at 44.

Defendants present no evidence that Ms. Rice of Aurora Bank had authority to sign the First SOT, also void for being dependent on the First Assignment.   Similarly, Defendants have no evidence that Ms. Erickson of Aurora Bank was authorized to sign the Second Assignment, or whether its notarization is valid.   And of course it is void because of the void First Assignment.

Nationstar testified that the _**only basis**_ upon which it claims to be the Beneficiary under the DOT, is the Second Assignment.   And the evidence is scattered like birdshot, on the issue of who is the creditor, or the one to whom the debt is owed, or the Lender, or Note Holder.   Defendants claim the Loan was sold into the Trust back in 2007.   But in August of 2011, Aurora Bank

---

_**never**_, as Nationstar admitted at deposition, to Aurora Bank FSB.  *See* Doc. 147-1 at 312.

[12] Defendants claim that the First Assignment is voidable, not void, even if Ms. Sandoz had no authority.   No so.   A contract which cannot be performed without violating applicable law (here, A.R.S. § 33-801(1)), is void.  *E&S Insulation Co. v. E.L. Jones Const. Co.*, 121 Ariz. 468, 470 (Ct. App. 1979).   A void contract cannot be ratified.  *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 552 (*In Banc* 1971); Restatement (Third) of Agency § 4.02; *Yvonova*, 365 P.3d at 855-856.

claimed authority to accelerate the debt and initiate foreclosure, and in fact the next month concocted documents which it recorded, purporting to do just that, including making itself the Beneficiary even though the Loan was supposedly in the Trust.  In October of 2011, the Gardners are again told that Aurora Bank is the Beneficiary, through the First SOT.   And QLS continues this charade by writing to the Gardners telling them that their debt is owed to Aurora Bank, and recording the First NTS listing Aurora Bank as the Beneficiary.

But when servicing rights are sold (and the Gardners are told that no loan document terms were changing except the *servicer's* identity), Aurora Bank assigns the DOT to Nationstar, which then causes Nationstar to take up the pretense of being the Beneficiary.  Nationstar has admitted that it did not purchase the Loan, but that does not stop it from representing that it did, through the Second Assignment.   In July of 2012, Nationstar writes to the Gardners after the Second Assignment is signed, however, and tells them that Nationstar is just the servicer, while the debt is owed "U.S. Bank, Trustee, LSX Series 2007-15N."   Then in March of 2013, Nationstar identifies the creditor as "U.S. Bank National Association as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N."  Yet Nationstar declares the Gardners in default and threatens to enforce the Note and DOT, accelerate the debt and take their home.

Then, a San Diego law firm, Pite Duncan, orders TD to initiate foreclosure based on instruction from Nationstar.  In its correspondence to Pite Duncan, Nationstar fails to mention U.S. Bank as Trustee at all, and in fact tells Pite Duncan to foreclose in Nationstar's name.

None of the recorded documents are valid; they cannot be enforced.

**D.**      **Defendants' Reprise of Arguments re Securitization and Note and DOT Splitting.**

The Motion at 13:4-27 is nearly identical to Defendants' MTD, at Doc. 89 14:13 to 15:17. Therefore the Gardners incorporate their Response to the MTD at Doc. 93 at 16:17 to 17:22, here.  Beneficiary status cannot be held and transferred independently from the Note.  If it is, then the Deed of Trust is separated from the Note, making the Deed of Trust null and void. A Deed of Trust without a debt, secures nothing; once separated from the Note, it ceases to exist as an enforceable contract.   A mortgage is a mere incident of the debt, cannot be assigned

separately, and distinct from the debt it secures, is not a thing of value; it is nugatory.   *Hill v. Favour,* 52 Ariz. 562, 568 (1938).   The Defendants, by purportedly transferring the Note to the Trust while leaving the DOT with GreenPoint, then assigning it to Aurora Bank in 2011 and then Nationstar in June of 2012, clearly intended that the DOT *not follow* the Note. This affirmative choice to separate the two, renders the DOT a nullity.

The Ninth Circuit is in accord.   "[T]he holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment."   *Cervantes,* 656 F.3d at 1039.   A split in the note and deed of trust renders the mortgage unenforceable if MERS as nominal holder of the deed, is not agent of the Lender, or if the plaintiff alleges a violation of recording or foreclosure statutes based on that designation. *Id.* at 1044.   The Defendants admit this purposeful splitting.   Summary judgment should be denied.

Defendants' reference to §§ 9.04 and 9.20(a) of the Trust Agreement at 14:1 to 15:14 also parrots their MTD (Doc. 89) at 16:15 to 18:11.   The Gardners incorporate their Response to the MTD (Doc. 93) at 17:23 to 18:5; 18:21 to 19:14 here.

