WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JAY N. GARDNER and RACHEL B.
GARDNER,

      Plaintiffs,

 vs.

NATIONSTAR MORTGAGE, LLC, et al.,

      Defendants.

No. 2:13-cv-1641-HRH
[Consolidated with
No. 2:13-cv-2478-HRH]

JAY N. GARDNER and RACHEL B.
GARDNER,

      Plaintiffs,

 vs.

NATIONSTAR MORTGAGE, LLC, et al.,

      Defendants.

O R D E R

Motion for Summary Judgment

   Defendants Nationstar Mortgage, LLC and U.S. Bank, N.A. move for summary

judgment.[1]  This motion is opposed.[2]  Defendants' motion and plaintiffs' response were

_____

   [1]Docket No. 147.

   [2]Docket No. 161.

-1-

supplemented by the parties' written responses to written questions posed to them by the court.[3] Oral argument was requested and has been heard. The parties' arguments have been transcribed.[4]

## Parties

Plaintiffs are Jay N. Gardner and Rachel B. Gardner. The remaining defendants are Nationstar Mortgage, LLC ("Nationstar"); and U.S. Bank, N.A., ("U.S. Bank"), trustee of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N ("the Lehman XS Trust").

Defendants Starlett J. Japp, Clayton G. Goff, and T.D. Servicing Company of America were each at one time Trustee under the Deed of Trust that is the subject of this case. All of these defendants have been dismissed.[5] Defendant AMSL Legal Group, LLP, which had a limited power of attorney to execute substitutions of trustee on behalf of Nationstar,[6] has also been dismissed.[7]

AMSL Legal Group, LLC, is still listed on the court's docket as a defendant in this case. At oral argument, the court asked plaintiffs' counsel whether "AMSL Legal" was still

---

[3] Docket Nos. 182 and 183.

[4] Docket No. 186.

[5] Docket Nos. 142 and 176.

[6] Exhibit 12 at NAT_005349, Defendants' Motion for Summary Judgment, Docket No. 147.

[7] Docket No. 142.

a party to this case and plaintiffs' counsel replied that it was not.[8]  It was not clear from this exchange to which AMSL Legal Group plaintiffs' counsel was referring.  However, plaintiffs have alleged and provided evidence that defendant AMSL Legal Group, LLC is a non-existent entity,[9] a fact which AMSL Legal Group, LLP has confirmed.[10]  The court concludes that AMSL Legal Group, LLC is a non-existent entity and as such lacks the capacity to be sued.  Plaintiffs' remaining claims against the AMSL Legal Group, LLC are dismissed with prejudice.

Facts

Based upon the documents put before the court by defendants and plaintiffs, and except as expressly stated otherwise, the following are the material facts as to which there is no reasonable basis for dispute.

The Property.  The property which is the subject of this case is described as:

> The North 205 feet of the West half of the Northwest quarter of the Northwest quarter of the Southeast quarter of Section 25, Township 3 North, Range 3 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona[;]

and is also known as 3601 East Mountain View Road, Phoenix, Arizona 85028 (herein "the

---

[8]Transcript of Oral Argument (May 18, 2017) at 2:14-18, Docket No. 186.

[9]Fourth Amended Complaint at 3, ¶ 7, Docket No. 82; Exhibit 6, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[10]AMSL Defendants' Answer to the Fourth Amended Complaint at 2, ¶ 8, Docket No. 129 ("Any reference in the Notice of Substitution of Trustee of AMSL Legal Group, LLC was inadvertent and was a mere typographical error").

Property").[11]  Plaintiffs purchased the Property on April 20, 2007 and acquired title to the same by warranty deed.[12]  Plaintiffs continue to reside at the Property.[13]

The Note.  Plaintiffs' purchase of the Property was financed by GreenPoint Mortgage Funding, Inc. ("GreenPoint), as Lender, in whose favor plaintiffs executed an adjustable rate note ("the Note") dated April 19, 2007.[14]  Plaintiffs as borrowers promised to pay GreenPoint $960,000 plus interest.[15]  Plaintiffs agreed to pay interest at a yearly rate of 1%, subject to future adjustment but never greater than 12% per annum.[16]  The Note expressly provides that failure to pay each monthly payment in full would constitute a default.[17]  The Note further provides that, if after notice by the Note Holder, the borrowers failed to pay the overdue amount, the entire balance plus interest might be demanded.[18]  The Note also expressly reserved to the original Lender the right to transfer the Note, providing that "anyone who takes this Note by transfer and who is entitled  to receive payments under this Note is called

---

[11]Fourth Amended Complaint at 1, ¶ 1; 4, ¶ 12, Docket No. 82.

[12]Exhibit 1 at 2, Fourth Amended Complaint, Docket No. 82.

[13]Declaration of Jay Gardner (dated Feb. 10. 2017) at ¶ 1, Exhibit 3, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161 ("My wife Rachel and I[] live at our home located at 3601 E. Mountain View Rd.").

[14]Exhibit 2, Fourth Amended Complaint, Docket No. 82.

[15]Id. at 1, § 1.

[16]Id. at § 2(A), (C).

[17]Id. at 3, § 7(B).

[18]Id. at § 7(C).

the 'Note Holder'"[19]

On an unknown date, the original Lender and Note Holder, GreenPoint, endorsed the Note:

> WITHOUT RECOURSE
> PAY TO THE ORDER OF:
> _____
> GreenPoint Mortgage Funding, Inc.
>
> [by] Larry R. Kern
> Assistant Vice President[[20]]

The Note is in the physical possession of Nationstar.[21]

The Deed of Trust. To secure repayment of the Note, plaintiffs executed a Deed of Trust on April 19, 2007.[22] The Deed of Trust identifies the above-described Note executed by plaintiffs and the Property in question.[23]

The Deed of Trust identifies and defines the following parties:

Borrower:    Plaintiffs, Jay N. Gardner and Rachel B. Gardner

Lender:    GreenPoint Mortgage Funding, Inc.

---

[19]Id. at 1, § 1.

[20]Exhibit 17 at NAT_000079, Reply in Support of Defendants' Motion for Summary Judgment, Docket No. 167.

[21]Defendants' Response to Court's Order from Chambers Dated April 26, 2017 at 2, Docket No. 182.

[22]Exhibit 1, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[23]Id. at NAT_000083-84.