The Defendants' Trust Agreement arguments are invalid for a series of additional reasons. First, no evidence exists, that the Trust Agreement was ever signed by the parties thereto, so it is not enforceable.   Second, Ms. McDonnell's expert opinion raises a material factual issue regarding whether the Loan was ever placed in the Trust.   Third, the power of attorney needed from U.S. Bank as Trustee to the servicer, has never been provided.   *See* Doc. 147-1 at 44. Fourth, the quoted provisions state that any assignment be "in the name of MERS, solely as nominee for the Trustee…." *See* Doc. 147 at 14:17-18.   And as nominee, no beneficial interest can be transferred.   Fifth, even if an agent of the Beneficiary can appoint a successor trustee, the Beneficiary choosing that agent must ***still*** be the one secured by the DOT, that is, the Lender. Those conditions precedent to foreclosure were not satisfied.   The DOT has never been assigned to U.S. Bank as Trustee.   No evidence is provided whether the Note was ever tendered to U.S. Bank as Trustee or its custodian.   And critically, the Note which Nationstar swears is the "true and correct" copy is ***unendorsed***.   See Doc. 147-1 at 3-7.   Therefore, only GreenPoint can enforce it.

**E.      Summary Judgment on Declaratory Relief Should be Denied**.

Defendants copied their Declaratory Judgment argument, which the Court already rejected, from their MTD.  See Doc. 89 at 29:8-21.  Defendants provide no admissible facts which change the outcome.  The Gardners incorporate their Response to MTD, Doc. 93 at 29:14-21.  Federal law allows for such a claim even in the absence of other underlying causes of action.  *Id*.  And now the Gardners have evidence to support the elements they have asked the Court to declare. *See* Section II.  The Motion regarding Count 1 should be denied.

**F.      Genuine Fact Issues Exist Regarding Breach of Contract.**

Other than its concluding sentence, Defendants also copied their breach of contract argument from their MTD.  See Doc. 89 at 22:26 to 23:18.  The Gardners incorporate here, their Response (Doc. 93) at 22:15 to 23:23.  Arizona law very clearly supports such a claim, and the Gardners now have proof of breaches of the DOT in that the Gardners were never written to by their Lender telling them they were in default.  TD has also now sworn that it initiated foreclosure because a California law firm told it to.  Yet the DOT requires that the trustee receive a writing from the Lender declaring a default and electing to foreclose, before a sale is initiated.  No such writing was ever received.

The Note clearly states that only the one which both possesses the Note and is entitled to payment, is secured by the DOT.  The Note contains a duty to pay the Lender entitled to payment, no one else.  In declaring the Note in default and electing to foreclose, Aurora Bank, then Nationstar and Pite Duncan, usurped the Lender's role without authority.

A genuine issue of material fact has been proven, related to the identity of the Lender who keeps the money and is secured by the DOT.  Plaintiffs' evidence shows that the Lender is not Nationstar, or U.S. Bank as Trustee; Nationstar admits neither one keeps the payments.  The Motion regarding Count 2 should be denied.

**G.      Breach of Duty of Good Faith and Fair Dealing Should Survive the Motion.**

The Motion on Count 3 is also a regurgitation of losing arguments from the MTD.  *See* Doc. 89 at 24:6 to 25:5.  The Gardners incorporate their Response here.  *See* Doc. 93 at 24:10 to 25:5. Defendants fail to analyze any facts, believing they will get judgment by simply stating,

"Gardners have presented no evidence of a bad faith claim." *See* Motion at 17:9-10.  In fact, the Gardners now have admissions from Nationstar that it is merely a servicer, is not the one who keeps the payments (and therefore not the true, legal Beneficiary), but nevertheless declared default, purported to accelerate the debt and initiated foreclosure, told the Gardners that Nationstar is the beneficiary, then switched directions and said U.S. Bank as Trustee is the creditor and one to whom the debt is owed.  Meanwhile U.S. Bank as Trustee tells the Gardners that it does not own their Loan.  And still, Defendants pursue foreclosure without authority from the Lender, pursuant to documents which they have no reason to believe were signed by people with authority.  TD, Nationstar and U.S. Bank as Trustee are all acting in bad faith seeking a foreclosure pretending to have authority, without the conditions precedent in the Note and DOT being satisfied, and without confirming a default with the Lender.  The Motion should be denied.

## H.  The A.R.S. § 33-420 Claim/Slander of Title Claim is Supported by Evidence.

Here, too, Defendants make some of the same arguments and present no facts in their Motion, regarding quiet title/slander of title, as in their MTD.  *See* Doc. 89 at 18:16-18; 20:3-10. Defendants rely on *Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. 215, 222 ¶ 33 (Ct. App. 2013).  But as this Court realized on the MTD, *Sitton* supports the Gardners.  *Sitton* ruled that when a borrower alleges that "the putative beneficiary was not the correct party, the trustor should be entitled to discovery." *Id*. at n.6.  *See also, Steinberger*, 234 Ariz. at 139 n.17 (in A.R.S. § 33-420, "a misrepresentation in a recorded instrument may be material where the borrower/trustor alleges the putative beneficiary is not in fact, the true beneficiary.").[13]

The Gardners now have evidence that Nationstar, the putative beneficiary, is not the true beneficiary.  Nationstar itself admits it does not keep the payments related to the Gardner Loan, and that it did not purchase the Note.  Further, Nationstar holds no interest because the Assignments are void; but in any event its interest *at best* is merely as nominee, since that is the only interest that MERS and then Aurora Bank were legally capable of passing on.  And beyond

---

[13] Defendants cite *Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055, 1068 (D.Ariz. 2011) claiming that a lie about the identity of the Beneficiary cannot be material to a borrower in default.  First, Defendants have not proven the Gardners are in default.  Second, *Silving* does not address this issue at all.  Third, new decisions disagree. *Yvanova*, 365 P.3d 845, 857-58.

this, the Gardners also based their A.R.S. § 33-420 claim on the fact that the recorded documents are groundless, false, and otherwise invalid.  None of those independent statutory bases require a finding of a material misrepresentation.