Trustee:    Marin Conveyancing Corp.  The Deed of Trust expressly provides that plaintiffs "irrevocably grant[] and convey[] to Trustee, in trust, with power of sale" the Property.[24]

Beneficiary:   Mortgage Electronic Registration Systems, Inc. ("MERS")

The Deed of Trust spells out the roles of the foregoing parties, as well as the role of a loan servicer.  Unlike the usual note/deed of trust situation, and because plaintiffs' loan was being securitized, MERS was designated as the "beneficiary" of plaintiffs' Deed of Trust. Critical to understanding this arrangement is the fact that MERS, as well as its "successors and assigns", were designated to act "solely as nominee for Lender and Lender's successors and assigns[.]"[25]

Uniform Covenant 20 of the Deed of Trust addresses "Sale of Note; Change of Loan Servicer[.]"[26]  In this provision, plaintiffs acknowledged that their Note might be sold one or more times, without prior notice to them, and that any such sale of the Note "might result in a change in the entity (known as the 'Loan Servicer') that collects Periodic Payments due under the Note and this Security Instrument...."[27]  By this provision, plaintiffs were further advised that,  upon  a change of loan servicer, they would be given notice of the change and

---

[24]Id. at NAT_000084.

[25]Id.

[26]Id. at NAT_000092.

[27]Id.

the address to which payments should be made in the future.[28]

Like the Note, the Deed of Trust makes provision for notice and acceleration of the entire principal balance after an uncured default. In this regard, Non-Uniform Covenant 22 of the Deed of Trust spells out the procedure to be followed if a default is not cured.[29] In such event, the Lender may invoke the power of sale, which the Deed of Trust grants to the Trustee.[30] Covenant 22 provides that it is the Lender who invokes the power of sale and gives instructions to the Trustee when a default goes uncured.[31] The Trustee has the responsibility of recording a notice of sale and providing the borrowers with a copy of the notice.[32] If that procedure is followed and a sale is conducted, the Trustee delivers to the foreclosure sale purchaser a trustee's deed.[33]

Non-Uniform Covenant 24 of the Deed of Trust provides that the "Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."[34] It is expressly provided that no conveyance of the Property is necessary and that a successor trustee succeeds to "all the title, power and duties conferred

---

[28]Id.

[29]Id. at NAT_000094.

[30]Id.

[31]Id.

[32]Id.

[33]Id.

[34]Id.

upon Trustee....”[35]

The Subsequent History.  The foregoing describes the original posture of the parties upon execution of plaintiffs' Note and Deed of Trust.  As contemplated by those documents, over time there were numerous changes in the identities of the various participants.

Borrower:  Plaintiffs remain the borrowers.  Plaintiffs ceased making payments on their Note during June of 2011.[36]

Lender/Note Holder:  Although plaintiffs' Note is in the physical possession of Nationstar, it is undisputed – and plaintiffs have been informed[37] – that the right to receive payments on plaintiffs' Note is now owned by the Lehman XS Trust, with U.S. Bank as trustee.[38]  That is to say, the Lehman XS Trust is the successor Lender/Note Holder.

Beneficiary/Nominee:  By corporate assignment of deed of trust, dated September 21, 2011, MERS – "as nominee for GreenPoint Mortgage Funding, Inc., its successors, and/or

---

[35]Id.

[36]Affidavit and Testimony of Marie McDonnell, CFE at 10, ¶ 27, Exhibit 5, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161 (in June 2011, plaintiffs "made a calculated decision to stop making their monthly mortgage payments").

[37]See, e.g., Exhibit L at Gardner 000083; Jay Gardner Declaration, Exhibit 3; Exhibit 11 at NAT_004146, Videotaped Deposition of Aaryn Ryan Richardson, Exhibit 2; Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[38]Plaintiffs contend, based on the opinion of their expert, that their loan was never conveyed to the Lehman XS Trust.  But plaintiffs have no standing to contest any aspect of the securitization of their loan.  See Lial v. Bank of America Corp., Case No. 12–16855, 2016 WL 372098, at *1 (9th Cir. Jan. 29, 2016) (internal citation omitted) ("[t]he Lials lack standing to enforce the terms of any pooling and service agreement and therefore cannot challenge any assignment into a securitized trust").

assigns" – assigned to Aurora Bank FSB "all its right, title and interest in and to said Deed of Trust."[39]  This assignment was expressly executed by MERS "as nominee for GreenPoint Mortgage Funding, Inc."[40]  This assignment had the effect of transferring – from MERS to Aurora Bank FSB – the role of beneficiary/nominee as described above with respect to the Deed of Trust.  Put more simply, this was a transfer of MERS' role as nominee for the Note Holder to Aurora Bank FSB.

The foregoing corporate assignment (the "First Assignment") was executed by Stacy Sandoz, an authorized signing officer based upon a MERS corporate resolution effective September 21, 2011.[41]  The validity of the First Assignment is discussed below.

There was a second assignment of the role of beneficiary/nominee under plaintiffs' Deed of Trust on June 28, 2012, on which date Aurora Bank FSB assigned to Nationstar the role of beneficiary/nominee under the Deed of Trust.[42]  Assuming the validity of the First Assignment of the beneficiary/nominee's role, there can be no dispute that Nationstar is the current beneficiary/nominee under plaintiffs' Deed of Trust as a result of the Second Assignment.

---

[39]Exhibit 6 at NAT_002-23, Defendants' Motion for Summary Judgment, Docket No. 147.

[40]Id.

[41]Exhibit 7 at MERS 00004, Defendants' Motion for Summary Judgment, Docket No. 147.

[42]Exhibit 10 at NAT_0005353, Defendants' Motion for Summary Judgment, Docket No. 147.

Trustees:  On October 25, 2011, Aurora Bank FSB substituted Quality Loan Servicing Corp. as the Trustee holding power of sale.[43]  Assuming the validity of the First Assignment of beneficiary/nominee status, the designation of Quality Loan Servicing as Trustee was valid.

After Nationstar assumed the role of beneficiary/nominee on June 28, 2012, there have been four more substitutions of Trustee.  On April 19, 2013, T.D. Service Company was substituted for Quality Loan Servicing Corp.[44]  On April 30, 2014, Nationstar executed a power of attorney in favor of AMSL Legal Group;[45] and that power of attorney was employed to substitute Japp as Trustee,[46] followed by Goff.[47]  On April 19, 2016, Nationstar substituted Carson Emmons as the Trustee.[48]  If the First and Second Assignments are valid, these four substitutions are also valid.

Based upon instructions from the then-current beneficiary/nominee, notices of default by plaintiffs were recorded twice:  first, on November 9, 2011, by Quality Loan Service

---

[43]Exhibit 8, Defendants' Motion for Summary Judgment, Docket No. 147.

[44]Exhibit 11, Defendants' Motion for Summary Judgment, Docket No. 147.

[45]Exhibit 12 at NAT_005349, Defendants' Motion for Summary Judgment, Docket No. 147.

[46]Exhibit 13, Defendants' Motion for Summary Judgment, Docket No. 147.

[47]Exhibit 14, Defendants' Motion for Summary Judgment, Docket No. 147.

[48]Exhibit 31, Richardson Deposition, Exhibit 2, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

Corp. upon the instructions of Aurora Bank FSB,[49] and second, on April 29, 2013, by T.D. Service Company upon the instructions of Nationstar.[50] The first sale appears to have been aborted because of a loan modification,[51] and the second sale was aborted because of this litigation.