Defendants argue that A.R.S. § 33-808(E) should absolve their recording of false and groundless documents.  But that subsection applies only post-foreclosure, when a trustor seeks to invalidate a sale which has already occurred.   Once a sale takes place, unwinding it is very difficult under A.R.S. § 33-811(C), so this provision is not surprising.  But it does not apply; no sale has occurred.  The Motion related to Count 4 should be denied.

## I.        Negligence Per Se is Supported by Evidence.

The entirety of Defendants' Motion on this claim was previously argued in a footnote, and lost, in their MTD.  *See* Doc. 89 at 21 n.10.  Their case was easily distinguished.  *See* Doc. 93 at 22 n.25.  Defendants provide no facts supporting a judgment in their favor, instead simply stating that the Gardners have "no evidence supporting these claims."  See Doc. 147 at 18:16-17.  But the Gardners do have such evidence, detailed in Sections II and III(H).  In addition, the Gardners cannot be required to prove a negative; that is, that a signer does *not* have authority.  Rather, the burden was on the movant and proponent of the recorded documents to prove that the signers did have authority.  Defendants are not up to the task.  Plaintiffs have amply proven that the only purported authority for any of the documents, the MERS Corporate Resolution and the Trust Agreement, do not give the authority touted by the Defendants.   The Motion on Count 5 should be denied.

## J.        Plaintiffs Have Evidence of Intentional Interference.

Defendants' Motion on Count 8 is based on two things: (1) that Nationstar is the true beneficiary; and (2) that Defendants therefore did not act improperly.  *See* Doc. 147 at 19:10-19.  Defendants misrepresent this Court's ruling on the MTD, in asserting that the Court ruled Plaintiffs have to prove that "only the Certificateholders can be the beneficiary."  *Id*. What the Order actually stated, was the Court will decide "who is and who is not a beneficiary under the Deed of Trust," and found Plaintiffs' allegations that "only the lender/note holder can be the beneficiary," were plausible.  *See* Doc. 114 at 23.

The Gardners have now proven that Nationstar is clearly not the Lender/Note Holder/ Beneficiary, nor is U.S. Bank as Trustee, under Arizona law.  *See* Section III(B).  Further, the Certificateholders/Owners have not contacted Nationstar about any supposed default.  In fact, the Certificateholders/Owners have experienced no default, as proven by evidence of Advances. Therefore, Nationstar's acting as though it is the true Lender/Beneficiary (declaring default, electing to foreclose, telling TD to record groundless documents and initiate a sale), is intentional interference.  Nationstar knows it is only the servicer and did not purchase the Note.  Nationstar knows that the Lender has not declared a default.  Therefore, the Note and DOT terms have been breached through a wrongful foreclosure proceeding initiated without any validly declared default, and without authority.  All such acts are a wrongful interference with the Note and DOT the Gardners have with their Lender.

The Defendants are not entitled to summary judgment on Count 8.

**K.      The TD Claims.**

The Gardners and TD are in settlement negotiations and have agreed on the final version of settlement documents, which are out for execution.  Accordingly, the Gardners will not respond to Defendants' argument in its Section I.  *See* Doc. 147 at 19:24 to 20:10.  If the Settlement is not finalized, Plaintiffs will file a supplemental Response addressing this section.

**IV.      CONCLUSION.**

Based on the foregoing, Plaintiffs respectfully request that the Defendants' Motion for Summary Judgment be denied in its entirety.  Defendants submit no evidence which could change the outcome of the Court's prior rejection of the Defendants' arguments previously made in their Motion to Dismiss.  The Gardners, on the other hand, have demonstrated a plethora of genuinely disputed material facts which prevent judgment in favor of the Defendants.  Plaintiffs further dispute the Defendants' entitled to any attorneys' fees or costs.

RESPECTFULLY SUBMITTED this 10th day of February, 2017.

BARBARA J. FORDE, P.C.

By:  _/s/ Barbara J. Forde_____
Barbara J. Forde
20247 North 86th Street
Scottsdale, AZ  85255
*Attorney for Plaintiffs Jay N. Gardner and Rachel B. Gardner*

## CERTIFICATE OF SERVICE

☒     I hereby certify that on February 10, 2017, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System:

Brian Schulman
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
*Attorneys for Defendants Nationstar Mortgage LLC,*
*T.D. Service Company of Arizona, and U.S. Bank, N.A., as Trustee*

By: */s/ Barbara J. Forde*_____