Servicers: In connection with the securitization of loans, U.S. Bank, as trustee for the Lehman XS Trust, and Aurora Loan Services, LLC entered into an agreement as of July 1, 2007, for the administration and servicing of mortgage loans.[52] Aurora Loan Services did not, however, begin servicing plaintiffs' loan until November 1, 2010.[53] On June 12, 2012, Nationstar acquired from Aurora Loan Services responsibility for servicing plaintiffs' loan.[54] On July 15, 2012, plaintiffs were advised by Nationstar of its role as servicer of plaintiffs' loan on behalf of U.S. Bank, trustee for the Lehman XS Trust.[55] As recently as September

---

[49]Exhibit 9, Fourth Amended Complaint, Docket No. 82.

[50]Exhibit 14, Fourth Amended Complaint, Docket No. 82.

[51]McDonnell Affidavit and Testimony at 11-12, ¶ 32, Exhibit 5, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[52]Exhibit 5 at NAT_004866, Defendants' Motion for Summary Judgment, Docket No. 147.

[53]Exhibit B at 1, Jay Gardner Declaration, Exhibit 3, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161. From August 1, 2007 through October 31, 2010, plaintiffs' loan was serviced by GMAC Mortgage. Exhibit A, Jay Gardner Declaration, Exhibit 3, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[54]Exhibit 9, Defendants' Motion for Summary Judgment, Docket No. 147.

[55]Exhibit 5, Fourth Amended Complaint, Docket No. 82.

18, 2013, and in response to their inquiries, plaintiffs were informed that the Lehman XS Trust was the owner of their Note, that U.S. Bank was the trustee for the Trust, and that Nationstar was the servicer for their loan.[56]

Claims. Six counts in plaintiffs' Fourth Amended Complaint remain. Count One is a claim for declaratory relief. Count Two is a breach of contract claim. Count Three is a breach of the duty of good faith and fair dealing claim. Count Four contains a quiet title claim under A.R.S. § 33-420 and a slander of title claim under A.R.S. § 33-420. Count Five contains two negligence per se claims. And Count Eight is an intentional interference with contractual relations claim. In addition to the declaratory relief plaintiffs seek in Count One, they also seek compensatory damages, statutory damages, and punitive damages.[57]

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant

---

[56]Exhibit 16, Fourth Amended Complaint, Docket No. 82.

[57]Defendants also contend that plaintiffs are seeking injunctive relief but the court does not read plaintiffs' Fourth Amended Complaint as seeking such relief.

in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

There is no material fact in dispute regarding the validity of plaintiffs' Note or the Deed of Trust which secures it. The Lehman XS Trust is the successor Lender/Note Holder with respect to plaintiffs' Note, which is and has been in default since June of 2011. There is no material fact in dispute as to the status of Nationstar as current servicer of plaintiffs' loan. The principal disputes of substance between the parties are the question of whether or not Nationstar is the current beneficiary/nominee and whether Nationstar, as either the current beneficiary/nominee or loan servicer, is entitled to declare a default on behalf of the successor Lender and to call upon or designate a trustee to sell the property if plaintiffs' default is not cured.

As an initial matter, plaintiffs argue that defendants' motion must be denied because a condition precedent to any foreclosure is a default by the borrower. Plaintiffs argue that there is no evidence of a default by them. In addition, plaintiffs argue that defendants cannot offer any evidence of default because only the Lender can declare a default and there is no dispute that neither Nationstar nor U.S. Bank is the Lender.

Plaintiffs are correct that neither Nationstar nor U.S. Bank is the successor Lender/Note Holder. Rather, U.S. Bank is the trustee for the current successor Lender/Note Holder, Lehman XS Trust. The Trust is the entity presently entitled to receive payments on plaintiffs' Note. Nationstar, although in physical possession of plaintiffs' Note, is the current successor beneficiary/nominee under the Deed of Trust.[58] In that capacity, Nationstar is entitled to declare a default if payments are not made on plaintiffs' Note; and, if a default is declared but not cured, Nationstar is entitled to call upon the Trustee to initiate foreclosure proceedings for the benefit of Lehman XS Trust.

While plaintiffs have been very careful to not allege in any of their complaints that their loan was in default, there is evidence from plaintiffs' expert that in June 2011, plaintiffs "made a calculated decision to stop making their monthly mortgage payments."[59] Plaintiffs have come forward with no evidence of payments made by them after June 2011. At oral argument, the court asked plaintiffs' attorney if plaintiffs' expert had correctly stated that payments were stopped in June of 2011.[60] Counsel first stated that she "d[idn't] know the

---

[58]As will be discussed below in detail, the court finds that the First Assignment of beneficiary/nominee status (from MERS to Aurora Bank FSB) is valid and that the Second Assignment of beneficiary/nominee status (from Aurora Bank FSB to Nationstar) is valid, thereby making Nationstar the current successor beneficiary/nominee under plaintiffs' Deed of Trust.

[59]McDonnell Affidavit and Testimony at 10, ¶ 27, Exhibit 5, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[60]Transcript of Oral Argument (May 18, 2017) at 17:3-5, Docket No. 186.

date[.]"[61] The court then asked, "[d]o you agree with me [that] at some point they did stop making payments on the note?" and counsel answered, "[y]es."[62]

It is undisputed that plaintiffs ceased making payments on their Note in June 2011. Plaintiffs' Note expressly provides if plaintiffs do "not pay the full amount of each monthly payment on the date it is due, [they] will be in default."[63] Plaintiffs' contentions that there is no evidence of default by them and that defendants cannot offer any evidence of default are meritless. It is undisputed that plaintiffs have defaulted on the required monthly payments required by their Note; and there is no need of any further evidence from defendants, plaintiffs' default being conceded.

Turning then to the merits of defendants' motion for summary judgment, defendants first contend that all of plaintiffs' claims, directly or indirectly, rely on plaintiffs' assertion that only the Lender or Note Holder can be a true beneficiary of the Deed of Trust, which means that MERS cannot be a true beneficiary. And, if MERS cannot be a true beneficiary, then plaintiffs contend it follows that Nationstar never became a beneficiary under their Deed of Trust. Defendants contend that plaintiffs' assertion that MERS could not be the beneficiary of the Deed of Trust is wrong.

---

[61]Id. at 17:6-7.

[62]Id. 17:11-14.

[63]Adjustable Rate Note at 3, ¶ 7(B), Exhibit 1, Defendants' Motion for Summary Judgment, Docket No. 147.

Plaintiffs appear to argue that MERS cannot be a beneficiary because it never had possession of the Note.  Arizona courts have rejected the "claim that MERS, as the original beneficiary, did not have the authority to assign its beneficial interest in the deed of trust because it never had possession of the note," because "a note and a deed of trust are distinct instruments that serve different purposes."  Steinberger v. McVey ex rel. County of Maricopa, 318 P.3d 419, 427 n.11 (Ariz. Ct. App. 2014) (citation omitted).  This court concludes that whether MERS ever had possession of the Note[64] is irrelevant to determining whether MERS could be the beneficiary/nominee of the successor Lender secured by the Deed of Trust.

Plaintiffs next argue that the only entity that can enforce the Note and foreclose on the security is the entity which possesses the Note and is entitled to payment.  Because only the Note Holder or the Lender can enforce the Note or the Deed of Trust, plaintiffs argue that it follows that only the Note Holder or the Lender can be the beneficiary of the Deed of Trust.  Plaintiffs argue that it is only the entity that is entitled to payment which is secured by the Deed of Trust and thus this is the only entity which can enforce the Deed of Trust.  As the California Supreme Court recently observed "[t]he borrower owes money not to the world at large but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security."  Yvanova v. New

---

[64]As set out above, Nationstar currently has physical possession of plaintiffs' Note as beneficiary/nominee of the current successor Lender.

<u>Century Mortg. Corp.</u>, 365 P.3d 845, 857 (Cal. 2016).  Similarly, in Arizona, "a deed of trust

... 'may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation

the mortgage secures.'"  <u>Hogan v. Washington Mut. Bank, N.A.</u>, 277 P.3d 781, 783 (Ariz.

2012) (quoting <u>Restatement (Third) of Prop.: Mortgages</u> § 5.4(c) (1997)).  Plaintiffs argue

that Nationstar and U.S. Bank, as trustee for the Lehman XS Trust, are not entitled to enforce

the Note or the Deed of Trust because they have admitted that they are not the entities that

keep the principal and interest payments.  If neither Nationstar nor U.S. Bank can enforce the

Note and foreclosure on the Property, then plaintiffs argue that neither of these defendants

can be the beneficiary of the Deed of Trust.  In short, plaintiffs insist that only the Lender or

the Note Holder, or their successors, can be the beneficiary of their Deed of Trust.

There are two problems with plaintiffs' argument.  First, a beneficiary does not have

to be the holder of the Note.  <u>See</u>, <u>e.g.</u>, <u>Maxa v. Countrywide Loans, Inc.</u>, Case No.

CV10–8076–PCT–NVW, 2010 WL 2836958, at *6 (D. Ariz. July 19, 2010) (observing that

"no Arizona authority has been found that requires a beneficiary under the Deed of Trust to

be the owner and holder of the Note").  Second, the fact that neither Nationstar nor U.S.

Bank keeps the principal and interest payments is immaterial to the question of whether

Nationstar can be a beneficiary of the Deed of Trust because plaintiffs' Deed of Trust

designated MERS "and the successors and assigns of MERS" as beneficiary/nominee.[65]

---

[65]Exhibit 1 at NAT_000084, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

Plaintiffs do not dispute that the Deed of Trust names MERS as the beneficiary and provides that MERS is acting solely as nominee for the Lender. But, plaintiffs argue that as a "nominee" of the Lender, MERS has very limited authority. Plaintiffs contend that "[t]he word 'nominee' in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him." Ott v. Home Savings & Loan Association, 265 F.2d 643, 647 (9th Cir. 1958) (citation omitted). Thus, plaintiffs argue that MERS, as nominee, could not have had any interest in the Deed of Trust and thus could not have assigned or transferred any interest in the Deed of Trust. Plaintiffs insist that MERS could only assign whatever interest it held in the Deed of Trust, which plaintiffs appear to contend was none.

Plaintiffs are correct that MERS in its capacity as beneficiary of plaintiffs' Deed of Trust had no property interest or ownership of plaintiffs' Note or the Deed of Trust. They are wrong about MERS and its assigns having no transferable interest under the Deed of Trust. MERS' role was that of beneficiary/nominee of the Lender/Note Holder of plaintiffs' Note. As stated in the Deed of Trust, MERS as beneficiary had the capacity to assign its role as beneficiary/nominee. The first assignment of MERS' beneficiary status is careful to reflect MERS' status as "nominee for by GreenPoint Mortgage Funding, Inc., its successors and/or assigns" – which MERS passed on by assignment to Aurora Bank FSB. The second assignment by Aurora Bank FSB of its beneficiary/nominee status under plaintiffs' Deed of

Trust is not quite as specific, but it does acknowledge MERS' "nominee" status.[66]  Both assignments expressly assign  "all [the assignor's] right, title and interest in and to said Deed of Trust."[67]  Plainly the only interest that MERS or Aurora Bank FSB had in the plaintiffs' Deed of Trust was their status as beneficiary/nominee for the Lender or the Lender's successors.  But this status, and the rights that go along with it, were assignable to Nationstar.

Plaintiffs next argue that MERS cannot be a beneficiary of the Deed of Trust because MERS does not meet the statutory definition of "beneficiary," a definition which plaintiffs argue must be strictly enforced.  The Arizona Deed of Trust Act defines "beneficiary" as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest."  A.R.S. § 33-801(1).  Plaintiffs argue that MERS does not fit this definition because it admits that as nominee it has "no rights whatsoever to any payments made on account of MERS Loans, to any servicing rights related to MERS Loans, or to any mortgaged properties securing MERS Loans."[68]  Plaintiffs seem to be arguing that if MERS has no rights in the loan, then it cannot be "the person for whose benefit a trust deed is given[.]"  Id.

---

[66]Exhibit 10 at NAT_0005353, Defendants' Motion for Summary Judgment, Docket No. 147.

[67]Exhibit 6 at NAT_002023; Exhibit 10 at NAT_0005353; Defendants' Motion for Summary Judgment, Docket No. 147.

[68]Exhibit 40 to Richardson Deposition, Exhibit 2, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

The Ninth Circuit has "held that under Arizona law, MERS may serve as a beneficiary in non-judicial foreclosures." <u>Zadrozny v. Bank of New York Mellon,</u> 720 F.3d 1163, 1169 (9th Cir. 2013). This means that MERS, even though it may not meet the Arizona statutory definition of "beneficiary", can still be a beneficiary of the Deed of Trust since it is not the foreclosing entity. As one court in this district explained:

> This district has ... rejected any theory that the beneficiary under a deed of trust must necessarily be identical to the beneficiary under the note it secures. By the terms of the deed of trust itself, MERS is only a beneficiary for the benefit of the original lender on the promissory note and its subsequent successors and assigns. Therefore MERS can only exercise its rights as beneficiary under the deed of trust for the benefit of either the original lender or its subsequent successors and assigns. To the extent it does so, the beneficial interest in the deed of trust has not been separated from the lender or its successors, and no assignment by MERS is invalid.

<u>Kentera v. Fremont Inv. & Loan</u>, Case No. CV–10-8259–PCT–GMS, 2011 WL 4005411, at *5 (D. Ariz. Sept. 8, 2011).

Plaintiffs argue however that if a contract term violates a statute, that term is illegal and cannot be enforced. Because MERS does not fit the statutory definition of "beneficiary", plaintiffs insist that MERS cannot be the beneficiary of the Deed of Trust. Plaintiffs cite to <u>Erickson v. Green Tree Servicing LLC</u>, Case No. CV–14–08089–PCT–NVW, 2015 WL 3507350 (D. Ariz. June 4, 2015), in support of this argument. There, as here, "[t]he Deed of Trust identifie[d] MERS as the beneficiary and also states that MERS 'is acting solely as a nominee for Lender and Lender's successors and assigns.' It does not define 'nominee' or

explain what acting 'solely' as a nominee means." Id. at *7.  The court reasoned that "[i]f the parties were able to confer beneficiary status on MERS by executing the Deed of Trust, then by executing the Corporate Assignment of the Deed of Trust, MERS transferred beneficial interest in the Deed of Trust to Green Tree." Id.  But, the court also pointed out that

> the Arizona Deed of Trust statutes define "beneficiary" as "the person for whose benefit a trust deed is given."  It is undisputed that MERS never was "the person for whose benefit a trust deed is given."  Because non-judicial foreclosure is permitted only in strict compliance with the statutes, it is unlikely that the parties' agreement may override the statutory definition of "beneficiary."  If MERS was not the beneficiary, it could not assign beneficial interest to Green Tree.

Id.

This court is unpersuaded by Erickson.  "[N]umerous cases in this Court, the Ninth Circuit, and Arizona have held that MERS may assign a deed of trust that leads to a trustee's sale.  The [c]ourt cannot disregard this authority merely because Erickson recognized a possible theory that MERS is not a statutory beneficiary."  Bayer v. Nationstar Mortgage LLC, Case No. CV-15-02430-PHX-DGC, 2017 WL 1133023, at *6 (D. Ariz. March 27, 2017).  As the Bayer court observed "[i]t is well established that MERS may serve as a beneficiary of an Arizona trust deed in a nominee capacity, and that MERS may validly assign its interest in a Deed of Trust. "  Id. at *5.

Plaintiffs' efforts to characterize MERS as not a "true" beneficiary is unhelpful.  That characterization is inconsistent with the terms of plaintiffs' Deed of Trust.  Plaintiffs

expressly agreed that "the beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS[.]"[69] By the terms of their Deed of Trust, plaintiffs authorized MERS as nominee of their Lender and its successors, to transfer its beneficiary status and to otherwise act on behalf of the Lender and its successors in furtherance of the Lender's and successor Lender/Note Holder's rights to be secured as to plaintiffs' Note. The court concludes that MERS could be a beneficiary of plaintiffs' Deed of Trust.

If MERS could be the beneficiary of the Deed of Trust, which the court concludes MERS was, then defendants argue that MERS validly assigned its interest in the Deed of Trust to Aurora Bank FSB. The parties disagree as to whether the First Assignment was valid.

As set out above, on September 21, 2011, MERS, as nominee for GreenPoint, assigned its interest in the Deed of Trust to Aurora Bank FSB.[70] The Corporate Assignment of Deed was signed by Stacy Sandoz, Vice-President, and was recorded with the Maricopa County Recorder's Office on October 17, 2011.[71] The First Assignment provided that the "Assignor hereby assigns and transfers to Assignee all its right, title and interest in and to

---

[69]Deed of Trust at 3, Exhibit 1, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[70]Exhibit 6, Defendants' Motion for Summary Judgment, Docket No. 147.

[71]Id. at NAT_002023.

said Deed of Trust."[72]  Sandoz was an officer of Aurora Bank FSB who had been authorized to take certain actions and sign certain documents on MERS' behalf pursuant to a MERS corporate resolution.[73]  The MERS corporate resolution authorized officers of Aurora Bank FSB to "assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS® System, is shown to be registered to the Member."[74]  The MERS corporate resolution also authorized officers of Aurora Bank FSB to "execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS® System that is shown to be registered to the Member[.]"[75]

Defendants argue that the MERS Milestone Report for plaintiffs' loan shows that plaintiffs' loan was registered to Aurora, Org ID 1000487,[76] on September 21, 2011, the date of the First Assignment.  However, as plaintiffs aptly point out, the MERS Milestone Report which is before the court does not show that their loan was registered to Aurora Bank FSB.

---

[72]Id.

[73]Exhibit 7, Defendants' Motion for Summary Judgment, Docket No. 141.

[74]Id. at MERS 00004 (emphasis added).

[75]Id. (emphasis added).

[76]"Each MERS member is assigned an Organizational Identification Number ('Org ID'), which is a unique 7-digit number that is used to identify the Member on the MERS® System."  Affidavit of MERSCORP Holdings, Inc. at 2, ¶ 6, Exhibit 16, Reply in Support of Defendants' Motion for Summary Judgment, Docket No. 167.

The MERS Milestone Report for plaintiffs' loan shows the following: 1) on June 8, 2007, GreenPoint transferred its beneficial rights to Aurora Commercial Corporation, Org ID 1000487; 2) on August 9, 2007, GreenPoint transferred the servicing rights to GMAC Mortgage LLC; 3) on November 15, 2010, GMAC Mortgage transferred the servicing rights to Aurora Loan Services LLC, Org ID 1000254; 4) on January 3, 2011, Aurora Loan Services LLC, Org ID 1000254, apparently acting on behalf of Aurora Commercial Corporation, Org ID 1000487, transferred the beneficial rights to U.S. Bank as trustee for the Lehman XS Trust; 5) on August 1, 2011, Aurora Loan Services LLC, Org ID 100254, added Aurora Commercial Corp., Org ID 100487, as a subservicer; 6) on November 11, 2011, Aurora Commercial Corp., Org ID 100487, updated the status of the loan to indicate that a foreclosure was pending; and 7) on February 26, 2012, MERS deactivated the registration.[77] In sum, the MERS Milestone Report which is before the court shows that on September 21, 2011, plaintiffs' loan was registered to Aurora Commercial Corp., Org ID 100487.

Timothy Renner, "an employee of MERSCORP Holdings, Inc. ..., the parent company of" MERS, avers that the name associated with Org ID 1000487 on September 21, 2011 was in fact Aurora Bank, FSB but that on "June 12, 2013, MERSCORP updated the name associated with Org ID 1000487 from Aurora Bank FSB to Aurora Commercial Corp. Thereafter, Aurora Commercial Corp. appeared as the name associated with Org ID 1000487

---

[77]Exhibit 15 at MERS 00002, Defendants' Motion for Summary Judgment, Docket No. 147.

for each loan registered on the MERS® System to Org ID 1000487[.]"[78]

Renner's affidavit explains why Aurora Bank, FSB does not currently show up on the MERS Milestone Report for plaintiffs' loan. No evidence contradicts the Renner affidavit. There is no material dispute that, as of September 21, 2011, plaintiffs' loan was in fact registered to Aurora Bank FSB, and thus Sandoz had the authority to sign the First Assignment on behalf of MERS.

Alternatively, defendants argue in a footnote that if Sandoz lacked authority to execute the First Assignment, then the First Assignment (and any subsequent assignment(s)) would be voidable, not void. Plaintiffs, however, argue that the First Assignment would be void, not voidable. "Generally, a contract which cannot be performed without violating applicable law is illegal and void." E&S Insulation Co. of Ariz., Inc. v. E. L. Jones Const. Co., 591 P.2d 560, 562 (Ariz. Ct. App. 1979). Plaintiffs argue that the First Assignment could not be performed without violating the statutory definition of the term "beneficiary." But plaintiffs are wrong. There is no violation of applicable law here.

If the court were to reach the foregoing issue – that is, if the court were to conclude that Sandoz was not authorized to execute an assignment on behalf of MERS, then the First Assignment would be voidable, not void. See, e.g., Paik-Apau v. Deutsche Bank Nat'l Trust Co., Case No. 10–00699 SOM/RLP, 2012 WL 5207495, at *5 (D. Hawai'i Oct. 19, 2012)

_____

[78]MERSCORP Affidavit at 2, ¶ 1; 3, ¶¶ 8-9; Exhibit 16, Reply in Support of Defendants' Motion for Summary Judgment, Docket No. 167 (emphasis added).

("Paik–Apau's challenges to the assignments of her loan go to whether those assignments are voidable, as she argues that persons or entities lacked authority to assign the loan documents"). If the First Assignment were voidable, then the defrauded principal could elect whether to treat the assignment as valid. <u>See</u> <u>Epstein v. US Bank Nat'l Ass'n</u>, Case No. 13–50047, 2013 WL 5340766, at *3 (5th Cir. Sept. 25, 2013) (citation omitted) ("a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal"). MERS as beneficiary for the successor Lender (not plaintiffs) would be the defrauded principal. Plaintiffs would have no standing to elect not to have the First Assignment enforced.

As for the Second Assignment, as set out above, on June 28, 2012, Aurora Bank FSB assigned to Nationstar "all its right, title, and interest" in the Deed of Trust.[79] The Corporate Assignment of Deed of Trust was signed by Julie Erickson, Vice-President of Aurora Bank.[80] Although plaintiffs argue that defendants did not investigate whether Erickson was really a Vice-President of Aurora Bank, plaintiffs offer no evidence to suggest that Erickson was not in fact a Vice-President of Aurora Bank. Because the First Assignment is valid (or not subject to challenge by plaintiffs), then the Second Assignment is valid and gives Nationstar beneficiary/nominee status under the Deed of Trust, which means that Nationstar has the

---

[79]Exhibit 10 at NAT_0005353, Defendants' Motion for Summary Judgment, Docket No. 147.

[80]<u>Id.</u>

authority as the nominee of the successor Lender (the Lehman XS Trust) to initiate foreclosure proceedings.

Plaintiffs' securitization and split the note arguments do not require a different result. Plaintiffs have asserted that because their Note was sold as part of a securitized mortgage trust shortly after the Deed of Trust was recorded, they have a right to stop the foreclosure sale, void the Assignments and the substitutions of Trustee, and strip the lien created by the Deed of Trust against the Property. But, securitization does not deprive a beneficiary of its contractual rights under a loan. See, e.g., Henkels v. J.P. Morgan Chase, Case No. CV 11–0299–PHX–JAT, 2011 WL 2357874, at *7 (D. Ariz. June 14, 2011) ("Plaintiff has cited no authority for the assertion that securitization has had any impact on Plaintiff's obligations under the loan, and district courts in Arizona have rejected similar arguments"). Plaintiffs' Note and Deed of Trust expressly recognize the Lender's right to transfer or sell plaintiffs' Note. Borrowers like plaintiffs are not entitled to determine the destiny of their note or who owns it at even given time.

Plaintiffs also argue that because the Note and Deed of Trust were severed during the securitization process, the Note and Deed of Trust are unenforceable. The Ninth Circuit has rejected such a "split the note" theory. In Vawter v. ReconTrust Co. NA, Case No. 12-16346, 2014 WL 1259293, at *1 (9th Cir. March 28, 2014), "[t]he Deed of Trust provided that the beneficiary would be MERS and its 'successors and assigns.' In the Corporation Assignment of Deed of Trust, MERS assigned its beneficial rights to BNYM." "Vawter

argue[d] that the deed was unenforceable since it was 'split' from the underlying note" but the court rejected that argument because "to the extent BNYM enforced the deed, it did so as the nominee of the lender or its assigns, which would have been entitled to enforce the note." Id.

Moreover, in this case, the Lehman XS Trust Agreement[81] expressly gave a loan servicer, such as Nationstar, the authority to proceed with foreclosures. The Trust Agreement provided that any loan servicer, including the Master Servicer, had the power "to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage loan[.]"[82] The Trust Agreement further provided that

> [t]he Master Servicer shall use its reasonable best efforts to, or to cause the applicable Servicer to, foreclose upon, repossess or otherwise comparably convert the ownership of Mortgaged Properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments, all in accordance with the applicable Servicing Agreement.[[83]]

---

[81]Defendants have not produced a signed version of the Trust Agreement nor is the copy of the Trust Agreement that is available on the Securities and Exchange Commission's website signed. However, the court takes judicial notice of the Trust Agreement. See Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (noting that "SEC filings [are] subject to judicial notice").

[82]Trust Agreement at NAT_004868, Exhibit 3, Defendants' Motion for Summary Judgment, Docket No. 147.

[83]Id. at § 9.20(a), NAT_004880, Exhibit 5, Defendants' Motion for Summary Judgment, Docket No. 147.

Plaintiffs, however, insist that beneficiary status cannot be held and transferred independently from the Note. If it is, they argue that the Deed of Trust is separated from the Note, which makes the Deed of Trust null and void. Plaintiffs cite to Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011), in support of this argument. There, the court observed that "[t]he deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." Id. at 1039. "One of the main premises of the [Cervantes] plaintiffs' lawsuit [was] that the MERS system impermissibly 'splits' the note and deed by facilitating the transfer of the beneficial interest in the loan among lenders while maintaining MERS as the nominal holder of the deed." Id. But the court found that "the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lender." Id. at 1044. In this case, the Note and the Deed of Trust are not impermissibly split because Nationstar, as the beneficiary/nominee, is acting as the agent of the successor Lender.

In a footnote, plaintiffs argue that under their Deed of Trust an "agent" cannot declare a default, accelerate the debt, or elect to foreclose. Plaintiffs contend that the Deed of Trust only authorizes an agent of the Lender to "make reasonable entries upon and inspections of the Property."[84] This is the only express reference in the Deed of Trust to an "agent" taking

---

[84]Deed of Trust at 7, ¶ 7, Exhibit 1, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

any action on behalf of the Lender.  Thus, plaintiffs argue that there has been an impermissible split of the Note and the Deed of Trust here, which means that no defendant has the authority to foreclose.

Plaintiffs' Deed of Trust does not preclude the Lender or its successors from having others act on its behalf.  Plaintiffs' Deed of Trust expressly designates MERS and its successors as the nominee of the Lender and the Lender's successors.[85]

But even assuming that Nationstar was the current beneficiary/nominee of the Deed of Trust, which it is, plaintiffs argue that Nationstar still would not have authority to foreclose because there is no evidence that Nationstar possesses the Note.  Plaintiffs point out that the copy of the Note that defendants first offered into evidence is unendorsed.[86] Because the Note is unendorsed, plaintiffs insist that only GreenPoint could enforce the Note. But, as set out above, defendants have now produced a copy of the Note endorsed in blank[87] and there is no dispute that Nationstar currently has physical possession of the Note.

Plaintiffs also argue that Nationstar would need to produce a power of attorney from U.S. Bank in order to be able to initiate foreclosure proceedings.  As discussed above, the Lehman XS Trust Agreement itself empowers loan servicers, such as Nationstar, to foreclose and so no power of attorney is necessary.  Moreover, Nationstar, as beneficiary/nominee for

---

[85]Id. at 3.

[86]Exhibit 1, Defendants' Motion for Summary Judgment, Docket No. 141.

[87]Exhibit 17 at NAT_000079, Reply in Support of Defendants' Motion for Summary Judgment, Docket No. 167.

the successor Lender, has the power to call for a foreclosure by a trustee sale upon plaintiffs' failure to cure a default.

Turning then to plaintiffs' specific claims, in Count One, plaintiffs seek a declaration that "the Assignments, Substitutions, and two [Notices of Trustee Sale], as well as the [Deed of Trust] which is now a nullity, are void and must be cancelled/revoked with recordings at the Maricopa County Recorder's Office;" and "that no Defendant is the Note Holder/Lender and true beneficiary, that no Defendant may initiate or conduct a trustee's sale of Plaintiffs' property, and no Defendant has standing to enforce the Note or [Deed of Trust.]"[88] As explained above, the First and Second Assignments of the beneficiary/nominee status under plaintiffs' Deed of Trust are valid. There is no evidence of any fault in the substitution of the servicers of plaintiffs' loan or in the substitution of Trustees. Plaintiffs' claims against the Trustees have been settled and dismissed. The Lehman XS Trust is the current successor Lender as to plaintiffs' loan, and U.S. Bank, as trustee for the Lehman XS Trust, is authorized to act on the successor Lender's behalf. Nationstar is the current beneficiary/nominee and loan servicer and is authorized to act for the benefit of the Lehman XS Trust, the current successor Lender. Emmons is the current Trustee. The two notices of trustee's sale of the Property because of plaintiffs' defaults are moot because they have been cancelled. Plaintiffs' Note and Deed of Trust have not been split. They are valid and enforceable according to their terms. Plaintiffs have no standing to challenge the

---

[88]Fourth Amended Complaint at 52, ¶¶ A-B, Docket No. 82.

securitization of their loan. There are no material facts in dispute as to any of the foregoing. Plaintiffs' arguments for a declaratory judgment in their favor all fail. Defendants are entitled to summary judgment on Count One of plaintiffs' Fourth Amended Complaint.

In Count Two, plaintiffs allege that defendants breached the Deed of Trust and Note by pursuing the trustee's sales in violation of the deed of trust statutes, the Deed of Trust, and other applicable law.[89] "'In order to state a claim for breach of contract, a plaintiff must allege the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff.'" Snyder v. HSBC Bank, USA, N.A., 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012) (quoting Warren v. Sierra Pacific Mortg. Srvcs. Inc., 2011 WL 1526957, *3 (D. Ariz. April 22, 2011)).

Plaintiffs argue that there are at least facts in dispute as to their breach of contract claim because Nationstar did not have the authority to foreclose and there is no evidence that their Lender ever notified them that they were in default. However, as discussed above, plaintiffs' Deed of Trust does not preclude the Lender or its successors from having others act on its behalf. Nationstar was the beneficiary/nominee under the Deed of Trust and had the right to commence foreclosure proceedings in April 2013 on behalf of the successor Lender. As for plaintiffs' contention that they did not receive proper notice of any default, plaintiffs' Deed of Trust provides that the Lender shall give the borrower notice of any

---

[89]Fourth Amended Complaint at 34, ¶¶ 172-173, Docket No. 82.

default.[90]  On March 4, 2013, Nationstar, on behalf of U.S. Bank "as trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-15N, the Creditor to whom the debt is owed" gave plaintiffs "formal notice ... that [they were] in default under the terms and conditions of the Note and Security Instrument (i.e. Deed of Trust, Mortgage, etc.) for failure to pay the required installments when due."[91]  Because Nationstar as the successor beneficiary/nominee was authorized to act on behalf of the  current successor Lender/Note Holder, the Lehman XS Trust, the 2013 notice of default that plaintiffs received complied with the terms of the Deed of Trust.

There was no breach of contract here.  Defendants are entitled to summary judgment on plaintiffs' breach of contract claim in Count Two.

In Count Three, plaintiffs allege that defendants breached their duty of good faith and fair dealing by 1) hiding from plaintiffs the identity of the true beneficiary and misrepresenting that Aurora Bank and then Nationstar were true beneficiaries;[92] 2) hiding the identity of the true Note Holder/Lender by misrepresenting the owner of the loan as U.S. Bank,[93] 3) by allowing someone other than the Note Holder/Lender to write to plaintiffs declaring a

_____

[90]Deed of Trust at 13, ¶ 22, Exhibit 1, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[91]Exhibit 11 at NAT_004146, Richardson Deposition, Exhibit 2, Plaintiffs' Response to Motion for Summary Judgment, Docket No. 161.

[92]Fourth Amended Complaint at 35, ¶ 184(a), Docket No. 82.

[93]Fourth Amended Complaint at 36, ¶ 184(b), Docket No. 82.

default,[94] 4) by initiating foreclosure without requiring that the Lender notify the Trustee in writing that the Note was in default and that it was electing to foreclose,[95] 5) by seeking to proceed to a trustee's sale on clearly invalid documents,[96] 6) by "knowingly and purposefully separating the Note from the [Deed of Trust] thereby rendering the Note unsecured[;]"[97] 7) by "falsely listing the servicer of the Loan as Aurora Commercial Corp., on the MERS database;"[98] 8) by "having a non-existent entity sign the Third Substitution on September 5, 2014, but not recording it until after Plaintiffs' First Amended Complaint was filed and never disclosing same to Plaintiffs[;]"[99] 9) by "having a non-existent entity sign the Fourth Substitution on September 9, 2014, and recording it on October 2, 2014 without disclosing same to Plaintiffs in spite of this pending litigation[;]"[100] and by "clouding Plaintiffs' title to such an extent that Plaintiffs will be hampered in their ability to alienate their property, and resulting in a decrease in its market value."[101]

---

[94]Fourth Amended Complaint at 36, ¶ 184(c), Docket No. 82.

[95]Fourth Amended Complaint at 36, ¶ 184(d), Docket No. 82.

[96]Fourth Amended Complaint at 36, ¶ 184(e), Docket No. 82.

[97]Fourth Amended Complaint at 36, ¶ 184(f), Docket No. 82.

[98]Fourth Amended Complaint at 35, ¶ 184(g), Docket No. 82.

[99]Fourth Amended Complaint at 36, ¶ 184(h), Docket No. 82.

[100]Fourth Amended Complaint at 36, ¶ 184(i), Docket No. 82.

[101]Fourth Amended Complaint at 37, ¶ 184(j), Docket No. 82.

Plaintiffs have not come forward with any evidence to suggest that defendants failed to "[a]ct[] in accord with the terms of" the Note and/or Deed of Trust and therefore defendants' conduct "cannot without more be equated with bad faith." Snyder, 873 F. Supp. 2d at 1153 (citation omitted). As discussed above, the court has rejected plaintiffs' contentions about enforceability of plaintiffs' Deed of Trust. Plaintiffs were not kept in the dark as to the current status of Nationstar and U.S. Bank, as beneficiary/nominee and trustee for the successor Lender, respectively. Even if plaintiffs were misinformed at one point that U.S. Bank was the "owner" of their loan, plaintiffs were aware at all times who their loan servicer was and where they should send their payments. There is no evidence that payments made by plaintiffs were ever lost or misapplied, and it is admitted that plaintiffs have made no payments on their Note since June 2011. Defendants are entitled to summary judgment on plaintiffs' bad faith claim in Count Three.

In Count Four, plaintiffs assert quiet title and slander of title claims under A.R.S. § 33-420. These claims are based on allegations that defendants have recorded documents that "are groundless, contain material misstatements, and [make] false claims against" plaintiffs' property.[102] Plaintiffs allege that defendants have recorded documents that contain misstatements as to the identities of the "true" beneficiary and the Trustee of their Deed of Trust.

---

[102]Fourth Amended Complaint at 40-41, ¶ 210, Docket No. 82.

Plaintiffs' "true" beneficiary arguments have failed. MERS and its assigns were/are beneficiary/nominees under plaintiffs' Deed of Trust. Their status has perhaps been misunderstood by plaintiffs, but it has not been misrepresented by defendants. But even if there had been any misrepresentations, they would not have been material and would not have affected a foreclosure had a foreclosure taken place. "[A] misrepresentation is material to a person if she could reasonably rely on it." Sitton v. Deutsche Bank Nat'l Trust Co., 311 P.3d 237, 243 (Ariz. Ct. App. 2013). A.R.S. § 33-808(E) provides that "[a]ny error or omission" in required information such as names and addresses of the beneficiary and trustee, "shall not invalidate a trustee's sale." Plaintiffs know that they owe substantial sums of money on their loan. And as observed above, they have always known the name and address of their loan servicer to which payments were required to be made. Defendants are entitled to summary judgment on plaintiffs' claims in Count Four.

In Count Five, plaintiffs assert negligence per se claims, which are based on allegations that defendants violated A.R.S. §§ 39-161 and 33-420. "'Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence per se.'" Griffith v. Valley of Sun Recovery and Adjustment Bureau, Inc., 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980) (quoting Salt River Valley Water Users' Assoc. v. Compton, 8 P.2d 249, 251 (Ariz. 1932)). "[T]he application of negligence per se" is limited "to statutes which express

rules of conduct in specific and concrete terms as opposed to general or abstract principles."

Id.  Negligence per se is "'better reserved to describe those instances where certain acts or omissions constitute negligence without further inquiry into the circumstances or reasonableness of their occurrence.'"  Id. (quoting Deering v. Carter, 376 P.2d 857, 860 (Ariz. 1962)).

Plaintiffs' negligence per se claims fail because both require "further inquiry." Section 39-161 provides:

> A person who acknowledges, certifies, notarizes, procures or offers to be filed, registered or recorded in a public office in this state an instrument he knows to be false or forged, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, or in compliance with established procedure is guilty of a class 6 felony.

Section 33-420 provides:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

"Further inquiry" is required to determine whether a person knows that the document he is causing to be registered is false, forged, or contains a material misstatement.  This element of knowledge defeats the application of negligence per se because it requires "inquiry into

the circumstances or reasonableness" of the alleged negligent acts or omissions. <u>Deering</u>, 376 P.2d at 860.

There is also a problem with materiality here. Even assuming that the recorded documents had errors in them as asserted by plaintiffs, those errors would not be "material" to plaintiffs because they "had no effect on [their] obligations or choice of actions."[103] In other words, regardless of any errors in the recorded documents, plaintiffs still owe money to someone and someone has the right to payments, the right to declare a default, and the right to foreclose if plaintiffs do not make the required payments. Defendants are entitled to summary judgment on plaintiffs' negligence <u>per se</u> claims in Count Five.

In Count Eight, plaintiffs assert an intentional interference with contract claim.

> The elements of a cause of action for intentional interference with contract are a contract between the plaintiff and a third party; knowledge of the defendant that the contract exists; intentional interference by the defendant which causes the third party to breach the contract; a showing that the defendant acted improperly; and a showing that damage resulted to the plaintiff.

<u>Barrow v. Ariz. Bd. of Regents</u>, 761 P.2d 145, 152 (Ariz. Ct. App. 1988). Plaintiffs allege that "[e]ach defendant has intentionally interfered with the contracts between the Gardners and GreenPoint, thereby causing one or more breaches of those contracts."[104]

---

[103]<u>Steinberger v. IndyMac Mortgage Services</u>, Case No. 15-00450-PHX-ROS, Order at 39, Docket No. 210.

[104]Fourth Amended Complaint at 50, ¶ 287, Docket No. 82.

The court has previously concluded that this claim is only plausible if plaintiffs' contention that only the Lender or Note Holder can be the beneficiary is correct.[105] Because Nationstar is the beneficiary/nominee of the Deed of Trust, this claim fails. Defendants are entitled to summary judgment on plaintiffs' intentional interference claim in Count Eight.

## Conclusion

Plaintiffs' remaining claims against the AMSL Legal Group, LLC are dismissed with prejudice. Defendants' motion for summary judgment[106] is granted. Plaintiffs' complaint is dismissed with prejudice. The parties' stipulation[107] for amendments to the court's scheduling order is moot and is therefore rejected.

DATED at Anchorage, Alaska, this 27th day of June, 2017.

/s/ H. Russel Holland
United States District Judge

---

[105]Order re Motions to Dismiss at 23, Docket No. 114.

[106]Docket No. 147.

[107]Docket No. 177.